EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
ANYA M. BINSACCA
Supervising Deputy Attorney General
BRIAN C. KINNEY, State Bar No. 245344
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5255
 Fax:  (415) 703-5843
 Email:  Brian.Kinney@doj.ca.gov

Attorneys for Respondent J. Davis

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **Justo Escalante ,** | C07-2702 JF |
| Petitioner, | **ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| **v.** | |
| **J. Davis, et al.,** | |
| Respondent. | Judge:  The Honorable Jeremy Fogel |

1

**TABLE OF CONTENTS**

2

**Page**

3   ANSWER TO THE ORDER TO SHOW CAUSE                                                      2

4   MEMORANDUM OF POINTS AND AUTHORITIES                                                   8

5   ARGUMENT

6

7   I.   THE STATE COURT'S DENIAL OF ESCALANTE'S HABEAS CLAIM WAS
        NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF,
8       CLEARLY ESTABLISHED FEDERAL LAW, NOR  BASED ON AN
        UNREASONABLE DETERMINATION OF THE FACTS.                                          8

9

10  A.   The Los Angeles County Superior Court Decision Was Not Contrary to
        Clearly Established Federal Law.                                                  9

11

12  1.   Escalante received all process due under the only United States
        Supreme Court case addressing due process in the parole context.                 9

13
    2.   The Ninth Circuit's some-evidence test is not clearly established
14      federal law and, therefore, Escalante is only entitled to the process
        established in *Greenholtz* — not some-evidence federal review.                   10

15
    3.   Even if the some-evidence standard were clearly established
16      federal law, the Los Angeles County Superior Court correctly
        applied this standard.                                                            12
17

18  4.   The some-evidence standard only requires some evidence to support
        the Board's decision to deny parole — not evidence showing that the
19      inmate was a current risk to society if released.                                 13

20
    5.   The Board may rely on static factors to deny parole.                             14
21

22  6.   The superior court's decision upholding the Board's denial of
        parole was not based on the Board's finding that the commitment
23      offense was carried out in an "especially cruel" manner.                          15

24  B.   The Los Angeles County Superior Court Decision Upholding the
        Board's Parole Denial Reasonably Determined the Facts.                            16
25

26  CONCLUSION                                                                            17

27

28

# TABLE OF AUTHORITIES

Page

**Cases**

*Carey v. Musladin*
___ U.S. ___, 127 S.Ct. 649, 653                                    10, 11

*Biggs v. Terhune*
334 F.3d 910 (9th Cir. 2003)                                        6, 13, 14

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
442 U.S. 1, 12 (1979)                                               5, 8-11, 17

*In re Dannenburg*
34 Cal. 4th 1061, 1087 (2005)                                       5, 14

*Foote v. Del Papa*
492 F.3d 1026, 1029 (9th Cir. 2007)                                 11

*In re Rosenkrantz*
29 Cal. 4th 616, 658 (2002)                                         6, 10, 12, 13

*Irons v. Carey*
__ F.3d __, 2007 WL 2027359 (9th Cir. July 13, 2007)               11, 12, 14

*Nguyen v. Garcia*
477 F.3d 716 (9th Cir. 2007)                                        11

*Sandin v. Connor*
515 U.S. 472, 484 (1995)                                            4

*Sass v. Cal. Bd. of Prison Terms*
461 F.3d 1123, 1128 (9th Cir. 2006)                                 5, 12

*Schriro v. Landrigan*
__ U.S. __, 127 S. Ct. 1933, 1942 (2007)                           10, 11

*Superintendent v. Hill*
472 U.S. 445, (1985)                                                11, 12

*Williams v. Taylor*
529 U.S. 362, 412 (2000)                                            8

*Ylst v. Nunnemaker*
501 U.S. 797, 803-04 (1991)                                         8

**TABLE OF AUTHORITIES** **(continued)**

Page

**Statutes**
28 United States Code
      § 2244(d)(1)                                                       7
      § 2254(d)(1-2)                                                     8
      § 2254(d)(2)                                                       16
      § 2254(e)(1)                                                       16, 17

California Code of Regulations, Title 15
      § 2402, subd. (1)                                                 13
      § 2402(b)                                                          15
      § 2402, subd. (c)                                                 13
      § 2402, subd. (c)(1)(B)                                           13
      § 2402, subd. (c)(1)(C)                                           13
      § 2402, subd. (c)(1)(D).                                          13

California Penal Code
      § 3041, subd. (b)                                                 14


**Other Authorities**
Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)          5, 6, 8-13, 15-17

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  BRIAN C. KINNEY, State Bar No. 245344
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5255
    Fax:  (415) 703-5843
8   Email:  Brian.Kinney@doj.ca.gov

9  Attorneys for Respondent J. Davis

10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                     SAN JOSE DIVISION

14
    ┌─────────────────────────────────────────┐
15  │ **Justo Escalante ,**                     │      C07-2702 JF
    │                                           │
16  │                        Petitioner,        │      **ANSWER TO THE ORDER TO**
    │                                           │      **SHOW CAUSE; MEMORANDUM OF**
17  │              **v.**                        │      **POINTS AND AUTHORITIES**
    │                                           │
    │ **J. Davis, et al.,**                      │
18  │                                           │
    │                        Respondent.        │      Judge:  The Honorable Jeremy Fogel
19  └─────────────────────────────────────────┘

20        Petitioner Justo Escalante, an inmate at the Correctional Training Facility serving an

21  indeterminate sentence for aggravated mayhem, represents himself in this habeas action.

22  Petitioner alleges that the Board of Parole Hearings unconstitutionally denied him parole at his

23  December 15, 2005 subsequent parole consideration hearing.  Specifically, Escalante argues:  (1)

24  the Board violated his due process rights by relying on the commitment offense and pre-

25  commitment factors to deny parole for the fourth time; (2) the commitment offense (a non-

26  homicide offense) does not rise to the level of the "especially heinous" (particularly egregious)

27  manner to justify the fourth denial of parole; and (3) the Board presented no evidence that

28  contained an indicia of reliability showing Petitioner was a "current" risk if released on parole.

1    The Court issued a August 27, 2007 Order to Show Cause why Escalante's petition should not

2    be granted.  Respondent Warden J. Davis answers as follows:

3                    **ANSWER TO THE ORDER TO SHOW CAUSE**

4        In response to the Petition for Writ of Habeas Corpus filed on May 22, 2007, Respondent

5    hereby admits, denies, and alleges the following:

6        1.    Escalante is lawfully in the custody of the California Department of Corrections and

7    Rehabilitation (CDCR) following his April 4, 1991 conviction for aggravated mayhem with the

8    use of a deadly weapon.  (Ex. A, Abstract of Judgment.)  He is currently serving an

9    indeterminate sentence of seven years to life.

10       2.    Escalante does not challenge his underlying conviction in the current proceeding.

11   Escalante does not contest that he received notice of his 2005 parole suitability hearing, appeared

12   at the hearing, and received a copy of the Board's decision finding him unsuitable for parole.

13       3.    Respondent affirmatively alleges that Escalante was convicted of aggravated mayhem

14   with the use of a deadly weapon for stabbing James Brooks in the right eye with a knife that

15   penetrated the brain.  (Ex. A; Ex. B, Probation Officers Report, pp. 1-2; Ex. C, Second District

16   Court of Appeal Opinion, at p. 3.)  On September 10, 1990, James Brooks was visiting his

17   godmother at her residence when he encountered Escalante.  (Ex. B, at p. 2; Ex. C, at p. 3.)

18   Escalante asked to borrow Brooks's car.  (Ex. C, at p. 3.)  Brooks refused and proceeded to his

19   godmother's house.  (*Id.*)  When Brooks returned to his car, Escalante was waiting, now

20   accompanied by three friends.  (*Id.*)  Again, Escalante demanded that Brooks loan him the car.

21   (*Id.*)  Brooks refused and turned to leave.  (*Id.*)  One of Escalate's friends yelled, "Get him" and

22   all four chased Brooks who tripped and fell.  (*Id.*)  The four men attacked Brooks by kicking and

23   hitting him.  (Ex. B, at p. 2.)  While Brooks was on the ground, Escalante grabbed Brooks by the

24   hair and stabbed him in the right eye with a knife.  (Ex. C, at p. 3.)  As a result of the stabbing,

25   Brooks suffered permanent loss of sight in his right eye and endures chronic headaches due to

26   permanent brain damage.  (Ex. B, at p. 8; Ex. C, at p. 3.)

27       4.    Respondent affirmatively alleges that Escalante illegally entered the United States in

28   1984 and was convicted of a felony for the transportation and sale of illegal narcotics four years

Answer to Order to Show Cause; Memorandum of Points and Authorities

Escalante v. Davis
C07-2702 JF

1  later.  (Ex. B, at p. 4; Ex. D, Life Prisoner Evaluation Report, at pp. 2-3; Ex. E, Parole Hearing

2  Transcript, at pp. 43-44.)  Escalante received 180 days in jail, a fine, and 36 months probation as

3  a result of the conviction.  (*Id.*)  A year after the drug conviction, Escalante was convicted of a

4  misdemeanor for being a felon in possession of a firearm.  (*Id.*)  In addition to these two

5  convictions, Escalante's prior criminal history includes arrests for murder, grand theft vehicle,

6  possession of narcotics, possession of bad checks, and transportation and sale of narcotics.  (*Id.*)

7       5.    Respondent affirmatively alleges that Escalante maintained an unstable social history

8  prior to the commitment offense.  (Ex. B, at p. 5; Ex. D, at p. 3; Ex. E, at p. 44.)  Escalante began

9  drinking alcohol at age 16, smoking marijuana at age 19, and snorting cocaine at age 26.  (Ex. D,

10  at p. 3.)  By the time of his arrest for the commitment offense, Escalante spent approximately

11  $100 a week to support his cocaine habit.  (Ex. B, at p. 5; Ex. D. at p. 3.)

12       6.    Respondent affirmatively alleges that Dr. Laura Petracek, a contract psychologist,

13  evaluated Escalante before his parole consideration hearing.  (Ex. F, Mental Health Evaluation.)

14  In her opinion, Escalante needs to develop some insight concerning his conduct before being

15  considered for parole.  (*Id.* at p. 4.)

16       7.    Respondent affirmatively alleges that Escalante has not completed any vocations

17  during his time in prison.  (Ex. D, at p. 2; Ex. E, at p. 45.)  While incarcerated, Escalante

18  participated in Alcoholics Anonymous and Narcotics Anonymous, but he failed to attend a self-

19  help program that would address the issue of his insight into the commitment offense.  (Ex. D, at

20  p. 3; Ex. E, at p. 45.)  Escalante received his GED in 2000.  (Ex. D, at p. 3; Ex. E, at p. 53.)

21       8.    Respondent affirmatively alleges that the Board denied Escalante parole during his

22  December 15, 2005 parole consideration hearing.  (Ex. E, at p. 42.)  In denying parole, the Board

23  relied on the gravity of the commitment offense, noting that it was perpetrated in an especially

24  cruel and callous manner.  (*Id.* at p.42.)  The Board also commented that the act was

25  dispassionate and calculated in that after the victim refused to loan the car to Escalante,

26  Escalante returned with three of his friends and waited for the victim to return.  (*Id.* at pp. 42-

27  43.)  The Board further noted that Escalante demonstrated a callous disregard for human

28  suffering indicated in the physical and emotional trauma the victim will continue to endure

throughout his life as a result of the loss of sight in one eye and permanent brain damage. (*Id.* at 43.) In denying parole, the Board also relied on Escalante's extensive criminal history, unstable social history, lack of insight into the commitment offense, lack of vocational programming in prison, and insufficient participation in self-help programs while incarcerated. (Ex. E, at pp. 43-45.)

9.   Respondent admits that Escalante filed a habeas petition in Los Angeles Superior Court generally alleging the same causes of action that he alleges here. (Ex. G, Superior Court Petition.) Respondent further admits that Los Angeles Superior Court denied the petition. (Ex. H, Superior Court Order.) In denying the petition, the court found that "there is some evidence that the commitment offense was one in which the victim was abused, defiled or mutilated during or after the offense." (*Id.* at p. 2.) Therefore, even though the superior court found no evidence to support the Board's finding that the offense was dispassionate and calculated, or that the offense demonstrates an exceptionally callous disregard for human suffering, the superior court nevertheless upheld the Board's decision. (*Id.*) The superior court reasoned that the Board's discussion of the decision illustrated that the it would have reached the same conclusion even absent the flaw. (*Id.*) In addition, the superior court noted that the Board presented other reasons for denying parole besides the commitment offense. (*Id.*) The court found some evidence also supported those findings. (*Id.*)

10.   Respondent admits that the California Court of Appeal issued a March 8, 2007 denial of Escalante's habeas petition. (Ex. I, Appellate Court Petition and Denial.) Respondent further admits that the California Supreme Court issued a May 9, 2007 denial of Escalante's habeas petition. (Ex. J, Supreme Court Petition.) Hence, Respondent admits Escalante exhausted his state court remedies in regard to the issues currently before this Court. However, Respondent denies that Escalante exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond this particular review of the December 2005 parole denial.

11.   Respondent preserves the argument that Escalante does not have a federally protected liberty interest in parole. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty

interest in parole because serving a contemplated sentence does not create an atypical or significant hardship compared with ordinary prison life); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (liberty interest in conditional parole-release date created by unique structure and language of state parole statute); and *In re Dannenburg*, 34 Cal. 4th 1061, 1087 (2005) (California's parole scheme is a two-step process that does not impose a mandatory duty to grant life inmates parole before a suitability finding); *contra Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a federally protected liberty interest in parole date).

12. Respondent denies that the state courts' denials of habeas corpus relief were contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law, or that the denials were based on an unreasonable interpretation of facts in light of the evidence presented. Escalante therefore fails to make a case for relief under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).

13. Respondent affirmatively alleges that Escalante had an opportunity to present his case to the Board, and the Board provided him with a detailed explanation for its parole denial. (Ex. E.) Thus, Escalante received all process due under *Greenholtz*, the only clearly established federal law regarding due process rights of inmates at parole consideration hearings.

14. Respondent affirmatively alleges that the Board considered all relevant and reliable evidence before it, and that some evidence supports its decision. However, Respondent further affirmatively alleges that the some-evidence standard does not apply in federal habeas proceedings challenging parole denials, and that the some-evidence standard is only clearly established federal law in the prison *disciplinary* context.

15. Respondent denies that the Board improperly relied on Escalante's commitment offense, or relied solely on Escalante's commitment offense. Respondent affirmatively alleges that the Board also relied on other factors in determining parole suitability, such as Escalante's prior criminal history, unstable social history, lack of insight into the commitment offense, lack of vocational programming in prison, and insufficient participation in self-help programs while incarcerated. (Ex. E, at pp. 43-45.) However, Respondent affirmatively alleges that federal due

process does not preclude the Board from relying on immutable factors to deny parole. *Sass,* 461 F.3d at 1129. Respondent further affirmatively alleges that the argument that the Board may not continue to rely on the circumstances of Escalante's commitment offense to deny parole is not congizable under AEDPA because it relies on circuit court dicta in *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), rather than clearly established United States Supreme Court precedent. Therefore, Escalante's first claim — the Board's denial of parole for the fourth time based on the commitment offense and pre-commitment factors violates his due process rights — fails under AEDPA because the Los Angeles County Superior Court's decision to deny the same claim was not contrary to, and did not involve an unreasonable application of, clearly established United States Supreme Court law.

16. Respondent affirmatively alleges that Escalante's second claim — the commitment offense does not rise to the level of an especially heinous act — fails under AEDPA because the Los Angeles County Superior Court's decision to uphold the Board's denial of parole was not based on this finding. (Ex. H, at p. 2.) In fact, the superior court found no evidence supporting the Board's determination that the offense was carried out in an especially callous manner. (*Id.*) Therefore, assuming Escalante's second claim presented clearly established federal law and assuming the Board violated it, the *state court's decision* was not contrary to, or an unreasonable application of, clearly established federal law because the state court's denial relied on other findings by the Board, not the one challenged here.

17. Respondent affirmatively alleges that Escalante's third claim — the Board presented no evidence showing he was a current risk if released — fails under AEDPA because the Los Angeles County Superior Court's decision to deny this claim was not contrary to, and did not involve an unreasonable application of, clearly established United States Supreme Court law. First, the some-evidence standard is not clearly established federal law in the parole context. Secondly, assuming the some-evidence standard applies here, some-evidence must support the Board's decision to deny parole, but there need not be some-evidence showing that the inmate was a current risk if released. *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003). Neither clearly established federal law, *id.*, nor clearly established California law, *In re Rosenkrantz*, 29

1  Cal. 4th 616, 658 (2002), imposes a judicial review requiring some evidence to support that the

2  inmate poses a current risk to society if released.

3      18.   Respondent admits that Escalante's claims are timely under 28 U.S.C. § 2244(d)(1)

4  (2000), and are not barred by any other procedural defense.

5      19.   Respondent denies that an evidentiary hearing is necessary in this matter.

6      20.   Respondent affirmatively alleges that Escalante fails to establish any grounds for

7  habeas corpus relief.

8      21.   Except as expressly admitted above, Respondent denies, generally and specifically,

9  each and every allegation of the petition, and specifically denies that Escalante's administrative,

10  statutory, or constitutional rights have been violated in any way.

11      Accordingly, Respondent respectfully requests that the Court deny the Petition for writ of

12  habeas corpus and dismiss these proceedings.

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## ARGUMENT

3

### I.

4

5

### THE STATE COURT'S DENIAL OF ESCALANTE'S HABEAS CLAIM WAS NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.

6

7    The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) modified "the role

8    of federal habeas courts in reviewing petitions filed by state prisoners by placing a new

9    constraint on the power of a federal habeas court to grant a state prisoner's application for a writ

10   of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v.*

11   *Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., concurring [speaking for a majority of the

12   Court]).  Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that a state

13   court already adjudicated on the merits *only if* the state court's adjudication was either: (1)

14   "contrary to, or involved an unreasonable application of, clearly established Federal law, as

15   determined by the Supreme Court of the United States;" or (2) "based on an unreasonable

16   determination of the facts in light of the evidence presented at the State Court proceeding."  28

17   U.S.C. § 2254(d)(1-2).

18   Here, the Los Angeles County Superior Court decision[1] denying Escalante's claim for

19   habeas relief was neither contrary to, or an unreasonable application of, federal law, nor was it

20   based on an unreasonable determination of the facts in light of the evidence presented.  First,

21   Escalante received all process due under *Greenholtz*, the only clearly established federal law

22   specifically addressing the due process rights of inmates in a parole-consideration decision.

23   Second, the state court decision was not based on an unreasonable determination of the facts;

24   rather, the evidence presented supports the state court's holding.  Thus, Escalante fails to

25

26

27   1.  When, as here, the California Supreme Court denies a petition for review without comment, the federal court will look to the last reasoned decision as the basis for the state court's judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).  In this case, the Los Angeles County Superior Court rendered the last reasoned decision.

28

establish a violation of AEDPA standards, and the state court's decision denying habeas relief must stand.

**A.    The Los Angeles County Superior Court Decision Was Not Contrary to Clearly Established Federal Law.**

Under the first AEDPA standard, a federal court may grant habeas relief if the state court decision was contrary to, or an unreasonable interpretation of, clearly established federal law as determined by the Supreme Court of the United States.  Here, Escalante received all process due under *Greenholtz*, the only clearly established federal law regarding the due process rights of an inmate at a parole-consideration hearing.

**1.    Escalante received all process due under the only United States Supreme Court case addressing due process in the parole context.**

In *Greenholtz*, the United States Supreme Court established the due process protections required in a state parole system.  The Court held that the only process due at a parole consideration hearing is an opportunity for the inmate to present his case, and an explanation for a parole denial.  *Greenholtz*, 442 U.S. at 16.  Escalante's claim fails because he received both of these protections at his December 2005 hearing.

First, Escalante fully presented his case to the Board.  (*See generally* Ex. E; *see also* Ex. E, at pp. 6-7 [Board explaining Escalante's rights, including his right to be heard and make a closing statement].)

Second, Escalante received a thorough explanation as to why the Board denied parole.  (*Id.* at pp. 42-45.)  The Board explained that the commitment offense was carried out in an especially cruel and callous manner in that the victim was hit, kicked, and once on the ground Escalante grabbed the victim by his hair and stabbed him in the eye, which caused permanent loss of sight in that eye and a frontal lobotomy.  (*Id.* at 42.)  Also, the Board elaborated that the offense was dispassionate and calculated.  (*Id.*)  The Board noted that after the victim refused to loan his car to Escalante, Escalante returned with three friends and waited for the victim to come back to his car.  (*Id.* at pp. 42-43.)  In addition, the Board explained that Escalante demonstrated a callous disregard for human suffering indicated in the physical and emotional trauma the victim will

1   continue to endure throughout his life as a result of the loss of sight in one eye and permanent

2   brain damage.  (*Id.* at 43.)  The Board also presented other factors for its decision, including;

3   Escalante's extensive criminal history, unstable social history, lack of insight into the

4   commitment offense, lack of vocational programming in prison, and insufficient participation in

5   self-help programs while incarcerated.  (Ex. E, at pp. 43-45.)

6       Therefore, Escalante presented his case to the Board and received an explanation as to why

7   the Board denied him parole.  Because Escalante received all process due under *Greenholtz*, the

8   state court's adjudication of his habeas claim did not violate clearly established Supreme Court

9   precedent.  Accordingly, Escalante's claim fails under AEDPA.

10          **2.    The Ninth Circuit's some-evidence test is not clearly established**
                    **federal law and, therefore, Escalante is only entitled to the process**
11                  **established in *Greenholtz* — not some-evidence federal review.**

12      Escalante challenges the sufficiency of the evidence the Board relied on in its decision.

13  (Petn. at p. 6.)  While California law requires a reviewing court to apply the some-evidence

14  standard of review, *In re Rosenkrantz*, 29 Cal. 4th 616, 658 (2002), it should not apply to a

15  *federal* habeas proceeding challenging a parole denial.

16      The United States Supreme Court recently reiterated that for AEDPA purposes, "clearly

17  established federal law" refers only to the holdings of the nation's highest court on the specific

18  issue presented.  *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653 (2006).   In *Musladin*, the

19  Ninth Circuit held that under clearly established federal law courtroom spectators who wore

20  buttons depicting the victim in a murder trial inherently prejudiced the defendant and denied him

21  a fair trial.  *Id.* at 652.  In vacating the Ninth Circuit's decision, the Supreme Court explained

22  that the two Supreme Court cases that the Ninth Circuit relied on — one involving a defendant

23  who was required to wear prison clothing during trial and the other concerning a defendant who

24  had four uniformed troopers placed behind him at trial — involved state-sponsored courtroom

25  practices that were unlike the private conduct of the victim's family.  *Id.* at 653-54.  As a result,

26  the Court held that "given the lack of applicable holdings from [the Supreme Court], it could not

27  be said that the state court 'unreasonably appl[ied] . . . clearly established Federal law.'"  *Id.* at

28  653-54.

1    Similarly, the Supreme Court found in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933,

2    1942 (2007) that a federal habeas petitioner maintained no claim under AEDPA because

3    Supreme Court precedent finding ineffective assistance of counsel when an attorney fails to

4    adequately investigate mitigating evidence is factually distinct from a defense-attorney failing to

5    investigate mitigating evidence after the client demonstrates a reluctance to assist the

6    investigation, as were the facts in *Landrigan*.  Consequently, the Supreme Court has clearly

7    indicated that circuit courts may not import — under the guise of "clearly established federal

8    law" — a federal standard used in one context for a different factual circumstance.  *See e.g. id.*;

9    *Musladin,* 127 S. Ct. at 653 - 654.[2]

10   Despite the Supreme Court's guidance in this area, the Ninth Circuit continues to extend the

11   *Hill* some-evidence standard of review — a Supreme Court holding applicable to prison

12   disciplinary hearings — to habeas petitions challenging denials of parole.  *Sass v. Cal. Bd. of*

13   *Prison  Terms*, 461 F.3d 1123 (9th Cir. 2006) (referencing *Superintendent v. Hill*, 472 U.S. 445,

14   (1985) for proposition that Board's denial of parole requires some-evidence); *Irons v. Carey*, __

15   F.3d __, 2007 WL 2027359 (9th Cir. July 13, 2007), pet. for reh'g en banc denied.

16   Furthermore, *Greenholtz*, the only Supreme Court decision concerning the due process

17   rights of an inmate in the parole context, specifically recognized the procedural distinction

18   between when the government denies an inmate parole and when the government determines

19   guilt by way of an adversarial proceeding.  *Greenholtz*, 442 U.S. at 15-16.  Based on this

20   distinction, the Supreme Court determined that a denial of parole only requires the state to

21   provide an opportunity for the inmate to present his case and an explanation for the parole denial

22   — not additional protections, such as those required in a disciplinary proceeding.  *Id.* (reasoning

23   that "to require the parole authority to provide a summary of the evidence would convert the

24

25   2. Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases.  *See e.g.*, *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007) (affirming district court's denial of

26   habeas claim alleging ineffective assistance of appellate counsel based on an alleged conflict of interest because the Supreme Court has never held - even though Ninth Circuit has - that such an

27   irreconcilable conflict violates the Sixth Amendment); and *Nguyen v. Garcia*, 477 F.3d 716 (9th Cir. 2007) (holding that because the Supreme Court had not extended a defendant's right to counsel to

28   a competency hearing, federal law was not clearly established for AEDPA purposes).

1   [parole-consideration] process into an adversary proceeding and to equate the Board's parole

2   release determination with a guilt determination").

3         As a result, for AEDPA purposes, the *Hill* some-evidence standard of review required for

4   prison *disciplinary* hearings should not apply to a federal-habeas-proceeding challenging a

5   parole denial. However, Respondent recognizes that the Ninth Circuit has held otherwise, most

6   recently in *Irons v. Carey*, 2007 WL 2027359, and will argue this case accordingly.

7         **3.    Even if the some-evidence standard were clearly established
                   federal law, the Los Angeles County Superior Court correctly
8                  applied this standard.**

9         Assuming the some-evidence test is clearly established Supreme Court law for parole

10  denials, Escalante's claim fails under AEDPA because the state court's decision was not contrary

11  to, and did not involve an unreasonable application of, the some-evidence requirement.

12        California law requires that some evidence supports the Board's decision to deny parole.

13  *Rosenkrantz*, 29 Cal. 4th at 616. Here, the Los Angeles County Superior Court applied this

14  some-evidence standard in reviewing the Board's 2005 decision denying parole. (Ex. H, at p. 2.)

15  As a result, the state court's decision was not contrary to federal law, because the Los Angeles

16  County Superior Court *did* apply the some-evidence standard. (*Id.*)

17        Additionally, the Los Angeles County Superior Court decision was not "an unreasonable

18  application of" the some-evidence standard of review. The some-evidence standard "does not

19  require examination of the entire record, independent assessment of the credibility of the

20  witnesses, or weighing of the evidence;" rather, it is satisfied if there is "any evidence in the

21  record that could support the conclusion reached by the [B]oard." *Hill*, 472 U.S. at 455-57; *see*

22  *also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some evidence standard is minimal").

23        Here, the superior court properly applied the law and reasonably determined that some-

24  evidence supported the Board's decision. (Ex. H, at p. 2.) Even though the superior court did

25  not agree that some evidence supported all of the Board's findings concerning the commitment

26  offense, the court held that some evidence supports denying parole based on the commitment

27  offense. (*Id.*) In addition, the court found that some evidence supports the Board's decision to

28  deny parole based on the other factors mentioned by the Board. (*Id.*)

Answer to Order to Show Cause; Memorandum of Points and Authorities          Escalante v. Davis
                                                                             C07-2702 JF

1    First, the court held that some evidence supports a finding that "the commitment offense

2    was one in which the victim was abused, defiled or mutilated during or after the offense." (*Id.*

3    [citing Cal. Code Regs. tit. 15, § 2402, subd. (c)(1)(C)].) Therefore, even though the Board

4    relied on California Code of Regulations, title 15, section 2402, subdivisions (c)(1)(B) and

5    (c)(1)(D), the court reasoned that the Board would have reached the same decision absent the

6    flawed reliance on these alternative subdivisions. (Ex. H, at p. 2.)

7    Additionally, the superior court also held that some evidence supports the Board's decision

8    to deny parole based on factors other than the commitment offense. (*Id.*) The court found "some

9    evidence to support the Board's findings that petitioner is unsuitable based on insufficient self-

10   help and a lack of vocational programming and based on a psychological evaluation that stated

11   that the 'inmate still denies any responsibility for the crime' and needed to develop insight

12   before being considered for parole." (*Id.*)

13   Accordingly, the Los Angeles County Superior Court's decision did not involve an

14   unreasonable application of the some-evidence standard. As a result, Escalante's claim fails

15   under AEDPA.

16   **4.    The some-evidence standard only requires some evidence to support**
     **the Board's decision to deny parole — not evidence showing that the**
17   **inmate was a current risk to society if released.**

18   Escalante maintains that the Board violated his due process rights because it presented no

19   evidence to support that he was a current risk to society if released from prison. (Petn. at p. 6.)

20   *At most*, clearly established federal law requires that some evidence support the Board's

21   decision. (*See* supra Part A.2-3.) Neither clearly established Ninth Circuit precedence, *Biggs v.*

22   *Terhune*, 334 F.3d 910, 915, nor clearly established California law, *In re Rosenkrantz*, 29 Cal.

23   4th 616, 658 (2002), imposes a judicial review requiring some evidence to support that the

24   inmate poses a current risk to society if released. As a result, clearly established federal law did

25   not require the Los Angeles County Superior Court to review whether some evidence supported

26   a finding that Escalante posed a current risk to society if released on December 15, 2005.

27   Accordingly, the superior court's decision was not contrary to federal law and, therefore,

28   Escalante's claim fails under AEDPA.

### 5.    The Board may rely on static factors to deny parole.

Escalante also argues that the Board violated his due process rights because it based its decision on the commitment offense and his pre-commitment factors. (Petn. at p. 6.) However, his argument fails for a number of reasons.

First, there exists no "clearly established federal law" that prohibits the Board's ability to rely on static factors, such as Escalante's commitment offense and pre-commitment factors, to deny parole. The Ninth Circuit has stated in dicta that the Board's continued reliance on *one* unchanging factor to deny parole "could result in a due process violation." *Biggs v. Terhune,* 334 F.3d 910, 917 (9th Cir. 2003). However, the *Biggs* court did not definitively indicate that reliance on an unchanging factor necessarily violates due process, only that it possibly could. *Id.* In *Biggs*, the court praised Biggs for being "a model inmate," and found that the record was "replete with the gains Biggs has made," including a master's degree in business administration. *Id.* at 912. Nonetheless, the court denied habeas relief because the Board's decision to deny parole, which relied solely on the commitment offense, was supported by some evidence.

Although the Ninth Circuit recently revisited this issue again in *Irons* in dicta, it held there that despite "substantial" evidence of the inmate's rehabilitation in the case, the Board acted properly within its discretion in continuing to rely on the circumstances of the inmate's offense to deny parole. *Irons v. Carey*, 2007 WL at 6. Accordingly, the Ninth Circuit has never held that a Board's reliance on a static factor to deny parole violates due process. Clearly, a Board's mere consideration a of static factor is not contrary to clearly established United States Supreme Court jurisprudence.

Second, California Penal Code section 3041, subdivision (b), requires that the Board examine the commitment offense, as the Board "shall set a release date unless it determines that the gravity of the current offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Indeed, the California Supreme Court held in *Dannenberg*, 34 Cal. 4th at 1094, that the Board may rely *solely* on the circumstances of the commitment offense.

Also in California, the Board is directed to examine immutable factors other than the

commitment offense, such as the inmate's social history, past mental state, past criminal history, and other relevant information.  Cal. Code Regs. tit. 15, § 2402(b).  Therefore, California law not only permits the Board's reliance on static factors, it also requires the Board to examine such factors.

Lastly, the Board, in denying parole, relied on factors other than Escalante's commitment offense, his prior criminal history, and his unstable social history.  The Board's determination also incorporated Escalante's lack of insight into the commitment offense, lack of vocational programming in prison, and insufficient participation in self-help programs while incarcerated.  (Ex. E, at pp. 43-45.)  Therefore, the Board did not base its decision merely on static factors, rather it also relied on behavioral and competency issues that Escalante may remedy before his next parole consideration hearing.

Consequently, Escalante's argument that the Board violated his due process rights by using his commitment offense and pre-commitment factors to support the parole denial is without merit.  Neither federal law nor California law dictates that the Board cannot examine these types of criteria.  Regardless, the Board's decision did not rely solely on these static factors.

**6.  The superior court's decision upholding the Board's denial of parole was not based on the Board's finding that the commitment offense was carried out in an "especially cruel" manner.**

Escalante alleges that this Court should grant relief because the commitment offense did not rise to the level of an especially heinous or particularly egregious act.  (Petn. at p. 6.)  However, this claim fails under AEDPA because the Los Angeles County Superior Court's decision to uphold the Board's denial of parole was not based on this finding.  (Ex. H, at p. 2.)

Indeed, the superior court found no evidence supporting the Board's determination that the offense was carried out in an especially callous manner.  (*Id.*)  However, the superior court upheld the Board's decision on other grounds.  (*Id.*)  Therefore, assuming Escalante's claim presented clearly established federal law and assuming the Board violated it, the *state court's decision* was not contrary to, or an unreasonable application of, clearly established federal law because the superior court's denial relied on other findings by the Board, unrelated to heinousness of the commitment offense.  As a result, Escalante's second claim is irrelevant for

1   establishing relief under AEDPA.

2

3   **B.    The Los Angeles County Superior Court Decision Upholding the Board's Parole Denial Reasonably Determined the Facts.**

4       Under the second AEDPA standard, a federal court may grant habeas relief if the state court

5   decision was based on an unreasonable determination of the facts in light of the evidence

6   presented at the State Court proceeding."  28 U.S.C. § 2254(d)(2).  AEDPA also requires federal

7   habeas courts to presume the correctness of state courts' factual findings unless a petitioner

8   rebuts this presumption with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

9       Here, the Los Angeles County Superior Court based its determination of the facts on an

10  independent review of the record.  (Ex. H, at p. 1.)  The state court's record consisted of the

11  transcript of the Board's December 15, 2005 parole hearing.  (Ex. G, Superior Court Petition, at

12  ex. A.)  The Board's determination of the facts was based on Escalante's 2005 Life Prisoner

13  Evaluation Report (Ex. E, at p. 12), which relied on the facts presented in the Probation Officer's

14  Report.  (Ex. D, at p. 3.)  The facts noted in the superior court's order are consistent with those

15  articulated in the Probation Officer's Report, the Life Prisoner Evaluation Report, and the

16  Board's testimony.  Accordingly, the state court reasonably determined the facts in light of the

17  evidence presented.  Furthermore, Escalante fails to provide this Court with clear and convincing

18  evidence to the contrary.  Therefore, Escalante cannot demonstrate a basis for relief under the

19  second AEDPA standard.

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

**CONCLUSION**

2      Escalante fails to demonstrate a basis for relief under AEDPA's two standards permitting a

3 habeas remedy after a state court has already adjudicated the same issue.  Under the first

4 standard, the Los Angeles County Superior Court's adjudication of Escalante's claim was not

5 contrary to, or an unreasonable application of, clearly established federal law, as determined by

6 the Supreme Court of the United States.  Petitioner received all process entitled under

7 *Greenholtz*, and — although not clearly established federal law — the some-evidence test was

8 nonetheless applied by the state court.  Under the second AEDPA standard, Escalante fails to

9 show that the Los Angeles County Superior Court decision was based on an unreasonable

10 determination of the facts.  Rather, the Probation Officer's Report, the Life Prisoner Evaluation

11 Report, and the Board's testimony supports the state court's factual interpretation.

12

13      Dated:  November 26, 2007

14
                                  Respectfully submitted,

15                                  EDMUND G. BROWN JR.
                                  Attorney General of the State of California
16
                                  DANE R. GILLETTE
17                                  Chief Assistant Attorney General

18                                  JULIE L. GARLAND
                                  Senior Assistant Attorney General
19                                  ANYA M. BINSACCA
                                  Supervising Deputy Attorney General
20

21

22                                  /S/ BRIAN C. KINNEY
                                  BRIAN C. KINNEY
23                                  Deputy Attorney General
                                  Attorneys for Respondent
24

25

26   Answer2order PsAs.wpd
     SF2007200686

27

28

Answer to Order to Show Cause; Memorandum of Points and Authorities                    Escalante v. Davis
                                                                                      C07-2702 JF

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Escalante v. Davis**

Case No.:    **C07-2702 JF**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **November 26, 2007**, I served the attached

## ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Justo Escalante (E-91258)
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960-0686
in pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **November 26, 2007**, at San Francisco, California.

_____
R. Panganiban
Declarant

_____
Signature

40190209.wpd