# EXHIBIT C

NOT FOR PUBLICATION
IN THE OFFICIAL REPORTS

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | No. B059513 |
| Plaintiff and Respondent, | (Super. Ct. No. PA 004647) |
| v. | COURT OF APPEAL - SECOND DIST. |
| JOSE AMBROSIO ESCALANTE, | FILED |
| Defendant and Appellant. | MAY 19 1992 |
| | JOSEPH A. LANE      Clerk |
| | Deputy Clerk |

APPEAL from a judgment of the Superior Court of Los Angeles County, Howard J. Schwab, Judge. Affirmed.

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Senior Assistant Attorney General, Keith H. Borjon, Supervising Deputy Attorney General, and Roy C. Preiminger, Deputy Attorney General, for Plaintiff and Respondent.

This case reaches us following the conviction of Jose Ambrosia Escalante for aggravated mayhem and aggravated assault, in which great bodily injury and use of a deadly and dangerous weapon during the commission were alleged as enhancements. Appellant presents four arguments to overturn his conviction. First, he contends that he was prejudiced by the request of the court interpreter, made in the presence of the jury, that he not answer questions until the interpreter completed his translation of English into Spanish. Second, appellant argues that there was insufficient evidence to support the charge of aggravated mayhem. Third, he contends that the trial court provided improper verdict forms to the jury. Finally, he argues that there was an improper communication with the jury by the bailiff while appellant was not present. If we affirm his conviction, appellant asks that we modify his sentence to provide that he serve the one year enhancement prior to the life term for aggravated mayhem.

We shall modify the judgment with respect to the sentence, and otherwise affirm.

## FACTUAL SUMMARY

In summarizing the evidence in a case in which the sufficiency of the evidence is challenged, "we view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (People v. Lewis (1990) 50 Cal.3d 262, 277.) The following summary of the evidence

presented at trial is based on this well-established standard. We confine ourselves to evidence relevant to the issues raised by appellant.

The case arose out of an altercation between appellant and the victim, James Brooks, on a day when Brooks was visiting his godmother. As Brooks arrived at his godmother's residence, he encountered appellant who asked to borrow Brooks' car. Brooks refused and proceeded to his godmother's house. Upon returning to his car, Brooks once again saw appellant who was now accompanied by three friends. This time, appellant demanded that Brooks loan him his car. Brooks refused and turned to leave. At this point one of appellant's friends yelled "get him" and all four chased Brooks, who tripped and fell. The four persons began attacking Brooks. During the fight appellant grabbed Brooks by the hair and stabbed Brooks in the right eye with a knife.

At trial, Brooks was unable to see out of his right eye and testified that he was suffering from chronic headaches due to brain damage caused by the knifing.

I

The trial court appointed a certified Spanish/English interpreter for the purpose of assisting appellant in understanding the proceedings. The function of the interpreter was to translate the proceedings and questions stated in English, into Spanish and to translate appellant's responses into English. (See People v. Chavez 124 Cal.App.3d 215 [right

to assistance of an interpreter].) At one point during the direct examination of appellant by his attorney, the interpreter requested that the trial judge ask appellant not to answer questions until the translation of the question from English to Spanish had been completed. The court asked appellant to wait for the translation until answering the question. Appellant argues that this prejudiced him because it implied that he understood English. The prejudice arose from the fact that appellant had testified that he was not fluent in English.

The issue arose again during cross-examination of appellant, when the prosecutor asked appellant how he could answer the questions before they were translated into Spanish if he did not understand English. Appellant replied, "because I'm listening to you."

There was no objection by defense counsel either to the interpreter's request to the judge or to the prosecutor's question.

In closing argument, the prosecutor characterized the appellant as a liar because it was clear that he understood English even though appellant insisted that he did not. When the district attorney argued that this was evident because of the interpreter's comment, defense counsel objected, saying that the comment was not evidence since the interpreter had not been sworn as a witness. The trial judge overruled the objection, reasoning that the prosecutor was allowed to attack

the appellant's demeanor while on the stand, and because the interpreter was a proper witness under oath.

Defense counsel, in closing argument, conceded that appellant had not told the truth about his understanding of English, but argued that this did not justify disregarding appellant's testimony.

In a jury trial, the credibility of a witness is for the jury to determine. It is commonplace in adversarial trial proceedings for the prosecuting and defending attorneys to attempt to discredit some or all of each other's witnesses before the jury by showing that the witness is not trustworthy or is dishonest. The jury may take the demeanor of the witness while on the stand into account in resolving the issue of credibility. (Evid. Code, § 780, subd. (a); see Meiner v. Ford Motor Co. (1971) 17 Cal.App.3d 127, 140.) Appellant's demeanor on the stand indicated that he understood English, even though he denied understanding it. Since appellant chose to reveal his knowledge of English, the prosecuting attorney was entitled to call this disclosure to the attention of the jury. If defense counsel felt that the interpreter's comment improperly drew attention to appellant's demeanor, he could have remedied the effect by an immediate objection. Since there was no objection, appellant lost his right to appellate review of that issue. (People v. Cole (1960) 177 Cal.App.2d 458.)

Appellant also contends that the interpreter was not properly sworn as a witness. The interpreter, Robert

Morgenstern, was sworn to perform the function of an interpreter but was not sworn as a witness in the case. Evidence Code section 710 requires that every witness take an oath or make an affirmation or declaration in the form provided by law. (See People v. Carreon (1984) 151 Cal.App.3d 559.) We agree with appellant that the interpreter was under oath to translate the proceedings but was not a properly sworn witness. Nevertheless, the interpreter was not testifying as a witness, but was only trying to perform his duties as an interpreter for the defendant's benefit. The interpreter has the implied authority to ask a witness to speak slowly or repeat testimony so that he or she can make a correct translation. Appellant's conduct necessitated the interpreter's comment, and he now cannot complain that it prejudiced him since he did not object on the grounds now stated. (See Evid. Code, § 353, subd. (a).)

Although we agree it would have been better if the interpreter had asked to approach the bench and then requested that the judge admonish the witness, we find no basis for reversal.

II

Appellant contends that there was insufficient evidence to convict him of aggravated mayhem. In addition to Brooks' testimony at trial that he could not see out of his right eye, the prosecution presented two experts who testified about the surgery that Brooks had undergone. One of these witnesses, Dr. Mehmet Ozgur, testified that his only contact

with Brooks was to perform surgery to relieve pressure caused by hemorrhaging in the brain. During the operation, the physician removed dead brain cells which had been injured in the knifing. The cells were removed from the frontal lobe which controls judgment and decision making.

The other witness, Dr. Robert Axelrod, was the surgeon that operated on Brooks' eye. He repaired the lower lid of the eye and reattached a detached muscle. Dr. Axelrod expressed concern about whether Brooks' eye would ever again move normally Since he had not seen Brooks since the surgery, Dr. Axelrod was unable to express an opinion as to his recovery, but he did testify that he was not surprised that Brooks was unable to see out of the eye. The prosecution presented two theories in closing argument: first, that there was permanent disability to the eye, and second, that there was permanent damage to the brain due to removal of a section of the frontal lobe.

The jury was instructed on both Penal Code section 205 (aggravated mayhem) and Penal Code section 203 (simple mayhem).[1] The injuries described in section 203 are more

---

[1] Penal Code section 205 provides: "A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body."

Under Penal Code section 203, "[e]very person who unlawfully and maliciously deprives a human being of a member of

narrowly defined than those in section 205. (People v. Ferrell (1990) 218 Cal.App.3d 828, 834.) The aggravated offense, section 205, requires that the victim suffer a permanent disability. Further, section 203 only applies to a "member" of the body. Section 205, however, uses the terms "limb" and "organ" as well as "member."

Appellant argues that the evidence presented regarding Brooks' sight was insufficient to prove that it was a permanent condition. The aggravated mayhem statute is recently enacted (in 1987) and there is little case law on the issue of permanent damage. In People v. Ferrell, supra, 218 Cal.App.3d 828, a woman was convicted of aggravated mayhem after she shot a victim in the neck, causing permanent partial paralysis. The court concluded that "[i]t takes no special expertise to know that a shot in the neck from close range, if not fatal, is highly likely to disable permanently." (Id. at p. 835.) Clearly the harm caused by deliberately knifing a person in the eye has the same propensity for permanent damage. Further, Brooks' own testimony established that six months following surgery he still could not see from the eye. That is sufficient evidence of permanent disability. (See Evid. Code, § 411.)

---

(Fn. 1. cont'd.)

his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear or lip, is guilty of mayhem."

It also was sufficient to establish that Brooks was deprived of an organ, for the eye is defined as the organ of vision. (Dorland's Illustrated Medical Dict. (25th ed. 1974) p. 562.)

Appellant argues that since the jury requested clarification as to whether the brain was an "organ" or a "member," it decided the charge of aggravated mayhem based on the belief that there was permanent damage to the brain, or that Brooks was deprived of the use of his brain. Appellant argues that there was only a partial loss of brain functions, which is insufficient to support the charge of aggravated mayhem.

An organ is defined as "a somewhat independent part of the body that performs a special function or functions." (Dorland's Illustrated Medical Dict., op. cit. supra, p. 1095.) No doubt the brain performs a special function in operating every aspect of the human body. It also is established that the "head" is a "member" of the body. (People v. Newble (1981) 120 Cal.App.3d 444, 449.) The jury was properly instructed that the brain is an organ. There was little evidence that Brooks suffered permanent disability due to damage to his brain. The only evidence on the point is Brooks' testimony that he suffered from headaches. But damage to an organ--here, by the loss of a small number of brain cells, with no related permanent disability--is not sufficient to support a finding of deprivation of an organ under section 205.

This conclusion does not aid appellant, for if there is sufficient evidence for one theory of an offense but not another, and the case goes to the jury on both theories, the resulting conviction must be upheld. (<u>Griffin</u> v. <u>United States</u> (1992) 500 U.S. ___ [112 S.Ct. 466].) Here, there was sufficient evidence of permanent disability to the victim's eye, and the fact that there was insufficient evidence to establish permanent brain damage is not a basis to overturn the conviction.

### III

After closing argument, the trial judge met with both counsel to discuss the verdict forms. The trial judge proposed that, following the Use Note to CALJIC No. 17.10, he would give CALJIC Nos. 17.10 and 17.49, but would not give 17.12. He informed the attorneys that he was going to provide the jury with a "guilty as charged" verdict form, and "guilty" and "not guilty" forms for the lesser crime of simple mayhem. He did not propose to submit a "not guilty as charged" form unless the jury became deadlocked. Defense counsel at first objected, but after clarification, agreed to the forms.

Appellant contends that the verdict forms were ambiguous and left the jury no choice but to convict on the greater crime of aggravated mayhem.

The CALJIC No. 17.10 instruction, as given to the jury, provides that the court cannot accept a guilty verdict on a lesser crime unless the jury has found the defendant not

guilty of the greater offense. The Use Note for this instruction suggests that the trial judge provide the jury with a not guilty as charged form as well as guilty forms for both the lesser and greater crimes. If CALJIC No. 17.10 is given, then the trial judge should also give CALJIC No. 17.49, which instructs the jury that there are three possible outcomes to the case: guilty on the charged crime, guilty on the lesser crime, and not guilty on the lesser crime. However, if guilty and not guilty forms are given for each crime, the greater and the lesser, then CALJIC No. 17.49 should not be given. The Use Note also advises that if the jury becomes deadlocked, the trial judge should instruct the jury to ignore CALJIC No. 17.49, and the judge should then provide guilty and not guilty forms for each crime. (See Stone v. Superior Court (1982) 31 Cal.3d 503.)

Although appellant contends that the verdict forms are ambiguous and unclear, taken as a whole they made clear what decisions the jury had to make in order to return a verdict. (See People v. Burgener (1986) 41 Cal.3d 505, 538-539 [instructions considered as a whole].) The CALJIC No.17.10 instruction clearly informed the jury that it must unanimously find the appellant not guilty of the greater crime before reaching a verdict on the lesser crime. The jury was also instructed to sign only one verdict form. It is settled that a verdict of not guilty on a lesser crime carries the necessary implication that defendant was not guilty of the greater

crime. (See People v. Krupa (1944) 64 Cal.App.2d 592, 598.) It is pure speculation to suggest the jury was confused as to whether it could find appellant not guilty of aggravated mayhem. Assuming, as we must, that the jury followed the instructions of the court and applied them to the verdict forms, it would have decided whether defendant was guilty or not guilty of aggravated mayhem. If it found him guilty of that crime it would have signed and returned the guilty verdict for the aggravated offense, as it did. If it concluded that defendant was not guilty of that crime, the jury would then find him guilty or not guilty of simple mayhem and sign and return a guilty or not guilty verdict.

Although the issue was not raised by either counsel, we question whether simple mayhem is a lesser included offense of aggravated mayhem. A lesser included offense is one that under the statutory definition of the charged offense cannot be committed without committing the lesser offense, or which is necessarily included in the accusatory pleading of the charging allegation. (People v. Geiger (1984) 35 Cal.3d 510, 517, fn. 4.) As we have seen, the brain is an organ, not a member, of the body. The simple mayhem statute refers to a "member" of the body, not an "organ." Since this is true, it is possible to cause permanent disability to the brain and so commit the crime of aggravated mayhem, without violating the simple mayhem statute.

Any error in this case from giving an instruction on

simple mayhem as a lesser included offense was harmless beyond a reasonable doubt both because appellant requested the instruction, and because he benefitted from its having been given. (See <u>Chapman</u> v. <u>California</u> (1967) 386 U.S. 18.)

IV

We next consider whether there was an improper communication with the jury by the bailiff. After the commencement of deliberations, the jury sent the trial judge a note requesting clarification on whether the brain is a limb, organ or member of the body, and asking what constitutes a member of the body. The trial judge met with both attorneys for the formulation of an answer to the jury's questions. Counsel stipulated that the jury be instructed that the brain is an organ of the body, not a member of the body. The attorneys also agreed that the bailiff deliver this response to the jury.

Although it may have been better practice for the judge to have delivered this further instruction in open court, defendants are permitted to waive their right to be present even at "critical stages" of the trial. (<u>People</u> v. <u>Lang</u> (1989) 49 Cal.3d 991, 1026.) Thus, defendants are permitted to waive the right to be present at jury views, re-reading of testimony and jury requests for clarification. (See <u>People</u> v. <u>Lang</u>, <u>supra</u>, 49 Cal.3d at pp. 1025-1028; <u>People</u> v. <u>Cooper</u> (1991) 53 Cal.3d 771, 825.) Appellant presents no evidence of any prejudice that occurred from the bailiff's delivery of the

court's response to the jury, and we conclude that no error occurred.

Appellant also contends that he did not personally waive the right to be present when the further instruction was delivered. A recent Supreme Court case in which the defendant was tried by a temporary judge illuminates this issue. In <u>In re Horton</u>, defendant's attorney argued that a commissioner would preside at trial as a judge pro tempore. Defendant argued that his right to have a judge preside over his trial could not be lost without his "personal, knowing and voluntary waiver of that right." (<u>In re Horton</u> (1991) 54 Cal.3d 82, 90.) The <u>Horton</u> court discussed rights which require a personal waiver by defendant. They include the entire waiver of a trial by a guilty plea, waiver of the right to counsel, and waiver of the right to be free from self-incrimination. For other rights that are of a less personal nature, the courts may assume that counsel's waiver reflects the defendant's consent. (<u>Id</u>. at p. 95.) Here, without any evidence of a conflict between the appellant and defense counsel, the trial judge could properly conclude that the attorney represented appellant's interest and effectively waived defendant's right to be present.

V

Finally, appellant argues that he is entitled to have the judgment modified to require that he serve the determinate one-year prison term for the deadly weapon use enhancement

before he serves the life term for aggravated mayhem. Penal Code section 669 requires that when a trial judge imposes an indeterminate term and a determinate sentence, the determinate sentence must be served first. (See People v. Grimble (1981) 116 Cal.App.3d 678.)[2/] We conclude that appellant is entitled to the modification he seeks, and so order.

### DISPOSITION

The abstract of judgment is modified to reflect the determinate sentence of one-year to be served before the life term. As so modified, the judgment is affirmed.

NOT FOR PUBLICATION
IN THE OFFICIAL REPORTS.

EPSTEIN, J.

We concur:

WOODS (Arleigh), P.J.

STEPHENS, J.*

---

[2/] Penal Code section 669 provides: "Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment imposed pursuant to Sections . . . 12022 . . . the determinate term of imprisonment shall be served first . . . ."

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.