# EXHIBIT E

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life   )
Term Parole Consideration  )
Hearing of:               )  CDC Number E-91258
                           )
JUSTO ESCALANTE         )
                           )
_____)

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

DECEMBER 15, 2005

4:08 P.M.

PANEL PRESENT:

Ms. Margarita Perez, Presiding Commissioner
Mr. Rufus Morris, Deputy Commissioner

OTHERS PRESENT:

Mr. Justo Escalante, Inmate
Ms. Marcia Hurst, Attorney for Inmate
Mr. Jack Delavigne, Deputy District Attorney
Correctional Officers Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE
_____ No    See Review of Hearing
_____ Yes   Transcript Memorandum

**Kristin Ledbetter, Peters Shorthand Reporting**

ii

INDEX

                                                    PAGE

Proceedings....................................... 1

Case Factors..................................... 12

Pre-Commitment Factors........................... 17

Post-Commitment Factors.......................... 27

Parole Plans..................................... 19

Closing Statements............................... 39

Recess........................................... 41

Decision......................................... 42

Adjournment...................................... 57

Transcriber Certification........................ 58

--oOo--

1

```
1              P R O C E E D I N G S

2         DEPUTY COMMISSIONER MORRIS:  We're on

3   record.

4         PRESIDING COMMISSIONER PEREZ:  Thank you.

5   Good afternoon, sir.  This is a Subsequent

6   Parole Consideration Hearing for Justo

7   Escalante, E-S-C-A-L-A-N-T-E, CDC number

8   E-91258.  Today's date is December 15th, 2005.

9   We are located at the Correctional Training

10  Facility at Soledad.  The time is 4:08 p.m.

11  According to the record, sir, you were received

12  by the department on April 18th, 1991.  Your

13  life term began on May 29th, 1991, out of the

14  County of Los Angeles for the offense of

15  aggravated mayhem with use of a deadly weapon,

16  Penal Code Section 205, Penal Code Section

17  12022(b), Case Number PA004647, Count Two, for

18  which you were assessed a term of seven years to

19  life plus one year with a minimum eligible

20  parole date of May 29th, 1998.  Sir, the record

21  also reflects you were convicted of two other

22  offenses, non-controlling offenses.  Both were

23  transporting sales of controlled substance,

24  HNS11352(a), both out of Los Angeles, Count One,

25  Case Number LA005012 and the other Count One,

26  Case Number A820178.  Sir, this hearing is being

27  tape recorded, and for the purposes of voice
```

2

1   identification we're going to go around the room

2   and ask everyone to identify themselves, stating

3   their first name, last name, spelling their last

4   name.  When we get to you, sir, I'd like to ask

5   you to provide us with your CDC number as well.

6   Okay.  I will start with myself and go to my

7   left.  My name is Margarita Perez, P-E-R-E-Z,

8   Commissioner with the Board of Parole Hearings.

9          **DEPUTY COMMISSIONER MORRIS:**  Rufus

10  Morris, M-O double R-I-S, Deputy Commissioner.

11         **DEPUTY DISTRICT ATTORNEY DELAVIGNE:**  Jack

12  Delavigne, D-E-L-A-V-I-G-N-E, Deputy District

13  Attorney, LA County.

14         **ATTORNEY HURST:**  Marcia Hurst, H-U-R-S-T,

15  counsel for Mr. Escalante.

16         **INMATE ESCALANTE:**  Justo Escalante,

17  E-S-C-A-L-A-N-T-E, E-91258.

18         **PRESIDING COMMISSIONER PEREZ:**  Okay.

19  Very good, sir.  I note for the record that we

20  have two correctional officers in the room.

21  They will not be participating in today's

22  hearing.  They are here for the purposes of

23  security.  Sir, before we begin, there's a light

24  blue document sitting in front of you.  Would

25  you read that out loud for me, please.

26         **INMATE ESCALANTE:**  Which one?

27         **PRESIDING COMMISSIONER PEREZ:**  The blue

3

1   one.

2        **INMATE ESCALANTE:**  The blue one.

3        "The Americans with Disabilities

4        Act, ADA, is a law to help people

5        with disabilities.  Disabilities

6        are problems that make it harder

7        for some people to see, hear,

8        breathe, talk walk, learn, think,

9        work, or take care of themselves

10       than it is for others.  Nobody can

11       be kept out of public places and

12       activities because of a

13       disability.  If you have a

14       disability, you have the right to

15       ask for help to get ready for your

16       Board of Parole Hearings, BPH, get

17       to the hearing, talk, read form

18       and papers, and understand the

19       hearing process.  BPH will look at

20       what you ask for to make sure that

21       you have a disability that is

22       covered by the ADA and that you

23       have asked for the right kind of

24       help.  If you do not get help or

25       if you don't think you got the

26       kind of help you need, ask for a

27       BPH 1074 Grievance Form.  You can

4

1          also get help to fill it out."

2          **PRESIDING COMMISSIONER PEREZ:**  Do you

3     understand what that means, sir?

4          **INMATE ESCALANTE:**  Yes.

5          **PRESIDING COMMISSIONER PEREZ:**  Can you

6     tell me what that means in your own words,

7     please.

8          **INMATE ESCALANTE:**  If you have any

9     problems with myself or disabilities or mental

10    problems.

11         **PRESIDING COMMISSIONER PEREZ:**  That you

12    can ask for help.

13         **INMATE ESCALANTE:**  Yes.

14         **PRESIDING COMMISSIONER PEREZ:**  Okay.  And

15    that if you do not receive the assistance you

16    think you need, then you can file a grievance

17    form.

18         **INMATE ESCALANTE:**  Yes.

19         **PRESIDING COMMISSIONER PEREZ:**  Okay.  And

20    I do note for the record that on February 1st,

21    2005, you signed a BPT Form 1073 which is the

22    Request for Reasonable Accommodations Form in

23    which you indicated that you have no

24    disabilities; is that correct, sir?

25         **INMATE ESCALANTE:**  Yes.

26         **PRESIDING COMMISSIONER PEREZ:**  Okay.

27    Very good.  Do you wear glasses, sir?

1          **INMATE ESCALANTE:**  Yeah, I wear glasses.

2          **PRESIDING COMMISSIONER PEREZ:**  Will you

3    require them for today's hearing?

4          **INMATE ESCALANTE:**  No.

5          **PRESIDING COMMISSIONER PEREZ:**  Are you

6    hearing impaired?

7          **INMATE ESCALANTE:**  No.

8          **PRESIDING COMMISSIONER PEREZ:**  Have you

9    ever or are you currently on psychotropic

10   medications?

11         **INMATE ESCALANTE:**  No.

12         **PRESIDING COMMISSIONER PEREZ:**  Are you

13   currently on any medication whatsoever?

14         **INMATE ESCALANTE:**  No.

15         **PRESIDING COMMISSIONER PEREZ:**  Okay.  You

16   received your GED in 2000; is that right?

17         **INMATE ESCALANTE:**  Yes.

18         **PRESIDING COMMISSIONER PEREZ:**  Okay.

19   Very good.  Counsel, have all ADA issues been

20   addressed to the best of your knowledge?

21         **ATTORNEY HURST:**  Yes, they have.

22         **PRESIDING COMMISSIONER PEREZ:**  Thank you.

23   Sir, this hearing is being conducted pursuant to

24   Penal Code Sections 3041 and 3042 and the rules

25   and regulations of the Board of Parole Hearings

26   governing Parole Consideration Hearings for life

27   inmates.  If at any time during today's hearing

6

1  we're talking too fast or if you don't

2  understand something that we're trying to

3  convey, I want you to let us know right away so

4  that we can immediately stop, back up, and make

5  sure, we will make sure that you understand

6  before we proceed.  Okay.

7       **INMATE ESCALANTE:**  Okay.

8       **PRESIDING COMMISSIONER PEREZ:**  Sir, the

9  purpose of today's hearing is to once again to

10  consider your suitability for parole.  In doing

11  so, we will consider the number and nature of

12  the crime you were committed for, your prior

13  criminal and social history, as well as your

14  behavior and programming since your arrival

15  within the California Department of Corrections

16  and Rehabilitation.  Commissioner Morris and

17  myself have had the opportunity to review your

18  record sir, and during today's hearing, you will

19  have the opportunity to correct or clarify that

20  record.  We will reach a decision today and

21  inform you of that decision.  If we do find you

22  suitable for parole, we will explain the length

23  of your confinement to you.  Okay.

24       **INMATE ESCALANTE:**  Okay.

25       **PRESIDING COMMISSIONER PEREZ:**  Sir,

26  before we recess for deliberations, the District

27  Attorney, your attorney, and you will have the

7

1    opportunity to make a closing statement.  Your

2    statement should be limited to why you feel that

3    you are suitable for parole.  We will then

4    recess, clear the room, and deliberate.  Once

5    we've concluded our deliberations, we will

6    resume the hearing and announce our decision.

7    The California Code of Regulations states that

8    regardless of time served a life inmate shall be

9    found unsuitable for and denied parole if in the

10    opinion of the Panel the inmate would pose an

11    unreasonable risk of danger to society.  Do you

12    understand that, sir?

13            **INMATE ESCALANTE:**  Okay.

14            **PRESIDING COMMISSIONER PEREZ:**  Okay.

15    Very good.  Sir, during today's hearing, you

16    have certain rights.  You have the right to a

17    timely notice of this hearing; you have the

18    right to present relevant documents, and you

19    have the right to review your Central File.  And

20    I do note for the record that on February 1st,

21    2005, you were provided the opportunity to

22    review your Central File; is that correct, sir?

23            **INMATE ESCALANTE:**  Yes.

24            **PRESIDING COMMISSIONER PEREZ:**  Did you in

25    fact review it?

26            **INMATE ESCALANTE:**  Yes.

27            **PRESIDING COMMISSIONER PEREZ:**  Okay.

8

1  Very good.  Counsel, have all your client's

2  rights been met to the best of your knowledge?

3          **ATTORNEY HURST:**  Yes, they have.

4          **PRESIDING COMMISSIONER PEREZ:**  Sir, you

5  have an additional right, and that is the right

6  to be heard by an impartial Panel.  Do you have

7  any objections to today's Panel, sir?

8          **INMATE ESCALANTE:**  No.

9          **PRESIDING COMMISSIONER PEREZ:**  Counsel,

10  do you have any objections to today's Panel?

11          **ATTORNEY HURST:**  No, I don't.

12          **PRESIDING COMMISSIONER PEREZ:**  Thank you.

13  Sir, you will receive a copy of our written

14  tentative decision today.  That decision becomes

15  effective within 120 days.  In the future you

16  will receive a copy of the decision as well as a

17  copy of today's transcript.  Okay.

18          **INMATE ESCALANTE:**  Okay.

19          **PRESIDING COMMISSIONER PEREZ:**  Sir, the

20  Board has eliminated its appeals process.  So

21  what that means in terms of today's hearing,

22  it's kind of like the 602 process within the

23  institution.  We've eliminated our appeals

24  process.  So what that means is if you disagree

25  with anything that occurs during today's

26  hearing, you can go directly to the Court with

27  your complaint.  Do you understand?

9

1        **INMATE ESCALANTE:**  Okay.

2        **PRESIDING COMMISSIONER PEREZ:**  Do you

3   understand that?

4        **INMATE ESCALANTE:**  Yes.

5        **PRESIDING COMMISSIONER PEREZ:**  Okay.

6   Very good.  Sir, during today's hearing you are

7   not required to admit to the offense.  You are

8   not required to discuss the offense.  However,

9   it's important for you to understand that this

10   Panel does accept true the findings of the

11   Court.  We are not here to retry your case.  We

12   are here to determine whether or not you are

13   suitable for parole.  Okay.

14        **INMATE ESCALANTE:**  Okay.

15        **PRESIDING COMMISSIONER PEREZ:**  Mr.

16   Morris, is there confidential information, and

17   will we be using it during today's hearing?

18        **DEPUTY COMMISSIONER MORRIS:**  There is

19   confidential information; however, we will not

20   be using any.  No.

21        **PRESIDING COMMISSIONER PEREZ:**  Okay.

22   Sir, I have passed a checklist marked Exhibit

23   One to your counsel to ensure that we are all

24   operating off of the same documents, and at this

25   time I will ask her to verify the accuracy of

26   that checklist.

27        **ATTORNEY HURST:**  I do have all the

10

1   documents.  Thank you.

2       **PRESIDING COMMISSIONER PEREZ:**  I will ask

3   the same question of the DA.

4       **DEPUTY DISTRICT ATTORNEY DELAVIGNE:**  I

5   have them.  Thank you.

6       **PRESIDING COMMISSIONER PEREZ:**  Thank you.

7   Counsel, any additional documents to submit to

8   this Panel today?

9       **ATTORNEY HURST:**  Yes.  There is an

10  additional support letter dated December 4th,

11  2005.  I think I can give one but

12  (indiscernible).

13      **PRESIDING COMMISSIONER PEREZ:**  Okay.  Do

14  you have any preliminary objections, counsel?

15      **ATTORNEY HURST:**  No.

16      **PRESIDING COMMISSIONER PEREZ:**  Will your

17  client be speaking with us?

18      **ATTORNEY HURST:**  He will only be speaking

19  as to post conviction.

20      **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

21  does that mean he will not be speaking about his

22  criminal history?

23      **ATTORNEY HURST:**  That's correct.

24      **PRESIDING COMMISSIONER PEREZ:**  Okay.

25  Will he be discussing personal factors?

26      **ATTORNEY HURST:**  No, just post

27  conviction.

11

1        **PRESIDING COMMISSIONER PEREZ:**  Okay.
2   What about --
3        **ATTORNEY HURST:**  Well, current personal
4   factors and parole plans, no prior social
5   history, no.
6        **PRESIDING COMMISSIONER PEREZ:**  Okay.  So
7   then we would not be discussing personal factors
8   because that's typically what's covered is
9   everything, his life prior to CDC.
10       **ATTORNEY HURST:**  Right.
11       **PRESIDING COMMISSIONER PEREZ:**  Okay.  So
12  the only thing he'll be discussing with me is
13  his parole plans and post conviction.
14       **ATTORNEY HURST:**  And post conviction.
15       **PRESIDING COMMISSIONER PEREZ:**  Post
16  conviction.
17       **ATTORNEY HURST:**  Yes.  That's correct.
18       **PRESIDING COMMISSIONER PEREZ:**  Okay.
19  Very good.
20       **ATTORNEY HURST:**  And if he wants to
21  change his mind during the course of the
22  hearing, that's fine too.
23       **PRESIDING COMMISSIONER PEREZ:**  It's
24  certainly your option, sir.  Okay.  Sir, before
25  we begin I do need to swear you in nevertheless,
26  if I can get you to raise your right hand.  Do
27  you solemnly swear or affirm that the testimony

12

1    you provide will be the truth, the whole truth,

2    and nothing but the truth?

3              **INMATE ESCALANTE:**  Yes.

4              **PRESIDING COMMISSIONER PEREZ:**  Okay.

5    Very good.  Sir, what I will do is I will read

6    into the record the commitment offense and your

7    version according to the counselor's report, and

8    then after that we'll move on to the next

9    section in that you have opted not to discuss

10   the commitment offense.  Do you understand

11   everything I've said so far?

12             **INMATE ESCALANTE:**  Yes.

13             **PRESIDING COMMISSIONER PEREZ:**  Okay.

14   Very good.  I will read into the record the

15   summary of the crime as well as the prisoner's

16   version as outlined in the May 2005 counselor's

17   report prepared by Correctional Counselor One S.

18   Martinez, M-A-R-T-I-N-E-Z.  And the record

19   states,

20             "On September 10th, 1990, at

21             approximately 4:20 a.m. victim

22             James Brooks got into an argument

23             with the prisoner, Justo

24             Escalante.  Escalante wanted to

25             borrow the victim's car but the

26             victim refused.  Escalante and

27             some of his friends started

13

1          hitting and kicking the victim.

2          While the victim was down,

3          Escalante struck the victim in the

4          eye with a knife penetrating the

5          brain.  Escalante was arrested on

6          September 26th, 1990, while in

7          custody on another matter.  The

8          victim James Brooks told the

9          probation officer that on the

10         night of the attack his girlfriend

11         was arguing with Escalante.

12         Brooks stated that when he

13         approached the two Escalante

14         pulled a knife.  Brooks retreated;

15         however, he slipped in the mud.

16         Escalante's friends kicked and hit

17         the victim Brooks, and Escalante

18         stabbed the victim in the right

19         eye.  The victim says he blacked

20         out and did not remember anything

21         until approximately six days

22         later.  The victim further stated

23         that he used to be a friend of

24         Escalante's and did not understand

25         the unprovoked attack.  The victim

26         suffered permanent loss of sight

27         in his right eye and a frontal

14

1          lobotomy was performed resulting

2          in permanent brain damage.  The

3          victim's medical bills were in

4          excess of 177,000 dollars.  The

5          victim stated that he wanted

6          Escalante to pay for what he did.

7          There are no other crime partners

8          named in the POR."

9  In terms of the inmate's version, the record

10  reflects,

11         "Inmate Escalante stated that he

12         is innocent of this crime, noting

13         that he did not plead guilty but

14         rather that he was convicted by a

15         jury trial.  Escalante claims that

16         he did not commit the crime, nor

17         was he in the area when this crime

18         occurred.  Escalante stated that

19         he knew the area where the crime

20         had occurred and had been in the

21         area before.  But according to

22         Escalante, on that particular

23         night he was in an apartment

24         building with a friend far away

25         from the crime scene.  Escalante

26         points out that it would have been

27         difficult for him to have

15

1        committed the crime because the

2        victim was a large adult male, and

3        Escalante was much smaller than

4        the victim.  Escalante stated the

5        first time he ever saw the victim

6        was in the courtroom.  He stated

7        that he did not know the victim,

8        denying the victim's statement

9        that they were once friends.

10       Escalante states that he did not

11       speak English at the time of his

12       arrest and argues, how could he

13       have been friends with the

14       English-speaking victim.

15       Escalante pointed out the fact

16       that if he was guilty of this

17       crime, he would have fled the

18       jurisdiction and not remained in

19       the same area.  Escalante also

20       stated that he never had a knife."

21  Comments, counsel.

22       **ATTORNEY HURST:**  Actually, I do have one

23  comment, and you know, it was a terrible crime,

24  but I would note that on page ten of the

25  appellate report that there is an indication

26  that there was insufficient evidence to

27  establish permanent brain damage, although there

16

1   was obviously an alternate theory to support the

2   conviction.  But nevertheless, I think that's of

3   some importance.

4        **PRESIDING COMMISSIONER PEREZ:**   Thank you.

5   In terms of the inmate's criminal record, the

6   record reflects that you have a US INS Hold to

7   Honduras.  There is no juvenile arrest record

8   noted in the file.  The record does reflect that

9   you were arrested by the Los Angeles Police

10  Department for transporting and sales of

11  controlled substance.  In 1988 you were

12  convicted of a felony and sentenced to 36 months

13  probation, 180 days in jail, a fine, and a

14  suspended prison sentence.  In April of 1989,

15  sir, you were arrested by the Los Angeles Police

16  Department for murder.  You were subsequently

17  released due to lack of corpus.  Again, in 1989

18  you were arrested by the Los Angeles Police

19  Department for being a felon addict in

20  possession of a firearm.  You were convicted of

21  a misdemeanor and sentenced to probation and

22  jail.  In 1990 you were arrested by the Los

23  Angeles Police Department for grand theft auto.

24  You were released due to lack of sufficient

25  evidence.  Again, in 1990, you were arrested for

26  possession of narcotics, controlled substance.

27  A warrant was issued for possession of bad

17

1   checks, money order.  No disposition is noted.

2   Again, in 1990, you were arrested by the Los

3   Angeles Police Department for transportation,

4   sales of narcotics and controlled substance, and

5   in September of 1990 a warrant was issued.

6   Again, in 1990, you were arrested by the Los

7   Angeles Police Department for attempted murder

8   which is part of the commitment offense.

9   Comments, counsel.

10       **ATTORNEY HURST:**  Yes.  I do have a couple

11   of comments there.  There are several of these

12   that were arrests that did not result in

13   convictions, but, however, there were two that

14   were deemed not arrests but detained only, and

15   that would be 4/14/89, arrest for murder.  That

16   was not an arrest, and I think 3/13/90, the

17   grand theft vehicle, that was a detained only as

18   well according to the rap sheet.

19       **PRESIDING COMMISSIONER PEREZ:**  Okay.

20   Thank you.  Do you have anything else?

21       **ATTORNEY HURST:**  No.  That's it.

22       **PRESIDING COMMISSIONER PEREZ:**  In terms

23   of the inmate's personal factors, the record

24   reflects that he was about 21 at the time of the

25   offense, and he's currently approximately 36

26   years of age.  Escalante is one of five children

27   born to Debra and Jose Escalante in Honduras.

18

1    Escalante's father and two brothers still reside
2    in Honduras.  They came to the United States
3    from Honduras in 1984.  He has two sisters who
4    currently live in Southern California.  His
5    mother passed away in 1988.  The record reflects
6    he has no children, and he's never been married.
7    Furthermore, the record reflects that you
8    attended school in Honduras until the age of 13,
9    never serving in the Armed Forces.  The record
10   reflects Escalante claims that he began drinking
11   alcohol at the age of 16.  At the time of his
12   arrest he was consuming approximately two six
13   packs weekly.  He claims he began smoking
14   marijuana at the age of 19, and at the time of
15   his arrest, he was smoking marijuana
16   approximately two joints weekly.  He claims he
17   began snorting cocaine at the age of 26, and at
18   the time of his arrest, he was spending
19   approximately 100 dollars weekly to support his
20   habit.  The POR further states, indicates, that
21   Escalante supported himself through day work
22   either in construction or pool cleaning.  He
23   made about 50 to 60 dollars an hour when work
24   was available.  There was no gang affiliation
25   noted.  There is no history of sexual deviation
26   or mental disorder.  Escalante is currently 37
27   years old.  There are no medical problems noted

19

1   at this time.  Any comments, counsel?

2          **ATTORNEY HURST:**  No, no comments.

3          **DEPUTY DISTRICT ATTORNEY DELAVIGNE:**  It

4   was 50 or 60 dollars a day.

5          **PRESIDING COMMISSIONER PEREZ:**  Did I say

6   something else?

7          **DEPUTY DISTRICT ATTORNEY DELAVIGNE:**  You

8   said an hour.

9          **PRESIDING COMMISSIONER PEREZ:**  Okay.  A

10  day.  That would be pretty good if it was 50 to

11  60 dollars an hours.  Okay.  Now, sir, we get to

12  the portion where are willing to, the portion

13  where you are willing to speak with us, your

14  future plans.  The record reflects you have a US

15  INS Hold; is that correct?

16         **INMATE ESCALANTE:**  Yes.

17         **PRESIDING COMMISSIONER PEREZ:**  Okay.  It

18  is your plan upon your release to parole given

19  the fact that more likely than not you would be

20  deported to Honduras.

21         **INMATE ESCALANTE:**  Yes.

22         **PRESIDING COMMISSIONER PEREZ:**  That you

23  would either live with your brother or your

24  cousin in Honduras.

25         **INMATE ESCALANTE:**  Yes.

26         **PRESIDING COMMISSIONER PEREZ:**  Okay.

27  Were you in this country illegally?

20

1          **INMATE ESCALANTE:**  Illegally, yeah.

2          **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

3    you didn't, did you have a green card or

4    anything?

5          **INMATE ESCALANTE:**  No.

6          **PRESIDING COMMISSIONER PEREZ:**  No

7    permission?

8          **INMATE ESCALANTE:**  No.

9          **PRESIDING COMMISSIONER PEREZ:**  So there

10   is probably very small chance that you would

11   remain in the US, right?

12         **INMATE ESCALANTE:**  Yes.

13         **PRESIDING COMMISSIONER PEREZ:**  Okay.  In

14   terms of your employment plans, the record

15   reflects that it is your plan to work with an

16   electrician or a plumber and that you have

17   experience in both of those fields.

18         **INMATE ESCALANTE:**  Yes.

19         **PRESIDING COMMISSIONER PEREZ:**  Where did

20   you gain that experience, sir?

21         **INMATE ESCALANTE:**  My dad.

22         **PRESIDING COMMISSIONER PEREZ:**  Pardon me?

23         **INMATE ESCALANTE:**  My father.

24         **PRESIDING COMMISSIONER PEREZ:**  From your

25   father, both of them?

26         **INMATE ESCALANTE:**  Yes.

27         **PRESIDING COMMISSIONER PEREZ:**  Both of

21

1    them, very good.  Have you completed some

2    vocations within the institution that you would

3    be able to utilize?

4         INMATE ESCALANTE:  No, not here.

5         PRESIDING COMMISSIONER PEREZ:  Not here,

6    okay, but you have some experience as an

7    electrician and a plumber.

8         INMATE ESCALANTE:  Yes.

9         PRESIDING COMMISSIONER PEREZ:  And you

10   learned those skills from your father.

11        INMATE ESCALANTE:  Yes.

12        PRESIDING COMMISSIONER PEREZ:  And this

13   was where, in Honduras or here?

14        INMATE ESCALANTE:  Honduras.

15        PRESIDING COMMISSIONER PEREZ:  In

16   Honduras.  Okay.  Very good.  Sir, you have a

17   letter of support, right?

18        INMATE ESCALANTE:  Yes.

19        PRESIDING COMMISSIONER PEREZ:  Okay.  It

20   looks to me like you have several.  Let me read

21   into the record the first one, the one that was

22   provided by your counsel, and this is your

23   niece.

24        INMATE ESCALANTE:  My niece, yes.

25        PRESIDING COMMISSIONER PEREZ:  Carla

26   Figueroa, right.  This letter is dated December

27   4th, 2005.  Now, she lives where, in Honduras?

22

1          **INMATE ESCALANTE:**  No.  She lives in

2    Canoga Park.

3          **PRESIDING COMMISSIONER PEREZ:**  She lives

4    in Canoga.  Where is it, Canoga Park?

5          **INMATE ESCALANTE:**  Yes.

6          **PRESIDING COMMISSIONER PEREZ:**  Okay.  The

7    letter, this letter, again, is from your niece,

8    and she, in the letter she does convey her

9    support for you, and she further states,

10          "I would like to ask you to

11          consider his good conduct in all

12          these years he has been in there

13          and give him his freedom back.  He

14          is a good man, and I am willing to

15          help him in any way that I can."

16    Right.  And then we have another letter from

17    David Jonathon Escalante, and he is your

18    brother.

19          **INMATE ESCALANTE:**  My brother, younger

20    brother.

21          **PRESIDING COMMISSIONER PEREZ:**  And he

22    lives where?  Where does he live?

23          **INMATE ESCALANTE:**  Honduras.

24          **PRESIDING COMMISSIONER PEREZ:**  Honduras.

25    Okay.  And this letter is dated May 5th, 2005.

26    In the letter he writes,

27          "I wish to inform you that prison,

23

```
 1              that my brother is in prison, and

 2              I would like to plead to you if

 3              he, if one day he were to come

 4              back to Honduras, he would be

 5              living in his own house beside me

 6              and my family which would be,

 7              which and we would be waiting for

 8              him with open arms."

 9    Now, does your brother own a couple of houses?

10              INMATE ESCALANTE:  Yeah.

11              PRESIDING COMMISSIONER PEREZ:  Okay.  One

12    of them is right next door to the home that he

13    lives?

14              INMATE ESCALANTE:  Yeah.

15              PRESIDING COMMISSIONER PEREZ:  Okay.  So

16    that is the one that you would live in?

17              INMATE ESCALANTE:  Yes.

18              PRESIDING COMMISSIONER PEREZ:  Okay.

19    Very good.  And then we have another letter, and

20    this is from Juan Dela Guzvonsaka (phonetic)

21    (indiscernible).

22              INMATE ESCALANTE:  (Indiscernible.)

23              PRESIDING COMMISSIONER PEREZ:  And what

24    is that?

25              INMATE ESCALANTE:  It's a college

26    building.  He owns it, and he got work for me

27    over there.
```

24

1          **PRESIDING COMMISSIONER PEREZ:**  And he's

2     got work for you.

3          **INMATE ESCALANTE:**  Yes.

4          **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

5     it's an institution of higher learning.

6          **INMATE ESCALANTE:**  It's like a college

7     place.

8          **PRESIDING COMMISSIONER PEREZ:**  A college

9     place.

10         **INMATE ESCALANTE:**  Yeah.  He bought the

11    building, and he rent it for.

12         **PRESIDING COMMISSIONER PEREZ:**  Oh, I see,

13    I see.  Okay.  So he owns the building.

14         **INMATE ESCALANTE:**  He owns the building.

15         **PRESIDING COMMISSIONER PEREZ:**  Where

16    education is offered.

17         **INMATE ESCALANTE:**  Yes.

18         **PRESIDING COMMISSIONER PEREZ:**  In the

19    letter he writes, I wish to give this friend —

20    he's a friend of yours.

21         **INMATE ESCALANTE:**  Yes.

22         **PRESIDING COMMISSIONER PEREZ:**  You've

23    known him for years.

24         **INMATE ESCALANTE:**  Yeah.  When I was a

25    little boy over there.

26         **PRESIDING COMMISSIONER PEREZ:**  Over

27    there.  Okay.

25

```
 1          "I would like to give this friend
 2          the opportunity to make a better
 3          person by offering him a job as an
 4          English teacher for my school as
 5          well as other management duties
 6          that he knows, by which I will be
 7          paying him 421 dollars."
 8   Right?
 9          INMATE ESCALANTE:  Yes.
10          PRESIDING COMMISSIONER PEREZ:  Is it
11   8,000 (indiscernible), or what are they?
12          INMATE ESCALANTE:  Lempiras.
13          PRESIDING COMMISSIONER PEREZ:  What is
14   it?
15          INMATE ESCALANTE:  Lempiras.
16          PRESIDING COMMISSIONER PEREZ:  Lempiras.
17   Okay.  A month which equates 421 dollars a
18   month.
19          INMATE ESCALANTE:  Yes.
20          PRESIDING COMMISSIONER PEREZ:  And you
21   can make a living on 421 dollars a month in
22   Honduras?
23          INMATE ESCALANTE:  Yes.
24          PRESIDING COMMISSIONER PEREZ:  Okay.
25   It's a lot less expensive than here, right?
26          INMATE ESCALANTE:  Yeah, it is.
27          PRESIDING COMMISSIONER PEREZ:  Sir, are
```

26

1    there any other letters of support, offers of

2    -- what I'm looking for mainly is offers of

3    employment or offers of residence.  Are there

4    any other?

5           **INMATE ESCALANTE:**  That's the only one I

6    have.

7           **PRESIDING COMMISSIONER PEREZ:**  Pardon me?

8           **INMATE ESCALANTE:**  That's the only one I

9    have.

10          **PRESIDING COMMISSIONER PEREZ:**  That's the

11   only one you have.

12          **INMATE ESCALANTE:**  Yeah.

13          **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

14   we've already entered into the record everything

15   about your parole plans, right?

16          **INMATE ESCALANTE:**  Yes.

17          **PRESIDING COMMISSIONER PEREZ:**  Okay.

18   Very good.  Sir, pursuant to Penal Code Section

19   3042, notices were sent to agencies that would

20   have a direct interest in your case, such as the

21   Public Defenders Office, law enforcement, and

22   Superior Court, and the District Attorney's

23   Office.  And I note that although we didn't get

24   anything in writing from any of those entities,

25   we do have the District Attorney from Los

26   Angeles County who will be making a statement

27   prior to the conclusion of this hearing.  Okay.

27

1   At this time, Commissioner Morris will discuss

2   with you what you've been doing within the

3   institutions.   Okay.

4        **DEPUTY COMMISSIONER MORRIS:**   Okay.   Mr.

5   Escalante, your last hearing was May 27th of

6   '03.

7        **INMATE ESCALANTE:**   Yeah.

8        **DEPUTY COMMISSIONER MORRIS:**   And at that

9   time you had a two-year denial.

10        **INMATE ESCALANTE:**   Yes.

11        **DEPUTY COMMISSIONER MORRIS:**   Okay.   It

12   looks like you were received 4/18 of '91, and

13   I'll just kind of quickly go through your

14   movement through the institution here since you

15   were received at CCI Reception Center.   That's

16   April 18 of '91.   On June of '91, you were

17   transferred to Pelican Bay.   In July of '93, you

18   were transferred to State Prison, Los Angeles

19   County.   So you were down there for the opening

20   of that one.

21        **INMATE ESCALANTE:**   Yeah.   Lancaster.

22        **DEPUTY COMMISSIONER MORRIS:**   And it looks

23   like October 9 of '97, you were transferred to,

24   is it Ironwood State Prison.   And on 7/8 of '98,

25   you were transferred here, CTF, and that's where

26   you -- okay, you've been here since '98.

27        **INMATE ESCALANTE:**   Yes.

28

1     **DEPUTY COMMISSIONER MORRIS:**  Okay.  As I

2  go through the file, I see several chronos

3  talking about various Adult Basic Education test

4  scores.  I see a test score of 5.0, 6.4, 6.7.  I

5  also see a GED that you earned dated October 13

6  of 2000.

7     **INMATE ESCALANTE:**  Yes.

8     **DEPUTY COMMISSIONER MORRIS:**  Okay.  With

9  that GED completed, have you been able to

10  participate in or complete any vocational

11  programs?

12     **INMATE ESCALANTE:**  No.  They got me on

13  the waiting list.

14     **DEPUTY COMMISSIONER MORRIS:**  Okay.  Since

15  1991?

16     **INMATE ESCALANTE:**  Yes.

17     **DEPUTY COMMISSIONER MORRIS:**  Okay.  I see

18  that you're on the bulk computer waitlist.  I

19  saw that.  I saw machine shop waitlist.

20     **INMATE ESCALANTE:**  Yes.

21     **DEPUTY COMMISSIONER MORRIS:**  What's the

22  bar to getting in?  What's the problem?  Why

23  can't you get into a vocation?

24     **INMATE ESCALANTE:**  You got to wait

25  because the list is long.

26     **DEPUTY COMMISSIONER MORRIS:**  Well, we're

27  talking 14 years down the road now.

29

1          **INMATE ESCALANTE:**  No.  I'm on the

2    waiting list since after I got my GED.

3          **DEPUTY COMMISSIONER MORRIS:**  Okay.  In

4    2000.

5          **INMATE ESCALANTE:**  Yes.

6          **DEPUTY COMMISSIONER MORRIS:**  Okay.

7    That's right.  So you were not eligible until

8    you got the GED.

9          **INMATE ESCALANTE:**  Right.

10          **DEPUTY COMMISSIONER MORRIS:**  Okay.  Now,

11    as I review your C-File, I also see that you

12    were involved in those ABE classes all through

13    the '90s.

14          **INMATE ESCALANTE:**  Yes.

15          **DEPUTY COMMISSIONER MORRIS:**  Okay.  And

16    that got you to the point where you could pass

17    your GED.  After that, what did you do?  What

18    are you doing now?  Are you working anywhere?

19          **INMATE ESCALANTE:**  I'm working on the

20    Chapel, Catholic Chapel.

21          **DEPUTY COMMISSIONER MORRIS:**  Say that

22    again slowly.

23          **INMATE ESCALANTE:**  Catholic Chapel.

24          **DEPUTY COMMISSIONER MORRIS:**  Are you a

25    clerk over there?

26          **INMATE ESCALANTE:**  No.  I'm the porter.

27          **DEPUTY COMMISSIONER MORRIS:**  Porter?

30

1          **INMATE ESCALANTE:**  Yes.

2          **DEPUTY COMMISSIONER MORRIS:**  And when did

3    you become a porter?

4          **INMATE ESCALANTE:**  Right after I got my

5    GED.

6          **DEPUTY COMMISSIONER MORRIS:**  So you've

7    been a porter since --

8          **INMATE ESCALANTE:**  In 2000, December

9    2000.

10         **DEPUTY COMMISSIONER MORRIS:**  In 2000,

11   December 2000?

12         **INMATE ESCALANTE:**  Yeah.

13         **DEPUTY COMMISSIONER MORRIS:**  So all of

14   2003 through today.

15         **INMATE ESCALANTE:**  Yes.

16         **DEPUTY COMMISSIONER MORRIS:**  Okay.  And

17   can I assume that your supervisory work reports

18   are satisfactory?

19         **INMATE ESCALANTE:**  Yeah.

20         **DEPUTY COMMISSIONER MORRIS:**  Huh?

21         **INMATE ESCALANTE:**  Yes.  I have some.

22         **ATTORNEY HURST:**  Under notices and

23   responses there is actually a letter.

24         **DEPUTY COMMISSIONER MORRIS:**  I don't see

25   it.  I see '98, '98, Catholic Chapel,

26   (indiscernible) George Martin.

27         **INMATE ESCALANTE:**  Yeah.

31

1        **DEPUTY COMMISSIONER MORRIS:**  Is that who
2    you work for?
3        **INMATE ESCALANTE:**  No.  Now, I work for
4    Chaplain Christine.
5        **DEPUTY COMMISSIONER MORRIS:**  Okay.  I see
6    a chrono dated 4/11 of 2003, with exceptional
7    reports.  Before that, I see you were – it looks
8    like you tried machine shop, a machine or
9    something like that.  What happened with that?
10       **INMATE ESCALANTE:**  I was moved here.  I
11   was in North (indiscernible).
12       **DEPUTY COMMISSIONER MORRIS:**  That's
13   right, North.  They had a class for you at
14   North, but you had to move out of there.
15       **INMATE ESCALANTE:**  Yeah.  I think the
16   class was closed.
17       **DEPUTY COMMISSIONER MORRIS:**  Okay.  In
18   2000, you were at North.  Catholic Chapel, with
19   satisfactory work reports, and the only other
20   chrono I see after that -- that's the last
21   chrono.
22       **INMATE ESCALANTE:**  I have one from
23   Christine, my new boss Christine Manyamana
24   (phonetic).
25       **DEPUTY COMMISSIONER MORRIS:**  Okay.  And
26   what does she say about you?
27       **INMATE ESCALANTE:**  There's a letter

1    there.  I haven't read it yet.

2          **DEPUTY COMMISSIONER MORRIS:**  Did she give

3    it to you?

4          **ATTORNEY HURST:**  Here, it's under notices

5    and responses rather than a chrono.

6          **DEPUTY COMMISSIONER MORRIS:**  Then why

7    would it go to the file if you haven't seen it,

8    you don't know anything about it?

9          **INMATE ESCALANTE:**  Yeah.  I put them in

10   the file there.

11         **DEPUTY COMMISSIONER MORRIS:**  The question

12   is what do you know about it?

13         **INMATE ESCALANTE:**  No.  She asked me

14   about my —

15         **DEPUTY COMMISSIONER MORRIS:**  Talk to me

16   now.  I'm asking you about your last supervisory

17   report.  That's who you work for now, right?

18         **INMATE ESCALANTE:**  Yeah.

19         **DEPUTY COMMISSIONER MORRIS:**  Christine?

20         **INMATE ESCALANTE:**  Yeah, Christine.

21         **DEPUTY COMMISSIONER MORRIS:**  What does

22   Christine say about you?

23         **INMATE ESCALANTE:**  It's right there.

24         **DEPUTY COMMISSIONER MORRIS:**  I'm asking

25   you.

26         **PRESIDING COMMISSIONER PEREZ:**  Did you

27   read the letter?

33

1            **INMATE ESCALANTE:**  No.  I don't have it.
2            **DEPUTY COMMISSIONER MORRIS:**  Okay.  See,
3    I don't understand how you could possibly have
4    something in your file that you don't know
5    about.  That's suspicious to me.  It doesn't
6    sound right.  March 10 of '05, March 10 of '05.
7    Okay.  All right.  Does anyone else have any
8    good things to say about you?
9            **INMATE ESCALANTE:**  No.
10           **DEPUTY COMMISSIONER MORRIS:**  Okay.  And
11   as I indicated, that chrono is not in the file,
12   so what do -- do you know what you need to do
13   with that?
14           **INMATE ESCALANTE:**  No.
15           **DEPUTY COMMISSIONER MORRIS:**  You said
16   you've given, have you given it to your
17   counselor?
18           **INMATE ESCALANTE:**  Yeah.
19           **DEPUTY COMMISSIONER MORRIS:**  Okay.  So
20   the counselor is going to see that it gets to
21   the file maybe.
22           **INMATE ESCALANTE:**  Yeah.  That in the
23   file.
24           **DEPUTY COMMISSIONER MORRIS:**  But before
25   he does that, hopefully, you'll read it before
26   you -- you need to know what goes in your file.
27   Have you ever reviewed your file?

34

1        **INMATE ESCALANTE:**  Yeah, I did.

2        **DEPUTY COMMISSIONER MORRIS:**  Okay.

3        **ATTORNEY HURST:**  Commissioner Morris.

4        **DEPUTY COMMISSIONER MORRIS:**  Yes.

5        **ATTORNEY HURST:**  I'm just noting -- this

6    is the notes that I took from the C-File, not

7    from this file but from the C-File, and I did

8    note it, so it would appear that I found it

9    somewhere in the C-File.

10        **DEPUTY COMMISSIONER MORRIS:**  Okay.

11        **ATTORNEY HURST:**  At that time.

12        **DEPUTY COMMISSIONER MORRIS:**  Okay.

13        **ATTORNEY HURST:**  Which was about two and

14    a half weeks ago.

15        **DEPUTY COMMISSIONER MORRIS:**  Okay.  Well,

16    it's not where it's supposed to be today.  It

17    should be right here.  I may run across it by

18    and by, but it's not where it's supposed to be,

19    and these things are listed in chronological

20    order.

21        **ATTORNEY HURST:**  Well, I don't think it

22    was filed as a chrono but either in

23    miscellaneous or back in parole.

24        **DEPUTY COMMISSIONER MORRIS:**  Maybe it's a

25    general chrono or something, but it's not, it's

26    not as a supervisory work report which is what

27    I'm looking at right now.

35

1          **ATTORNEY HURST:**  Right.  You're right.

2          **DEPUTY COMMISSIONER MORRIS:**  It may be a

3    different document.  Okay.  We'll get there.

4    Okay.  That chapel porter, is that a pay number?

5          **INMATE ESCALANTE:**  Yes.

6          **DEPUTY COMMISSIONER MORRIS:**  Okay.  And

7    what do you earn there?

8          **INMATE ESCALANTE:**  Twenty dollar.

9          **DEPUTY COMMISSIONER MORRIS:**  Okay.  All

10   right.  Anything else about your work or

11   vocations that we need to talk about?  Did we

12   miss anything?

13         **INMATE ESCALANTE:**  No.

14         **DEPUTY COMMISSIONER MORRIS:**  Okay.  All

15   right.  Let me, let me ask you about self-help,

16   and I notice that you've got alcohol, marijuana,

17   cocaine in your history, and I see a number of

18   chronos in your file it seems like from about

19   1995 through '04, with through '05, chronos

20   talking about AA participation.  So you've

21   participated?

22         **INMATE ESCALANTE:**  Yeah.

23         **DEPUTY COMMISSIONER MORRIS:**  With some

24   regularity?

25         **INMATE ESCALANTE:**  Well, you know, once

26   in a while if you wish you talk, you can get up.

27         **DEPUTY COMMISSIONER MORRIS:**  Okay.  Have

36

1  you learned anything about the 12 Steps?

2          **INMATE ESCALANTE:**  Yeah.

3          **DEPUTY COMMISSIONER MORRIS:**  What's

4  Number Nine?

5          **INMATE ESCALANTE:**  Huh?  Number Nine?

6  Made direct amends to such people except when to

7  do so would injure them or others.

8          **DEPUTY COMMISSIONER MORRIS:**  Okay.  Good.

9  I also see that you've taken some classes.  This

10  goes back way before your last hearing, but I'm

11  just going to bring it forward anyway.  You took

12  some health classes, health care classes, having

13  to do with HIV, AIDS, TB, sexually transmitted

14  disease, Tuberculosis, those kind of things, and

15  that was in '02.

16          **INMATE ESCALANTE:**  Yes.

17          **DEPUTY COMMISSIONER MORRIS:**  And I see in

18  '05, the only thing I see in terms of

19  participating in anything is the soccer league.

20  Have you done anything else besides the soccer

21  league?

22          **INMATE ESCALANTE:**  Well, I've done Anger

23  Management.  I've done the Impact Program.

24          **DEPUTY COMMISSIONER MORRIS:**  What year

25  did you -- you did Anger Management in '05, this

26  year?

27          **INMATE ESCALANTE:**  No, no, not this year.

37

1       **DEPUTY COMMISSIONER MORRIS:**  Okay.  What

2  else have you done since?

3       **INMATE ESCALANTE:**  I just go to the

4  regular meetings.

5       **DEPUTY COMMISSIONER MORRIS:**  What else

6  have you done besides AA in '03?

7       **INMATE ESCALANTE:**  AA and NA.

8       **DEPUTY COMMISSIONER MORRIS:**  Okay.  So

9  just AA.

10       **INMATE ESCALANTE:**  Yes.

11       **DEPUTY COMMISSIONER MORRIS:**  Okay.

12       **INMATE ESCALANTE:**  And NA.

13       **DEPUTY COMMISSIONER MORRIS:**  AA and NA.

14  Right.  All right.  All right.  Let me move on

15  to the psych report.  Okay.  I'm looking at a

16  mental health evaluation dated December 7 of

17  '05.  This document is authored by, it looks

18  like Petracek, the contract psychologist, and

19  I'm looking at diagnosis here on page three.

20  It's the second section from the bottom.  Under

21  Axis I, you're listed as Poly-substance Abuse,

22  as having Poly-substance Abuse by History and

23  that is in Institutional Remission; Axis II is

24  Deferred; Axis III, None; Axis IV is

25  Psychosocial Stressors to Include Incarceration;

26  Axis V, the Global Assessment Functioning test,

27  commonly called a GAF Score is 75.  I'm looking

38

1    at assessment of dangerousness, and Petracek
2    indicates that within a controlled setting your
3    risk is minimal.  If released in the community,
4    the risk is -- or if released into the
5    community, the risk is also minimal.
6    Significant risk factors, precursors to
7    violence, are his past alcohol and substance
8    abuse, and relapse would increase his risk of
9    violence, risk for violence and due to gains he
10   has made, he has not received any CDC 115s and
11   has matured since being incarcerated.  Under
12   comments and recommendations, she goes on to say
13   that if paroled you should be mandated to attend
14   both NA, AA and have frequent, periodic drug
15   testing for alcohol and illegal substances.  She
16   says that this inmate's still denies any
17   responsibility for his crime.  He needs to
18   develop some insight or reasonable explanation
19   before being considered for parole.  Those
20   comments were authored by Petracek.  And having
21   heard that, do you take exception to any part of
22   that, or do you agree with that?
23        **INMATE ESCALANTE:**  Agree with what?
24        **DEPUTY COMMISSIONER MORRIS:**  Anything
25   that she just said about you, do you take
26   exception to any of that, or is it pretty much
27   right on?

39

1          **INMATE ESCALANTE:**  It's all right.

2          **DEPUTY COMMISSIONER MORRIS:**  It's okay?

3          **INMATE ESCALANTE:**  It's okay.

4          **DEPUTY COMMISSIONER MORRIS:**  Okay.  All

5    right.  Is there anything else we need to talk

6    about, about your post-conviction factors that,

7    post-conviction factors that I missed?

8          **INMATE ESCALANTE:**  No.

9          **DEPUTY COMMISSIONER MORRIS:**  Okay.  I

10   yield it to the Chair.

11         **PRESIDING COMMISSIONER PEREZ:**  Thank you.

12   At this time, I would like to give the DA the

13   opportunity to ask questions through the Chair,

14   please.

15         **DEPUTY DISTRICT ATTORNEY DELAVIGNE:**  No

16   questions.

17         **PRESIDING COMMISSIONER PEREZ:**  Counsel.

18         **ATTORNEY HURST:**  No questions.

19         **PRESIDING COMMISSIONER PEREZ:**  Mr.

20   Morris.

21         **DEPUTY COMMISSIONER MORRIS:**  None.

22         **PRESIDING COMMISSIONER PEREZ:**  Closing

23   statement, please.

24         **DEPUTY DISTRICT ATTORNEY DELAVIGNE:**  I

25   have nothing to address.  Until the inmate gains

26   some insight into what he did and makes some

27   comment about it, I have nothing to say except

40

1    to oppose a finding of suitability.

2          **PRESIDING COMMISSIONER PEREZ:**    Thank you.

3    Counsel.

4          **ATTORNEY HURST:**    Okay.    I don't have a

5    lot to say either.    Mr. Escalante's position on

6    the life crime has been placed on the record

7    before, and we know you have to accept the

8    conviction, and he's been down nearly 15 years

9    on this crime, so he's doing the time for it.

10   And he's done quite a good job certainly in the

11   area of disciplinaries, no 115s at all.    That's

12   not really easy.    He's in the broad areas of

13   educational and vocational upgrading.    He has

14   achieved his GED in the year 2000, and he's

15   currently on several waiting lists.    He did

16   state to you that he has plumbing and electrical

17   experience in the past.    Self-help, there has

18   been some.    There has been the Impact Program

19   and continued participation in AA and NA.    The

20   most recent psych report, I'm not really sure

21   what that report says.    It says that he is a

22   minimal risk if he's released to the community

23   which I would assume is what we're looking for.

24   That is what we're looking for today, and she

25   notes he has no 115s, and he has matured.    On

26   the other hand, she questions his insight if he

27   committed the crime, and he has been convicted

41

1    of it, then he may be lacking in insight.  If he

2    didn't, of course, he's lacking in knowledge of

3    it.  So I can understand the doctor doesn't have

4    too many choices in her conclusion there.  He

5    does have parole plans though, and very much to

6    his credit, he has developed dual parole plans

7    so that he would have a place to live if he

8    remains in the United States and a place to live

9    and work if he is deported.  So he's made some

10   preparation.  I think he's serious about

11   preparing himself.  I just ask you to consider

12   the positive things he's accomplished.  Submit

13   it.

14       **PRESIDING COMMISSIONER PEREZ:**  All right.

15   Thank you.  Sir, this is your opportunity to

16   provide a statement to the Panel regarding your

17   suitability for parole.  Tell us why you feel

18   that you are suitable for parole.

19       **INMATE ESCALANTE:**  First of all, I wish

20   an apology to the victim and the victim's

21   family, and the People of California, also, my

22   family, and say I'm not a threat to public

23   safety, and I'm a changed person.

24       **PRESIDING COMMISSIONER PEREZ:**  Thank you,

25   sir.  We will now recess for deliberations.  The

26   time is 4:44 p.m.

27                   **R E C E S S**

1          **CALIFORNIA BOARD OF PAROLE HEARINGS**

2                    **D E C I S I O N**

3          **DEPUTY COMMISSIONER MORRIS:** Back on

4    record.

5          **PRESIDING COMMISSIONER PEREZ:** Sir, the

6    Panel has reviewed all the information received

7    from the public and relied on the following

8    circumstances in concluding that you are not

9    suitable for parole and that you would pose an

10   unreasonable risk of danger to society or a

11   threat to public safety if released from prison

12   at this time.  Sir, one of the main factors that

13   we took into consideration is the gravity of the

14   offense in that after reviewing the facts of

15   this crime, it is the opinion of this Panel that

16   the offense was carried out in an especially

17   cruel and callous manner in that the victim was

18   hit and kicked and knocked to the ground.  Once

19   he was on the ground, the record reflects that

20   you grabbed him by the hair and stabbed him in

21   the eye resulting in the loss, permanent loss,

22   of sight in that particular eye as well as a

23   frontal lobotomy.  The offense was carried out

24   in a dispassionate and calculated manner in that

25   the record reflects that you asked to borrow the

26   victim's car.  When he refused, you left.  You

27   **JUSTO ESCALANTE  E-91258  DEC. PAGE 1   12/15/05**

43

1   returned with three of your friends.  You waited
2   for the victim to come back to his vehicle, and
3   it is at that point that he was attacked and
4   stabbed.  The offense was carried out in a
5   manner which demonstrates an exceptionally
6   callous disregard for human suffering in that it
7   is unimaginable the physical and emotional
8   trauma this victim endured during the beating as
9   well as the physical and emotionally, mental
10  issues that he will endure for the rest of his
11  life as a result of having permanent loss of
12  sight in one eye as well as a frontal lobotomy
13  and that the negative effects that go with that.
14  Sir, these conclusions are drawn from the
15  Statement of Facts wherein according to the
16  record, on September 10th, 1990, at
17  approximately 4:20 p.m. you got in an argument.
18  You and the victim were involved in an argument.
19  You wanted to borrow the victim's car.  He
20  refused.  You left.  You came back with your
21  friends.  You and your friends started hitting
22  and kicking the victim.  When the victim was
23  down, you struck the victim in the eye with a
24  knife penetrating the brain.  The other factor
25  that we took into consideration, sir, is that
26  you entered this country in approximately 1984,
27  **JUSTO ESCALANTE   E-91258   DEC. PAGE 2    12/15/05**

44

1    and four years later, you were already

2    entrenched in the criminal, in criminal

3    activities in that you were arrested on a number

4    of occasions prior to the commitment offense for

5    drug-related offenses to include transportation

6    and sales of narcotics and controlled substance,

7    murder, possession of a firearm, grand theft

8    vehicle, possession of narcotic, controlled

9    substance, possession of bad checks and money

10   orders.  One of those offenses resulted in a

11   conviction for which you were sentenced, a

12   felony conviction for which you were sentenced

13   to 180 days in jail, fined, and 36 months

14   probation.  We note for the record that prior to

15   the commitment offense you had failed to profit

16   from society's previous attempts to correct your

17   criminality.  Such attempts include adult

18   probation and county jail, again, for

19   transportation and sales of controlled

20   substance.  The record reflects that you have an

21   unstable social history and prior criminality as

22   previously outlined which includes the arrest

23   and, or convictions that were previously noted

24   to include the use of marijuana and cocaine.

25   Sir, since you've been incarcerated, you have

26   programmed in a limited manner.  You are to be

27   **JUSTO ESCALANTE   E-91258   DEC. PAGE 3    12/15/05**

45

1    commended for not having incurred any 115s

2    throughout your entire incarceration.  However,

3    the record reflects that you have not completed

4    any vocations throughout the entire time that

5    you have been in prison.  And although you have

6    taken advantage of some self-help programs

7    within the institution, sir, you have not

8    sufficiently participated in beneficial self-

9    help specifically to address the issue of

10   insight.  The most recent psychological report,

11   sir, that was also taken into consideration is

12   somewhat contradictory but at the same time it

13   is not totally supportive of release.  This

14   particular report was prepared by Contract

15   Psychologist Laura Petracek, P-E-T-R-A-C-E-K,

16   dated December 8th, 2005, in which she indicates

17   that you your risk if released to the community

18   is minimal; however, she further states this

19   inmate still denies any responsibility for his

20   crime.  He needs to develop some insight or

21   reasonable explanation before being considered

22   for parole.  Sir, in a separate decision the

23   Hearing Panel notes that you have been convicted

24   of aggravated mayhem with use of a deadly

25   weapon, specifically a knife.  As such, it would

26   not be reasonable to expect that you would be

27   **JUSTO ESCALANTE   E-91258   DEC. PAGE 4    12/15/05**

1  granted parole during the next two years. So as
2  a result, sir, we're going to deny you for two
3  years. Again, one of the main reasons is the
4  gravity of the offense in that it is the opinion
5  of this Panel after reviewing the facts of this
6  crime the offense was carried out in an
7  especially cruel and callous manner in that the
8  victim was hit, kicked, knocked to the ground.
9  Once he was on the ground, you grabbed him by
10 the hair, and you proceeded to stab him in the
11 eye, and that stab wound penetrated into his
12 brain resulting in permanent loss of sight in
13 his eye as well as a frontal lobotomy. The
14 offense was carried out in a dispassionate and
15 calculated manner in that the record reflects
16 that you initially approached the victim. You
17 asked him to use his, to borrow his car. He
18 refused. You left. You went got three of your
19 friends. You came back. You waited by the
20 vehicle, and then when the victim came out
21 towards his vehicle, you and your friends
22 proceeded to attack him, and once he hit the
23 ground, you grabbed him by the hair, and you
24 stabbed him in the eye, penetrating that knife
25 into his brain. The offense was carried out in
26 a manner which demonstrates an exceptionally
27 **JUSTO ESCALANTE  E-91258  DEC. PAGE 5  12/15/05**

47

1    callous disregard for human suffering in that it

2    is unimaginable the physical and emotional

3    trauma that this individual endured at the time

4    of the offense and will endure for the remainder

5    of his life as a result of the problems that he

6    will encounter as a result of the permanent loss

7    of sight in one eye and the frontal lobotomy,

8    the problems that go with a frontal lobotomy.

9    These conclusions are drawn from the Statement

10    of Facts wherein according to the record on

11    September 10th, 1990, you got in an argument

12    with the victim.  You and the victim were

13    involved in an argument because you wanted to

14    use his car.  He refused to lend it to you.  You

15    went and got your friends.  You returned, and

16    when the victim came out of his residence, the

17    residence that he was visiting and approached

18    his vehicle, you and your friends proceeded to

19    attack him with you grabbing him by the hair

20    once he was on the ground and stabbing him in

21    the eye penetrating into the brain resulting in

22    permanent loss of sight in his right eye and a

23    frontal lobotomy.  The other factor that we took

24    into consideration in this multi-year denial is

25    the fact that you entered this country in 1984,

26    and four years later you were already entrenched

27    **JUSTO ESCALANTE   E-91258   DEC. PAGE 6    12/15/05**

48

1    in criminal activities, specifically,

2    transporting, transportation and sales of

3    controlled substance in that the record reflects

4    that you have been convicted on a number of

5    occasions for transporting, sales of controlled

6    substance resulting in one conviction in that

7    you were placed on adult probation in which you

8    were assessed county jail time.  The record also

9    reflects that you have other arrests and, or

10   convictions, or detentions for transportation,

11   several for transportation and sales of

12   controlled substance, murder, (indiscernible),

13   possession of a firearm, grand theft vehicle, as

14   well as possession of bad checks, and possession

15   of narcotics and controlled substances.  The

16   record also reflects that you have a history of

17   using illicit substances as well as selling

18   them, specifically, marijuana and cocaine.

19   Again, we do note that it is the opinion of this

20   Panel based on a review of the record that you

21   have not sufficiently participated in beneficial

22   self-help, specifically, to address the issue of

23   insight.  In addition, sir, although you have

24   been involved in some self-help within the

25   institutions, the record does not reflect that

26   you have completed any vocations during the

27   **JUSTO ESCALANTE   E-91258   DEC. PAGE 7    12/15/05**

1   entire time that you have been incarcerated.

2   Again, the most recent psychological report is

3   not totally supportive of release, and

4   furthermore, it is somewhat contradictory in

5   that it indicates that if you were to be

6   released to the community, your risk would be

7   minimal.  However, the doctor firmly states that

8   any, that you deny any responsibility and that

9   you need to develop some insight or at least a

10  reasonable explanation before being considered

11  for parole.  In terms of your parole plans, sir,

12  we do not for the record that you do have

13  realistic parole plans in that more likely than

14  not, given the circumstances under which you

15  were in this country, more likely than not you

16  would be deported to Honduras, and we do have

17  letters in your file that support your parole

18  plans to live with your brother and, or your

19  cousin upon your release to parole.  In

20  addition, sir, we do not find based on a review

21  of the record that you have a marketable skill,

22  at least not one that you have developed since

23  you've been incarcerated.  However, you have

24  indicated to this Panel that you have experience

25  as an electrician or a plumber.  That is

26  questionable.  Let me tell you why that is

27  **JUSTO ESCALANTE   E-91258   DEC. PAGE 8    12/15/05**

50

1    questionable.  You came to this country when you

2    were 20 -- you committed the offense when you

3    were 21 years of age.  You came to this country

4    four years earlier.  That would put you at the

5    age of 17.

6            **INMATE ESCALANTE:**  No.  I was 26.

7            **PRESIDING COMMISSIONER PEREZ:**  You were

8    26.  Okay.  When I said that, you should have

9    corrected me, sir.  You were 26.  So that means

10   -- you were 26 when you committed the offense?

11           **INMATE ESCALANTE:**  Yes.

12           **PRESIDING COMMISSIONER PEREZ:**  Or when

13   the offense was committed, which means that you

14   came to this country when you were 22.

15           **INMATE ESCALANTE:**  About 22.

16           **PRESIDING COMMISSIONER PEREZ:**  Twenty-

17   two.  Okay.  So I would imagine it would be

18   somewhat limited experience as an electrician or

19   a plumber in that you were about 22 at the time

20   you came to this country.  That doesn't mean

21   that it's not possible that you have those

22   skills.  I'm just saying that it seems like your

23   skills wouldn't be extensive in that you were

24   pretty young already when you came to this

25   country, and you indicated that you developed

26   those skills when you were in Honduras from your

27   **JUSTO ESCALANTE   E-91258   DEC. PAGE 9    12/15/05**

51

1   father.  Sir, the Hearing Panel notes that

2   responses to Penal Code Section 3042 indicate an

3   opposition to a finding of parole suitability by

4   the District Attorney of Los Angeles County.

5   Sir, what year were you born?

6           **INMATE ESCALANTE:**  March 26, '63.

7           **PRESIDING COMMISSIONER PEREZ:**  Sixty-

8   three.  Okay.  The reason I say that is because

9   you gave me the impression that you were 21 is

10  that your rap sheet shows that you were born in

11  1969.

12          **INMATE ESCALANTE:**  Sixty-three.

13          **PRESIDING COMMISSIONER PEREZ:**  But your

14  rap sheet also shows that you were born in 1963,

15  and your rap sheet shows that you were born in

16  1970, and then your rap sheet again shows us

17  another birth date in 1963.  My assumption was

18  you were born in 1969.  As indicated, you were

19  born in 1963.  Right?

20          **INMATE ESCALANTE:**  I've got a birth

21  certificate.

22          **PRESIDING COMMISSIONER PEREZ:**  Okay.  So

23  that would make you about 42.

24          **INMATE ESCALANTE:**  Forty-two.

25          **PRESIDING COMMISSIONER PEREZ:**  Forty-two.

26  Okay.  Very good.  Sir, the Panel makes the

27  **JUSTO ESCALANTE  E-91258  DEC. PAGE 10  12/15/05**

1   following findings, and that is that you need to

2   participate in more self-help and, or therapy in

3   order to help you come to terms with the

4   underlying cause of the commitment offense in

5   that even though you are not required to discuss

6   or admit to the commitment offense, you still

7   need to be able to demonstrate some sort of

8   insight when you come before this Panel, and you

9   have not done that today.  You have really not

10  done that.  And until progress is made, it is

11  the opinion of this Panel that you will continue

12  to be unpredictable and a threat to others.

13  Nevertheless, sir, we would like to take this

14  opportunity to commend you for not having

15  received any 115s throughout the entire time

16  that you have been incarcerated.  That's very

17  commendable.  We understand that it can be

18  difficult for you to maneuver through these

19  shark-infested waters within the institution

20  without incurring any 115s, so we certainly

21  commend you for having the ability and the skill

22  to not incur any disciplinaries while within the

23  institutions.  Sir, we'd also like to commend

24  you for the multiple laudatory chronos in your

25  file as well as for your continued participation

26  in AA, NA; however, sir, these positive aspects

27  **JUSTO ESCALANTE  E-91258   DEC. PAGE 11   12/15/05**

1    of your behavior do not outweigh the factors of

2    unsuitability.  As a result, we're going to deny

3    you for two years.  In the meantime, we make the

4    following recommendations.  We recommend, if

5    you're able to do so, you complete at least one

6    trade during the next two years.  I imagine

7    that's the only thing you could complete within

8    the next two years if you were to be placed in a

9    trade this moment because a lot of those trades

10   do take about two years or so on the average.

11   So if you're able to get into a trade, do that,

12   and if you're able to complete it before you

13   come before the Board in two years, we would

14   certainly (indiscernible) that.

15        **DEPUTY COMMISSIONER MORRIS:**  I'm turning

16   the tape over.

17        [Thereupon, the tape was turned over.]

18        **DEPUTY COMMISSIONER MORRIS:**  We're back

19   on record.

20        **PRESIDING COMMISSIONER PEREZ:**  And we

21   recognize that.  We recognize that.  You got

22   your GED in 2000, and we certainly commend you

23   for that, and we recognize that until you either

24   get your GED or reach a certain grade point

25   level that they won't consider you for

26   vocations, so we understand that.  What we're

27   **JUSTO ESCALANTE   E-91258   DEC. PAGE 12   12/15/05**

54

1    saying is if you're able to do it, and you said

2    you are on the waiting list, so if you're able

3    to get into one of those vocations we would

4    encourage you to take advantage of it and do it.

5    Also, take advantage, immerse yourself in any

6    and all self-help that might be available within

7    the institutions.  If there is nothing

8    available, then we would recommend that you go

9    to the library or talk to your counselor or

10   other individuals within the institution that

11   might have resources, if they could point you to

12   so that you can do some self study.  Okay.  Do

13   you know what I mean by self study?

14          **INMATE ESCALANTE:**  Right.

15          **PRESIDING COMMISSIONER PEREZ:**  If you do

16   some self study, bring in a book report and tell

17   us what you're learning next room to demonstrate

18   that you're being proactive, okay, in trying to

19   develop insight and learn a little bit more

20   about yourself so that once you're released to

21   parole you won't be involved in criminality.

22   Okay.  Also, we do recommend that you earn

23   positive chronos.  You have numerous positive

24   chronos or a number of positive chronos in your

25   file, but we recommend that if you're able to do

26   so, continue doing this good work that you've

27   **JUSTO ESCALANTE   E-91258   DEC. PAGE 13   12/15/05**

55

1  been doing so that you can get more laudatory

2  chronos placed in your file.  And of course,

3  continue to remain disciplinary-free.  You're

4  doing very well so far with no 115s.  We

5  encourage you to continue in that same path.

6  But at the same time we do note that you do have

7  three 128s; 128s also affect you as well because

8  one of them is a little violation.  The other is

9  bigger violation.  Either way they're still

10  violations of institutional procedures, policy,

11  and so we recommend that you not incur any 115s

12  or 128s.  Okay.  Mr. Morris.

13      **DEPUTY COMMISSIONER MORRIS:**  I think

14  you've covered everything, but Mr. Escalante

15  just let me just encourage you to follow up on

16  that machine shop.  Okay.

17      **INMATE ESCALANTE:**  I think the shop is

18  closed.

19      **DEPUTY COMMISSIONER MORRIS:**  Pardon me?

20      **INMATE ESCALANTE:**  The shop is closed.

21  It's over in North.

22      **DEPUTY COMMISSIONER MORRIS:**  Okay.

23      **INMATE ESCALANTE:**  I'm in Central right

24  here.

25      **DEPUTY COMMISSIONER MORRIS:**  Okay.

26      **INMATE ESCALANTE:**  We have here computer

27  **JUSTO ESCALANTE   E-91258   DEC. PAGE 14   12/15/05**

1    and print shop.  I am on the waiting list for

2    that.

3         **DEPUTY COMMISSIONER MORRIS:**  I think

4    you're going to find that if you make contact

5    with the supervisor of education programs that

6    there are more than two programs available at

7    the institution.  I find that hard to believe

8    that there are only two.  But be that as it may,

9    you check it out.  Do what you can to try to

10   complete one or at least be involved in it when

11   you come back here.  Okay.  Again, you're doing

12   a good job with the chronos, the laudatories.

13   Keep generating those.  You remain absolutely

14   disciplinary-free.  Those things will hurt you.

15   Okay.  The last negative chrono was in '98, so

16   you're doing a pretty good job with that.  Just

17   stay the course right there and continue to

18   participate in AA, NA, those kinds of things.

19   Okay.  That's it.

20   --

21   --

22   --

23   --

24   --

25   --

26   --

27   **JUSTO ESCALANTE   E-91258   DEC. PAGE 15   12/15/05**

57

1        **PRESIDING COMMISSIONER PEREZ:**  Sir, we do

2    wish you the best of luck.  This  concludes  this

3    hearing.   The time is 5:12 p.m.  Good luck, sir.

4                          --oOo--

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    **PAROLE DENIED TWO YEARS**

24    **THIS DECISION WILL BE FINAL ON:** <u>Apr. 14, 2006</u>

25    **YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT**

26    **DATE, THE DECISION IS MODIFIED.**

27    **JUSTO ESCALANTE   E-91258   DEC. PAGE 16   12/15/05**

58

CERTIFICATE AND
DECLARATION OF TRANSCRIBER

I, KRISTIN LEDBETTER, a duly designated
transcriber, PETERS SHORTHAND REPORTING, do
hereby declare and certify under penalty of
perjury that I have transcribed tape(s) which
total one in number and cover a total of pages
numbered 1 - 57, and which recording was duly
recorded at CORRECTIONAL TRAINING FACILITY,
SOLEDAD, CALIFORNIA, in the matter of the
SUBSEQUENT PAROLE CONSIDERATION HEARING OF JUSTO
ESCALANTE, CDC NO. E-91258, ON DECEMBER 15,
2005, and that the foregoing pages constitute a
true, complete, and accurate transcription of
the aforementioned tape to the best of my
ability.

I hereby certify that I am a
disinterested party in the above-mentioned
matter and have no interest in the outcome of
the hearing.

Dated DECEMBER 31, 2005, at Sacramento,
California.

Kristin Ledbetter

KRISTIN LEDBETTER
TRANSCRIBER
**PETERS SHORTHAND REPORTING**