# EXHIBIT G

MC-275

| Name | Justo Escalante |
| Address | CTF Central, F-Wing 302 |
| | P.O. Box 689 |
| | Soledad, Calif. 93960-0689 |

CDC or ID Number  E-91258

FILED
Los Angeles Superior Court

APR 28 2006

John A. Clarke, Executive Officer/Clerk

By _____, Deputy

JOSEPH M. PULIDO, S.C.C.
233219

*Superior Court of California*
*County of Los Angeles*
(Court)

PETITION FOR WRIT OF HABEAS CORPUS

Justo Escalante
Petitioner
vs.
Jean Woodford, Director, California Department of
Corrections; Margarita Perez, Chairwoman, Board of
Prison Terms; A. Kane, Warden, CIF, et al.
Respondent

No. _____
*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

This petition concerns:

☐ A conviction                    XXX Parole

☐ A sentence                     ☐ Credits

☐ Jail or prison conditions      ☐ Prison discipline

XXX Other *(specify):* Board failed to give petitioner a parole date in violation of state and federal law.

1. Your name:  Justo Escalante

2. Where are you incarcerated?  Correctional Training Facility - Soledad State Prison

3. Why are you in custody?  XXX Criminal Conviction  ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Aggravated mayhem; use of weapon

   b. Penal or other code sections:  Penal Code  205; 12022(B)

   c. Name and location of sentencing or committing court: Los Angeles County Superior Court, 210 W. Temple St., Los Angeles, Ca. 90012-3210

   d. Case number:  PA004647

   e. Date convicted or committed:  4-18-91

   f. Date sentenced:

   g. Length of sentence:  7 years to life plus one year

   h. When do you expect to be released?  Minimum eligible release date was  May 29, 1998

   i. Were you represented by counsel in the trial court?  XXX Yes.  ☐ No. If yes, state the attorney's name and address:

      D. Blum, Public Defender

4. What was the LAST plea you entered? *(check one)*

   XXX Not guilty  ☐ Guilty  ☐ Nolo Contendere  ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

   XXX Jury  ☐ Judge without a jury  ☐ Submitted on transcript  ☐ Awaiting trial

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

<u>Please See Page 4-A et seq attached</u>

_____

_____

_____

_____

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

<u>Please See Page 4-A et seq attached</u>

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

<u>Please See Page 4-A et seq attached</u>

_____

_____

_____

_____

MC-275 [Rev. July 1, 2005]          PETITION FOR WRIT OF HABEAS CORPUS          Page three of six

## PREAMBLE

This habeas petition alleges constitutional violations that occurred at petitioner's fourth parole hearing held by the Board Parole Hearings (Board) on December 15, 2005. The Board, for the fourth time, denied petitioner parole who is serving a sentence of 7 to life for aggravated mayhem (a non-homicide offense), a parolable offense, that occurred in April of 1991. Petitioner's minimum eligible parole date for release was set for May 29, 1998. (Exhibit D page 1:4-15, 1:19-20).

To fully inform this court on the chronological history of petitioner's prior parole hearings, the Board's reasons for previous parole denials and Board's recommendations to be found suitable for parole which has led up to petitioner's fourth parole hearing and his fourth parole denial despite petitioner's attempts, who enter this prison system **completely** **unable** **to** **speak and understand the English language**, to accomplish demands made by the Board to be found suitable, petitioner submits the following factual events:

**I. Petitioner's First Parole Hearing**
   **Held on May 1, 1997**

Petitioner took before the Board self help accomplishments to include, a teacher's helper in Adult Basic Education, improving education skills, and assisting other inmates, studying towards his GED. (Exhibit A page 12:3-8), Alcoholic and Narcotics Anonymous participation, (Exhibit A page 14:7-27,15:1-27), and a disciplinary free program (Exhibit A page 11:21-22). The

1  prison psychologist stated that if petitioner "would be able to

2  stay off drugs and alcohol, he may very well be a person that

3  is not violent prone." (Exhibit A page 16:23-24). Despite the

4  aforementioned, the Board denied petitioner parole for two years

5  stating:

6

7      "The offense was carried out in a cruel and
    callous manner with a disregard for the

8      suffering of others in a dispassionate,
    calculated manner. These conclusions are drawn

9      from the statement of facts wherein the prisoner
    and his crime partners attacked the victim

10     and the prisoner stabbed the victim in the
    eye which resulted in permanent damage. The

11     prisoner had an escalating pattern of criminal
    conduct which included two offenses for

12     transporting or selling illegal drugs....
    The prisoner has failed to develop a marketable

13     skill that could be put to use upon release
    and he is not sufficiently participated in

14     in beneficial self help and therapy programs.
    The prisoner should be commended for having

15     participated in an educational upgrading, ABE
    II and III, and he's also participated in AA

16     and NA. However, these positive aspects of
    his behavior do not outweigh the factors of

17     unsuitability.

18

19     ¶ The panel recommends that the prisoner becomes
    or remain disciplinary free, continue to up-

20     grade educationally and vocationally,
    participate in available self help and therapy

21     programming." (Exhibit A page 28:9-26, 29:1-
    8, 30:1-4).

22

23 II. Petitioner's Second parole
    Hearing Held on May 10, 2001

24

25    For the second parole hearing, petitioner took before the

26 Board another disciplinary free program (Exhibit B page 22:4),

27 his G.E.D. diploma, work as a chapel porter and continuos A.A.

28 and N.A. program since 1995. (Exhibit B page 22:10-27, 23:1-

1  27, 24:1-8, 33:17-20).  The prison psychologist stated that, if

2  released, petitioners violence potential "is considered to be no more than the

3  average citizen in the community." (Exhibit B page 25:12-13).

4  Despite the aforementioned, the Board denied petitioner for

5  two years stating:

> "The commitment offense was carried out in
> an especially cruel manner.  It was carried
> out in a manner which demonstrated an
> exceptional callous disregard for human
> suffering.  And the motive for the crime was
> inexplicable or very trivial in relation to
> the offense.  These conclusions are drawn from
> the statement of facts wherein the inmate had
> gotten in an argument with the victim, James
> Brooks, James Brooks, claims that he had known
> the inmate prior to this.  And the inmate pulled
> the knife.  Brook retreated, however, he slipped
> or tripped.  He went down.  Mr. Escalante's
> friends kicked him, hit him, and the inmate
> stabbed him in the right eye. (Exhibit B page
> 43:12-25).
>
> ¶ The inmate does have a previous record.
> He did fail to profit from society's attempts
> to correct his criminality.  Those attempts
> included adult probation.  He has unstable
> social history and prior criminality which
> includes drug use and an illegal entry into
> the United States.  He has several arrests,
> however, three convictions.  Two of those are
> for control substance for which he is serving
> additional commitment on.  One of them is a
> misdemeanor plus a firearm, which he said must
> be another case of mistaken identity, as it
> was not him.  However, he does admit to the
> two controlled substance charges.  The prisoner
> institutionally has been programming. (Exhibit
> B page 44:6-19).
>
> ¶ He should be commended for his participation
> in AA and NA and the 12 steps, also for never
> having a 115.  He's definitely to be commended
> for that.  He did completed his GED last year
> 10/ 2000.  According to the inmate he is on
> a waiting list for a vocation.  And all those
> are very, very, good signs towards positive
> programming, which I will say that he is doing.
> (Exhibit B page 45: 11-18)
>
> ¶ The Panel recommends that the prisoner remain

1   disciplinary-free, that if available to upgrade
    vocationally and also self help and therapy
2   programs." (Exhibit B page 46:15-19).

3

4   III. Petitioner Third Parole Hearing
         Held on May 27, 2003

5

6       For the third parole hearing petitioner took before the Board another

7   disciplinary free program, placement on the waiting list for vocation, a GED,

8   numerous self help groups, to include STI, HIV/AIDS, and Hepatitis program,

9   a 13-week Impact program and religious service attendance, and NA-AA

10  attendance since 1995. (Exhibit C page 21:12-14, 22:7-11, 22:16-27, 23:1-

11  11, 23:24-25, 24:4-6, 26:1-2). The prison psychologist stated that if

12  release, petitioner's "violence potential is considered to be no more than

13  the average citizen in the community." (Exhibit C page 28:26-27, 29:1-2).

14  Despite the aforemention, the Board denied petitioner parole for two years

15  stating:

16      "The offense was carried out in an especially cruel, vicious
        manner. The offense was carried out in manner which
17      demonstrates an exceptionally cold hearted disregard for
        human suffering wherein, the prisoner had gotten into an
18      argument with the victim, James Brooks. And the prisoner
        pulled a knife. The — Mr. Brooks retreated; however, he
19      slipped and tripped. He went down and Mr. Escalante's
        friends kicked him — and the prisoner stabbed him in the
20      right eye. (Exhibit C page 44:15-26).

21      ¶ He's failed to upgrade vocationally as previously
        recommended by the Board, as well as he's not sufficiently
22      participated in beneficial self help and therapy programming
        at this time. The psychosocial report was adequate. Parole
23      plans was adequate.... (Exhibit C page 46:3-10).

24      ¶ [T]he prisoner should be commended for taking self help
        groups in terms of Sexually Transmitted Diseases. He
25      completed the Impact program, as well as he's participated
        in NA. He's on the waiting list currently for computers.
26      He had positive work reports as a porter, as well as he
        in the past, 2000 I believe was the accurate date, completed
27      his GED. (Exhibit C page 47:6-13).

28      ¶ [R]ecommendations to you, Mr. Escalante, are to remain

                        4-D

1    disciplinary free, if it's available to you, to upgrade
     vocationally and educationally, as well as if it's available
2    to you participate in beneficial self help programming to
     better understand the causative factors on why you're before
3    us here today...." (Exhibit C page 49:1-7).

4  **IV. Petitioner's fourth Parole Hearing**
   **At Issue Held On December 15, 2005**

5

6       For the fourth parole hearing, petitioner took before the Board another

7  disciplinary free program, parole plans, a home to live in and two job offers,

8  good work reports, AA and NA self help therapy and Impact program self help

9  participation. (Exhibit D page 23:!-27, 24:1-7, 25:1-7, 30:1-19, 35:15-22,

10 36:1-27, 45:1-2). Despite the aforementioned, the Board denied petitioner

11 parole for two years stating:

12       "Sir one of the main factors that we took into consideration
         is the gravity of the offense in that after reviewing the
13       facts of the crime, it is the opinion of this Panel that
         the offense was carried out in an especially cruel and
14       callous manner in that the victim was hit and kicked and
         knocked to the ground. Once he was on the ground, the record
15       reflects that you grabbed him by the hair and stabbed him
         in the eye resulting in the loss, permanent loss, of sight
16       in that particular eye as well as a frontal lobotomy. The
         offense was carried out in a dispassionate and caculated
17       manner.... (Exhibit D page 42:12-17).

18       ¶  The offense was carried out in a manner which demonstrates
         an exceptionally callous disregard for human suffering....
19       (Exhibit D page 42:23-25).

20       ¶  [Y]ou were arrested on a number of occasions prior to
         the commitment offense.... One of those offenses resulted
21       in a condition for which you were sentence, a felony
         conviction for which you were sentenced to 180 day in
22       jail.... (Exhibit D page 44:3-13).

23       ¶  The record reflects that you have an unstable social
         history and prior criminality as previously outlined which
24       includes the arrest and or convictions that were previously
         noted to include the use of marijuana and cocaine.
25       (Exhibit D page 44:20-24).

26       ¶  Again, the most recent psychological report is not
         totally supportive of release, and furthermore, it is some-
27       what contradictory in that it indicates that if you were
         to be release to the community, your risk would be minimal
28       However, the doctor firmly states that any, that you deny

                                    4-E

any responsibility and that you need to develop some insight
or at least a reasonable explanation before being cosidered
for parole. (Exhibit D page 49:2-11)

¶ [y]ou need to participate in more self help and therapy
in order to help you come to terms with the underlying cause
of the commitment offense in that even though you are not
required to discuss or admit to the commitment offense,
you still need to be able to demonstrate some sort of insight
when you come before this panel.... (exhibit D page 52:1-
9)

¶ Nevertheless, sir, we would like to take this opportunity
to commend you for not having received any 115's throughout
the entire time that you have been incarcerated.
That's very commendable. We understand that it can be
difficult for you to maneuver through these shark infested
waters within the institution not incurring any 115's,
so we certainly commend you for having the ability and the
skill not incur any disciplinary while within the
institution. Sir, we'd also like to commend you for your
continued participation in AA, NA.... (Exhibit D page 52:13-26).

¶ We recommend, if you're able to do so, you complete at
least one trade.... Also,... immerse yourself in any and
all self help that maybe available within the institution.
If there is nothing available, then we would recommend that
you go to library.... (Exhibit D page 53:4-6, 54:5-9).

4-F

1

2

## CLAIM I

3

4     THE BOARD'S DENIAL OF A PAROLE DATE FOR THE FOURTH
      TIME BASED ON PETITIONER'S CONDUCT PRIOR TO IMPRISONMENT
5     TO JUSTIFY DENIAL OF PAROLE VIOLATES PETITIONER'S
      LIBERTY INTEREST IN PAROLE AND EXPECTATION IN RECEIVING
6     A PAROLE DATE VIOLATING DUE PROCESS OF LAW UNDER THE
      14th AMENDMENT TO THE U.S. CONSTITUTION

7

8     At petitioner's fourth hearing the Board relied          on

9  petitioner's conduct prior to imprisonment, to include the commitment

10 offense, to deny parole. (Exhibit D pages 42-48).          Petitioner's

11 conduct prior to imprisonment, to include the commitment offense, was

12 also used at petitioner's three prior parole hearings to deny parole.

13 (See Exhibit A page 28-29, B page 43-44, and C page 44-45).   The denial

14 of parole at petitioner's fourth parole hearing was done regardless

15 of petitioner's exemplary behavior for the past 15 years of incarceration

16 and evidence of rehabilitation as stated in the above preceding pages

17 at petitioner's first, second, third, and fourth parole hearings.

18 Petitioner submits that this fourth denial of parole based on his conduct

19 prior to imprisonment violated due process of law.

20

21    Post Dannenberg cases (In re Dannenburg 34 Cal.4th 1061 (2005))

22 indicate this to be true.  As the recent Court of Appeals wrote in

23 In re Scott 133 Cal.App.4th 573, 34 Cal.Rptr.3d 905 (2005) regarding

24 the continuos use of the conduct prior imprisonment wrote:

25

26         "The Governor's assumption that a prisoner may be deemed
           unsuitable for release may be deemed unsuitable for release
27         on the basis of the commitment offense 'alone' is correct,
           (Rosenkrantz, supra, 29 Cal.4th at p. 682) **but the proposi-
28         tion must be properly understood.**  The commitment offense
           is one of only two factors indicative of unsuitability,

4-G

a prisoner can not change (the other being his 'previous record of violence'). Reliance on such an immutable factor 'without regard to or consideration of subsequent circumstances' may be unfair. (In re Smith (2003) 114 Cal.App.4th 343,372), and runs contrary to the rehabilitative goals espoused by the prison system and could result in due process violation.' (Biggs v Terhune, supra, 334, F.3d at p. 917). The commitment offense can negate suitability only if the circumstances of the crime reliably established by evidence in record rationally indicate that the offender will present an unreasonable public risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time (Iron v Warden of California State Prison - Solano (E.D. Cal. 2005) 358 F.Supp.2d 936, 947,fn.2.)." (id. at p. 919-920)

"The Governor states in his decision that the gravity of Scott's offense is alone a sufficient basis 'on which to conclude that his release from prison <u>at this time</u> would pose an unreasonable public risk.' That statement could be repeated annually until Scott dies or is rendered helpless by the infirmities of sickness or age." (id. at p. 919-920 fn. 9 (emphasis in original)).

"It is worth noting, as our Supreme Court (People v Martishaw 1981) 29 Cal.3d 733, 768, disapproved on other grounds in People v Boyd (1985) 38 Cal.3d 762), that a large number of legal and scientific authorities believe that, even where the passage of time is not a factor and the assesment is made by an expert, predictions of future dangerousness **are exceedingly** unreliable." (id. at p. 920 fn. 9; (Petition for Review was denied in <u>Scott</u> on November 30, 2005, 2005 DJDAR 13803)).

<u>In re Shaputis</u>, 37 Cal.Rptr.3d 324, 135 Cal.App.4th 217 (2005), relying on <u>Biggs</u> v

<u>Terhune</u>., 334 F.3d 910, 916, (9th Cir. 2003), which is another post

<u>Dannenburg</u> case, wrote:

"[A]lthough reliance on conduct prior to imprisonment, to justify denial of parole can be initially justified as fulfilling the requirements by state law where inmate over time continues to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of prior conduct would raise serious quetions involving his liberty interest in parole" (id at p. 335, citing also, Irons v Warden of California State Prison Solano (E.D. Cal. 2005) 358 F.Supp.2d 936, 947 and fn.2).

4-H

1   Shaputis held that reliance on a parole applicant's "former lifestyle" prior

2   to imprisonment to deny parole, that such reliance on such an "historical relic"

3   is an "arbitrary and capricious [decision] within the differential standards

4   articulated by Rosenkrantz, supra, 29 Cal.4th 616." (Shaputis,supra, 37 Cal.

5   Rptr.3d at 335).

6       Even the court in In re Rosenkrantz, 29 Cal.4th 616 (2002), indicated that

7   the Board may not indefinitely rely on the nature of the offense to find

8   petitioner unsuitable for parole.   A close examination of what the California

9   Supreme Court stated in Rosenkrantz illuminates this reasoning:

10          "The nature of the prisoners offense, alone can constitute a
            sufficient basis for denying parole, (In re Minnis, supra, 7 Cal.
11          3d 639, 647; In re Ramirez, supra, 94 Cal.App.4th 549, 569, In
            re Seabock (1983) 140 Cal.App.3d 29, 36-37.) **Although the parole
12          authority is prohibited from adopting a blanket rule that
            automatically excludes parole for individuals who have been
13          convicted of a particular type of offense**, the authority properly
            may weigh heavily the degree of violence used and the amount of
14          viciousness shown by a defendant. (Rosenkrantz, supra, 29 Cal.4th
            at 682-683 [emphasis added]).
15

16  The emphasized portion applies equally well to prohibit blanket rules against

17  petitioner. (id. at 682 [recognizing inmate has a protected right to be

18  "considered **on an individual basis**"], emphasis in original).

19

20      Rosenkrantz not only recognizes a due process "liberty interest" in parole

21  (id. at 654, 661), it also recognizes that petitioner has a right to individual

22  consideration of parole aimed at determining whether petitioner presents an

23  unreasonable risk to the public if he is release on parole.   The crime's facts

24  may be considered, but not if it makes a blanket rule that petitioner is

25  unsuitable for parole.

26      This reasoning is in line with Biggs v Terhune, 334 F.3d 910 (9th Cir. 2003),

27  in which the Ninth Circuit Court of Appeals upheld that the Board's reliance

28  on the sole factors of the commitment offense to deny parole to a prisoner at

1  his minimum eligible parole date, despite an intervening period of exemplary

2  conduct. Nevertheless, the Biggs court stated:

3       "[T]he parole board's sole supportable reliance on the gravity
         of the offense and conduct prior to imprisonment to justify denial
4        of parole can be **initially justified** as fulfilling the requirements
         set forth by the state law. Overtime, however, should Biggs
5        continue to demonstrate exemplary behavior and evidence of
         rehabilitation, denying him a parole date simply because of the
6        nature of Bigg's offense and prior conduct would raise serious
         questions involving his liberty interest in parole." (Biggs, supra,
7        334 F.3d at 916).

8        "A continue reliance in the future on an unchanging factor, the
         circumstances of the offense and conduct prior to imprisonment,
9        runs contrary to the rehabilitative goals espoused by the prison
         system and could result in a due process violation." (id. at 917).
10

11      In line with Biggs regarding continuous use of precommitment factors to

12  deny parole is contrary to due process, the Court in Irons v Warden of California

13  State prison -Solano, 358 F.Supp.936 (E.D. Cal. 2005), wrote:

14       "[C]ontinuous reliance on unchanging circumstances transforms
         an offense for which California law provides eligibility for parole
15       into a de facto life imprisonment without the possibility of
         parole. The court asks rhetorically -- what is it about the
16       circumstances of petitioner's crime or motive which are going to
         change? The answer is nothing. The circumstances of the crime
17       will always be what they were, and petitioner's motive for the
         committing them **will always be trivial.** Petitioner has no hope
18       for ever obtaining parole except perhaps that a panel in the future
         will arbitrarily hold that the circumstances were not that serious
19       or the motive was more than trivial. Given that no one seriously
         contends lack of seriousness or lack of triviality at the present
20       time, the potential for parole in this case is remote to the point
         of non-existence. Petitioner's liberty interest should not be
21       determined by such an arbitrary, remote possibility.

22       In the instant case, the BPT has apparently relied on these
         unchanging factors at least **four prior times** in finding petitioner
23       unsuitable for parole. Petitioner has continued to demostrate
         exemplary behavior and evidence of rehabilitation. 334 F.3d at
24       916. Under these circumstances, the continued reliance on these
         factors... violates due process." (id. at 947).
25

26       "¶ To a point it is true, the circumstances of the crime and
         motivation for it may indicate a petitioner's instability, cruelty,
27       impulsiveness, violent tendencies and like. However, after **fifteen
         or so years** in the caldron of prison life, not exactly an ideal
         therapeutic environment to say the least, and after repeated
28       demonstrations that despite the recognized hardships of prison,

4-J

1    this petitioner does not possess those attributes, the predictive
2    ability of the circumstances of the crime **is near zero.**"
     (id. at 947 fn.2).

3

4    In _Masoner_, _infra_, for example the court held that "the BPT's refusal to
5    grant a parole date and repeated failure to provide post commitment support
6    for the decisions [had] violated Masoner's liberty interest and due process
7    rights." (Masoner v State, 2004 WL 1080177 (C.D. Cal. 2004), ["[A]lthough a
8    commitment offense can provide some evidence to justify the initial denial of
9    parole date, subsequent denials in the face of exemplary behavior and
10   overwhelming evidence of rehabilitation raises serious questions involving an
11   inmate's liberty interest in parole." citing, Biggs, 334 F.3d at 919]).

12   Furthermore, yet another district court recently explained the rational
13   of why continuous use of the commitment offense and conduct prior to imprisonment
14   violates due process as follows:

15       "Whether the facts of the crime of conviction, or other unchanged
16       criteria, affect the parole eligibility decision can only be
         predicated on the 'predictive value' of the unchanged
17       circumstances. Otherwise, if the unchanged circumstances per
         se can be use to deny parole eligibility, sentencing is taken
18       out of the hand of judge and totally reposited in the hands of
         the BPT. That is, parole eligibility could be indefinitely and
19       forever delayed based on the nature of the crime even though the
         sentence given set forth the possibility of parole — a sentence
20       with the fact of the crime fresh in the mind of the judge. While
         it would not be a constitutional violation to forego parole
21       altogether for certain crimes, what the state cannot
         constitutionally do is have a sham system where the judge promises
22       the possibility of parole, but because of the nature of the crime,
         the BPT effectively deletes such from the system.

23       ¶ Nobody elected the BPT commissioners as sentencing judges.
         Rather, in some realistic way, the facts of the unchanged
24       circumstances must indicate a present danger to the community
         if released, and this can only be assessed not in a vacuum, **after**
25       **four or five eligibility hearings, but counter poised against**
         **the back drop of prison events,"** (Bair v Folsom State Prison,
26       2005 WL 2219220, *12n.3 (E.D. Cal. 2005) report and recommendation
         adopted by 2005 WL 3081634 (E.D. Cal. 2005)).
27

28   In the circumstances of petitioner's case, the Board's reliance upon the

1  facts of petitioner's crime and his prior conduct violates due process.

2  (Exhibits A page 28-29,   B page 43-44,  C page 44-45,and D page 42-48). First,

3  continued reliance upon these unchanging factors makes a sham of California's

4  parole system and amounts to an arbitrary denial of petitioner's "liberty interest

5  in release on parole," "expectation that he will be granted parole," and his

6  "presumption that parole release will be granted."  (See Mc Quillion v Ducan

7  306 F.3d 895, 902 (9th Cir. 2002); Biggs, supra, 334 F.3d at 914-915;

8  Rosenkrantz, supra, 29 Cal.4th at 654, 661). Petitioner has been denied parole

9  on four different occasions.  Continued reliance upon these unchanging factors

10  amounts to converting petitioner's parolable  offense to a term of life without

11  the possibility of parole.  (See, e.g., Irons, supra, 358 F.Supp.2d at 947

12  ["continuos reliance on the unchanging circumstances transforms an offense into

13  a de facto life imprisonment without the possibility of parole"]; Scott, supra,

14  34 Cal.Rptr.3d at 919-920, 133 Cal.App.4th at 594-595;  Shaputis, supra, 37

15  Cal.Rptr.3d at 335).    Second, the circumstances of the crime and petitioners

16  conduct prior to imprisonment do not amount to some evidence supporting the

17  conclusion that petitioner **"currently"** poses an unreasonable risk of danger

18  if released.  (See, In re Smith 114 Cal.App.4th 343, 370, 372 [evidence must

19  show "that a prisoner currently would pose an unreasonable risk of danger if

20  release at this time."]; Shaputis, supra, 34 Cal.Rptr.3d at 334-335 [same]).

21  Upholding the recital of the commitment offense and conduct prior to imprisonment

22  as the Board has done to deny petitioner parole for the fourth time, "converts

23  a court reviewing the denial of parole into a potted plant. "(In re Scott (2004)

24  119 Cal.App.4th 871, 898).  In the parole context, the     requirements    of

25  due process can only be met if "some evidence supports the decision" and the

26  evidence underlying the decision is supported by "some indicia of rehability."

27  (Biggs, supra, 334 F.3d at 914; Caswell v Calderon 363 F.3d 832, 839

28  (9th Cir. 2004); Scott, supra, 119 Cal.4th at 899; Superintendent v Hill 472

1  U.S. 445, 455-457 (1985)).

2  While it may have been reasonable to rely on petitioners offense and conduct prior
3  to imprisonment as an indicator of dangerousness for some period of time,
4  continued reliance on such unchanging circumstances — after 15 years of
5  incarceration and four (4) parole suitability hearings — violates due process
6  because these factors now lack predictive value with regards to petitioner's
7  present and future dangerousness. After 15 years of rehabilitation in which
8  petitioner's minimum eligible parole date for release passed on May 29, 1998,
9  (Exhibit D page 1:19-20), the ability to predict petitioner's future
10 dangerousness based simply on the circumstances of the crime and petitioners
11 conduct prior to imprisonment is nil. (See, Irons, supra, 358 F.Supp.2d at
12 947 n.2 ["four prior times in finding [Mr. Irons] unsuitable for parole " and
13 "after 15 years" imprisonment, ability to asses dangerousness "is near zero."];
14 Scott, supra, 133 Cal.App.4th at 595, 34 Cal.Rptr.3d at 919-920 ["the predictive
15 value of the commitment offense may be very questionable after a long period
16 of time."]).

17

18 Petitioner's record is replete with evidence of petitioner's
19 rehabilitation, including positive psychological reports, correctional counselor
20 reports, extensive self improvement through education and A/A and N/A advances
21 as well as therapy and disciplinary free incarceration. (See Exhibit A page
22 11:21-22, 12:3-8, 14:7-27, 15:1-27, 16:23-24; B page 22:4, 22:10-27, 23:1-27,
23 24:1-8, 25:12-13, 33:17-20; C page 21:12-14, 22:7-11, 22:16-27, 23:1-11, 23:24-25,
24 24:4-6, 26:1-2, 28:26-27, 29:1-2; D page 23:1-27, 24:1-7, 25:1-7 30:1-19, 35:15-22,
25 36:1-27, 45:1-2). As the Board stated:

26         "We would like to take this opportunity to commend you for
27         not having received and 115's throughout the entire time
           that you have been incarcerated. We certainly commend you
28         for having the ability and the skill to not incur any disciplinaries
           while in the institutions. Sir, we'd also like to commend you for

1    the multiple laudatory chronos in your file as well as for
     your continued participation in NA, AA."
2    (Exhibit D page  52:13-26).

3    While the Board may initially have been entitle to rely upon the commitment

4    offense and petitioner's conduct prior to imprisonment to find petitioner

5    unsuitable for parole, under these circumstances, petitioner submits that the

6    continued reliance on these pre-conviction factors do not now constitute "some

7    evidence" with "some indicia of reliability" of petitioner's current

8    dangerousness. (See, Hill, supra, 472 U.S. at 455; Bigss, supra, 334 F.3d at

9    917; Irons, supra, 358 F.Supp.2d at 947; Masoner, supra, 2004 WL 1080177 *1-

10   2; Bair, supra, 2005 WL 2219220, *12 n.3.; Scott, supra, 133 Cal.App.4th at

11   594-595, 34 Cal.Rptr.3d at 919-920;  Shaputis, supra, 37 Cal.Rptr.3d at 334-

12   335).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLAIM II

THE COMMITMENT OFFENSE (A NON-HOMICIDE OFFENSE)
DOES NOT RISE TO THE LEVEL OF "ESPECIALLY HEINOUS
OR CRUEL MANNER" TO JUSTIFY A PAROLE DENIAL FOR
THE FOURTH TIME; THERE WAS NO EVIDENCE SHOWING
PETITIONER WAS A "CURRENT" THREAT IF RELEASED
VIOLATING DUE PROCESS OF LAW

A). The Offense Does not Rise To "Especially
Heinous, Atrocious Or Cruel Manner" To Deny Parole

Regarding the crime itself, as stated by the Board that petitioner
"stabbed [Mr. Brooks] in the eye," was committed in an "especially cruel
and callous manner" -- invoked California Code of Regulations, title 15 §
2402(c)(1) (Hereafter CCR), as justification to deny parole. (Exhibit D
page 42-44, 46-47). To support their conclusions the Board held the offense
was "carried out in a dispassionate and calculated manner," (See, 15 CCR
§ 2402(c)(1)(B)), which states:

> "The offense was carried out in a dispassionate and
> calculated manner, such as an execution-style murder."
> (See, Exhibit E).

Petitioner's offense, while callous, was not even a murder let alone
an "execution style murder" as required by this subsection. Also the Board
stated that the offense "was carried out in a manner which demonstrated
an exceptionally callous disregard for human suffering," (See,
15 CCR § 2402(c)(1)(D)), which states:

> "The offense was carried out in a manner which demonstrates
> an exceptional callous disregard for human suffering."
> (See, Exhibit E).

The Board stated that it "does accept true the findings of the court.
We are not here to retry your case. "(Exhibit D page 9:8-11). Petitioner
was convicted of "aggravated mayhem with use of a deadly weapon."
(Exhibit D page 1:15). Even though petitioner was convicted of

1    stabbing the victim in the eye, the Board's continuous mention of Mr. Brooks

2    been hit and kicked — there was never **any** evidence that petitioner hit

3    or kicked Mr. Brooks. (Exhibit D page 42:17-18, 43:21-22, 46:8). Petitioner

4    **never** hit or kicked the victim. (See Exhibit D page 13:16-17, C page 10:10,

5    14:3, 44:24-26, B page 39:17-19, 43:24-25, A page 8:1-2).

7        In determining whether petitioner committed the offense in an

8    "exceptionally callous" manner the law is clear that the Board is only

9    authorized to consider whether "[t]he **prisoner** committed the offense in

10   an especially heinous, atrocious or cruel manner." (15 CCR §2402(c)(1);

11   Exhibit E; In re Ramirez 94 Cal.App.4th 549, 570 (2001); In re Smith 109

12   Cal.App.4th 489, 504 (2003)). The Board's sole legally sufficient reference

13   to petitioner's alleged actions directly with the victim was that petitioner

14   stabbed the victim in the eye. (Exhibit D page 42:20-21, 43:23-24, 46:24).

15   While the offense may have been callous, the offense was not murder. While

16   to deny parole an offense must be "exceptionally callous," regarding murder,

17   the court in In re Scott 119 Cal.App.4th 871, 891 (2004), stated:

18           "[A]ll second degree murders by definition involve some
             callousness - i.e., lack of emotion or sympathy, emotional
19           insensitivity, indifference to the feelings and suffering
             of others. [Citation]. As noted, however, parole is the
20           rule, rather than the exception. And a conviction for
             second degree murder does not automatically render one
21           unsuitable." (id., citing In re Smith 114 Cal.App.4th
             343, 366 (2003)).
22

23       In the recent post Dannenberg case, In re scott, supra, 133 Cal.App.4th

24   573, 34 Cal.Rptr.3d 905 (petitioner for review denied), the court held that

25   the "unsuitability determination **must** be predicated on 'some evidence' that

26   the particular circumstances of the [prisoner's crime]... indicated

27   exceptional callousness and cruelty with trivial provocation." (id. at

28   922, citing Dannenberg, supra, 34 Cal.App. at 1098).

1    In Scott, Mr. Scott, armed with a handgun, went looking for his wife and

2    her boyfriend. When Mr. Scott found them, he approached the boyfriend and

3    purposely shot him three times hitting the victim in the head and thigh in

4    front of Scott's 13 year old son, his wife and "others," in which a stray

5    bullet could of easily struck an innocent bystander. (id. at 908).

6    The scott court found that the offense was not committed "in an

7    dispassionate and calculated manner... or in a manner demonstrating an

8    exceptional callous disregard for human suffering." (id. at 922 citing also

9    the connected case of In re Scott I 119 Cal.App.4th 871, 889-892 (2004)).

10   Using illustrations for an explanation, the court wrote:

11

12        "For example, premeditation was considered in
13        Rosenkrantz because, the prisoner had been convicted
          only of a second degree murder, the evidence showed
14        'a full week of careful preparation, rehearsal and
          execution .' and that the prisoner, who 'fire 10 shots
15        at close range from an assault weapon and fire at least
          three or four shots into the victim's head as he lay
16        on the pavement,' carried out the crime with 'planning,
          sophistication or professionalism.' (Rosenkratz, at
17        p.678). Similarly, the evidence of premeditation relied
          on in In re Lowe (2005) 130 Cal.App.4th 1405, which
18        also involved a second degree murder conviction, showed
          that the prisoner purchase a gun shortly before the
19        murder, entered his victims bedroom in the middle of
          the night while he was asleep, unsuspecting, and in
20        a special relationship of confidence and trust with
          his killer, and shot him five times in the head and
21        chest, execution style.' (id. at p. 1414). As the
          court stated, this evidence showed the murder 'was
22        a cold-blooded execution' and that the prisoner's
          egregious acts [were] far more aggravated than the
          minimum necessary to sustain a second degree murder
23        conviction.' (id. at p. 1415). In In re Deluna, supra,
          126 Cal.App.4th 585, the petitioner, convicted of second
24        degree murder, had a physical confrontation with the
          victim and shot him in the mouth and, as the victim
25        bled and walked around the parking lot, followed him
          and continued firing until he died. The court of Appeal
26        determined that 'the initial wounding and deliberate
          stalking of a defenseless victim can reasonably be
27        characterized as especially cruel and callous. (id.
          at p. 593)." (Scott, supra, 34 Cal.Rptr.3d at 922-
28        923).

4-Q

1    Accordingly, the following cases are examples of homicides not rising

2 to the level of crimes committed in an especially heinous, atrocious, or

3 cruel manner to deny parole: <u>Smith, supra,</u> 114 Cal.App.4th at 350-351,

4 366-367 [victim shot at close range "in the head" and twice more as she

5 was falling to the floor," "shot Ms. Garner in the head three times" was

6 not an especially grave crime to support a denial of parole]; <u>Scott, supra,</u>

7 119 Cal.App.4th at 891-892 and fn. 11, 893, 895 fn.14 [shooting the victim

8 three times at close range in front of a child was not an exceptional callous

9 crime to support a denial of parole at the second parole hearing];

10 <u>In re Smith</u> 109 Cal.App.4th 489, 492, 506 (2003) [victim shot twice, severely

11 beaten, and drowned, court held crime was not committed in an especially

12 heinous, attrocious, or cruel manner to deny parole]; <u>In re Van houten</u> 116

13 Cal.App.4th 339, 364-365 (2004) [member of the Charles Manson cult, was

14 convicted of two murders where the husband and wife were subjected to hearing

15 each other being killed by stabbing. All in an attempt to incite a race

16 war; was a particular agregious crime to deny parole]; <u>Dannenberg, supra,</u>

17 34 Cal.App.4th at 1095 [evidence permitted to the conclusion that the

18 defendant bludgeoned his wife multiple times with a pipe wrench to the point

19 of incapacitating her and then drowned her or allowed her to drown in the

20 the bathtub, was a particular egregious crime to deny parole].

21    As previously stated herein, petitioners alleged direct involvement in the offense was that

22 he stabbed Mr. Brooks in the eye, which compared to the above cited cases can not be deemed

23 "exceptionally callous disregard for human suffering." (Exhibit D page 43:4-7). Also, it is

24 interesting to note that the victim, Mr. Brooks, after the alleged offense occurred, that Mr.

25 Brooks himself was convicted of serious offenses warranting prison incarceration. (See, Exhibit

26 C page 37:14-27, 38:1-14, 40:8-10). While the offense may be callous, labeling this non homicide

27 offense can not reasonably be deemed "exceptionally callous" to deny parole for the fourth time,

28 especially when petitioner has surpassed the "matrix" maximum time

1   to be served on such offense which calls for "11-12-13" years — petitioner

2   has now served 15 years imprisonment. (See, 15 CCR § 2403(d) III C: Exhibit

3.  F; Exhibit D page 40:8).

4

5

6   **B). There Is No previous Record of**
    **Violence To Deny Parole**

7

8       On this subject, the Board denied parole based on prior "criminal

9   Activity." (Exhibit D page 44:2-20, 48:1-18). While the Board mentions

10  "arrests," petitioner was only ever "convicted" other than the instant

11  commitment offense, of controlled substance violations and a misdemeanor.

12  (Exhibit D page 16:7-27, 17:1-9). The authority for denial of parole on

13  such subject is found in 15 CCR § 2402(c)(2) which states:

14          "previous Record of Violence. The prisoner on previous
            occasions inflicted or attempted to inflict serious injury
15          on a victim, particularly if the prisoner demonstrated
            serious assaultive behavior at an early age."
16          (See, Exhibit E).

17      In the instant case, petitioner has no juvenile record. (Exhibit D

18  page 16:7-8). Petitioner was never "convicted" of "violence" in nature.

19  offenses. (Exhibit D page 1:20-22); In re Smith 109 Cal.App.4th 489, 505

20  (2003) [Board must show a prisoner was "convicted" of a violent felony to

21  deny parole based on this criteria]). Petitioner was never convicted of

22  a violent felony, other than the instant offense. Furthermore, reliance

23  on any arrest is improper because evidence of such arrest does not meet

24  the test of relevant, reliable information which the Board must base its

25  parole decision. (15 CCR § 2402, subd.(b) ["All relevant reliable

26  information ... shall be considered"]). The Board may **only** consider a record

27  of violence which is "reliably documented." (id.) In a system in which

28  a defendant is considered innocent until proven guilty, an arrest can not

1    legally be sufficient proof of guilt. (See, Penal code § 1096; People v

2    Calloway 37 Cal.App.3d 905 (1974) [Arrests alone are not reliable evidence];

3    Estelle v Williams 425 U.S. 501, 503 [same]).  As such, this was not "some

4    evidence" containing "an indicia of reliability." (Scott, supra, 34 Cal.Rptr.

5    3d at 917; Biggs, supra, 334 F3d at 915).

6

7    **C). There Was No Evidence Use By The Board**
     **To Find Petitioner Had An Unstable Social History**

8

9        To support a parole denial, the Board stated:

10            "The record reflects that you have an unstable social history
              and prior criminality as previously outlined which includes
11            the arrest and, or convictions that were previously noted
              to    include    the    use    of    marijuana    and    cocaine."
12            (Exhibit D page 44:20-24).

13    The authority to support a denial under the "unstable social history criteria"

14    is found in 15 CCR § 2402 (c)(3) which states:

15            "Unstable social history.  The prisoner has a history of
              unstable    or    tumultuous    relationships    with    others."
16            (Exhibit E).

17        In In re Deluna 24 Cal.Rptr.3d 634 (2005), the Board denied parole based

18    on prior substance abuse stating Deluna has, "An unstable social history."

19    The court wrote:

20            "On the general topic of defendant's social history, the
              Board found that the defendant has an unstable social history
21            that included... A very severe alcohol problem, and you
              were carrying a loaded gun as a matter of routine."
22            (id. at 650).

23    The Board went on to conclude that Deluna "began consuming alcohol at the e

24    age of 17." (id.).  And that "On the day of the murder defendant had consumed

25    a 40 ounce bottle of beer, a six pack of tall beer and three pitchers of beer."

26    (id.).  While the consumption of alcohol and initiation of the fighting

27    occurred while in the bar with friends, (id. at 646), the court concluded:

28            "Though there is some evidence that the defendant had an

1    alcohol problem, there is no evidence that it contributed
     to 'a history of unstable or tumultuous relationship.'"
2    (id. at 650).

3    Although a substance abuser may well have a history of unstable social

4    relationships, there is no evidence of that here.  As the record shows, the

5    Board stated the previous use of marijuana and cocaine in and of itself showed

6    unsunsuitability.  Furthermore, the Board's statements that petitioner had

7    an "unstable social history and prior criminality" alone is not enough to

8    show petitioner is a **current** threat, 15 years after the offense to show

9    petitioner is unsuitable for parole. (Exhibit D page 44:20-24, 40:8-9).

10

11   Under the rule of law what the Board must adhere to is that the evidence

12   they use to deny parole **must** be based on "some evidence" that contain "an

13   indicia of reliability" showing that petitioner is "**currently**" a threat.

14   (See, Smith, supra, 114 Cal.App.4th at 370-372; Shaputis, supra, 37 CalRprt3d

15   at 334-335; Scott, supra, 34 Cal.Rptr 3d at 917; Biggs, supra, 334 F.3d at

16   915).  In this case , none of the above reasons is "some evidence" to show

17   petitioner is a "**current**" threat, 15 years after the offense, to justify

18   a denial of parole for the fourth time.  Especially when petitioner has been

19   disciplinary free his entire incarceration with no substance abuse nor

20   antisocial behavior in the last 15 years. (Exhibit D page 40:8-9, 52:13-23;

21   Smith, supra, 109 Cal.App.4th at 505 ["A prisoner prior addition is not an

22   appropriate consideration in determining parole suitability "]; Smith, supra,

23   114 Cal.App.4th at 371 [prior substance abuse is not evidence to show a

24   prisoner is a "current" threat if released on parole]).

25

26   D). **Pettioner's Parole Plans Were Adequate And Are Not**
         **Factors For Unsuitability Findings; The Psychologist**
27       **Report Was Not A Basis For Unsuitability Findings**
28       **Nor Was The District Attorney's Comments**

1       As negative evidence to support a parole denial for the fourth time the

2   Board stated that:

> "Again, the most recent psychological report is not totally
> supportive of release, and furthermore, it is somewhat
> contradictory in that it indicates that if you were release
> to the community, your risk would be minimal. However,
> the doctor firmly states that you deny any responsibility
> and that you need to develop some insight or at least a
> reasonable explanation before being consider for parole.
> In terms of your parole plans, sir, we do note for the record
> that you do have realistic parole plans in that more likely
> than not... you will be deported to Honduras, and we do
> have letters in your file that support your parole plans
> to live with your brother, and, or cousin upon your release
> to parole." (Exhibit D page 49:2-19, 45:10-22).

> "However, the record reflects that you have not completed
> any vocations throughout the entire time you have been in
> prison. And although you have taken advantage of some self
> help programs with in the institution, sir, you have not
> specifically participated in beneficial self-help
> specifically to address the issue of insight. (Exhibit D
> page 45:1-10, 48:1-10, 48:19-26, 49:19-25, 52:1-10)

> "Sir, the Hearing Panel notes that responses to Penal Code
> Section 3042 indicate an opposition to the finding of parole
> suitability by the District Attorney...." (Exhibit D page
> 51:1-4).

17      The Board stated that the psychologist reasoned that "if petitioner

18  would be released to the community, [his] risk would be minimal," **not** an

19  "unreasonable risk of danger to society if released from prison." (15 CCR

20  § 2402, subd.(a); Exhibit E).    Thus, the psychologist supports release.

21  Both Penal Code § 5011(b) and 15 CCR § 2236 states that the "Board shall

22  not require an admission of guilt to any crime" and "a prisoner refusal

23  to discuss the offense shall not be held against the prisoner." But  yet

24  the Board stated "that even though you are not required to discuss or admit

25  to the commitment offense, you still need to be able to demonstrate some

26  sort of insight when you come before this Panel, and you have not done that,"

27  as well as denying parole based on petitioner's "need to develop some

28  sort of insight or at least a reasonable explanation before being considered

1  for parole." (Exhibit D page 52:5-9, 49:7-11, 45:20-22). Petitioner

2  exercised his **right not to discuss the commitment offense.** (Exhibit D page

3  10:16-19). The Boards demand that petitioner must "develop some insight or

4  at least a reasonable explanation before being consider for parole" is in

5  direct violation of Penal Code 5011(b) and 15 CCR § 2236, and is therefore

6  not legally sufficient evidence to deny parole.

7

8      As to "parole plans," petitioner has a home to live in and a job in

9  Honduras. (Exhibit D page 23:2-27, 24:1-7, 25:1-7). 15 CCR § 2402(d)(8)

10  states:

11          "Understanding and plans for the future. The prisoner
            has made realistic plans for release or has developed
12          marketable skills that can be put to use upon release."
            (See, Exhibit E).
13

14  In the instant case, petitioner has realistic plans for release, i.e., a

15  job and home to live in. Furthermore, 15 CCR § 2402(c) is strictly

16  "circumstances tending to show unsuitability," while 15 CCR § 2402(d) is

17  circumstances tending to show suitability." (See Exhibit E). Here, the Board

18  used a factor that should be used to find suitability for parole and turned

19  it around to find petitioner unsuitable. The Boards demand that petitioner

20  obtain a vocation despite being on the vocation waiting list since 2000,

21  after petitioner received his GED, is **not** a factor to be used as a finding

22  of unsuitability. (15 CCR § 2402(d); Exhibit E; See also Exhibit D page

23  28:7-27, 29:1-9).    Furthermore, no where in the statutory (Penal Code §

24  3041) nor regulatory provisions (Cal.Code Regs. tit 15 § 2402 et seq.),

25  does it state that the Board may find petitioner "unsuitable" because he has

26  insufficiently participated in institutional programming, including

27  vocational training and self-help programming. (Exhibit D page 45:2-10,

28

1  48:19-26, 52:1-2). This is an illegal application of the law because no

2  law exists giving such authority to find petitioner unsuitable for parole.

3  (See, Cal.Cod.Regs. tit 15 § 2402 et seq.; Exhibit E). Therefore, this

4  **is not** "some evidence" to deny parole for the fourth time and is an illegal

5  application of law, viz., no law exists giving such authority to find

6  petitioner "unsuitable" for parole.

7  Secondly, parole suitability does not rest on the question of if a

8  parole applicant's "institutional programming, including vocational and

9  self-help" as stated by the Board are sufficient for the Board's demands.

10  The sole question on parole suitability is if a "prisoner **currently** would

11  pose an unreasonable risk of danger if released at this time." (In re Smith,

12  114 cal.App.4th 343, 370, 372, (2003), citing Cal.Code Regs. tit 15 § 2402

13  subdivision (a)); Dannenberg, supra, 34 Cal.4th at 1070 [Board must show

14  that the inmate poses a "continuing danger to the public."]; Shaputis, supra,

15  37 Cal.Rprt.3d at 334-335). Nothing in the record states the Board believes or even

16  suggests that petitioner would pose a "current" threat to society regarding

17  his institutional programming, including vocational training and self-help.

18  Even "assuming there may be some connection between [petitioner's] ...

19  limited vocational training, the Board did not established how this ...

20  makes him unsuitable as a threat to public safety." (In re Deluna, 126

21  Cal.App.4th 585,598, 24 Cal.Rptr.3d 643, 652 (2005)).

22  Thirdly, California Penal Code § 3041(b) comtemplates that a parole

23  denial may only be based if the Board

24        "Determines that the gravity of the current convicted
          offense or offenses, or the timing and gravity of current
25        or past convicted offenses, is such that consideration
          of the public safety requires a more lengthy period of
26        incarceration for this individual, and that a parole date,
          therefore, can-not be fixed at this meeting." (See, also,
27        McQuillion, supra, 306 F.3d at 901).

28  Nowhere does Penal Code § 3041 parole statute drafted by the legislature

4-X

1   state that "institutional programming , including vocational and self-help"

2   that do not measure up to the Board's demands authorize the Board to use

3   these factors as such for finding of unsuitability requiring a "more lengthy

4   period of incarceration."

5       California Code of Regulations, title 15 § 2402 et seq., itself does

6   not authorize "insufficient institutional programming, including vocational

7   training and self-help" that do not rise up to the Board's demands as a

8   basis of "unsuitability." (See, Exhibit E).  But even if it did authorize

9   the Board to use those factors, it would provide no legal authority for

10  for doing so if they excuse the scope of the Board's power under statute.

11  (See, In re Stanley, 54 Cal.App.3d 1030, 1036 (1976) ["A cardinal principle

12  hold that administrative regulations must conform to the enabling law; that

13  an administrative agency has no discretion to exceed the authority conferred

14  upon it by statute."]).

15

16      California Penal Code § 3041(b) "creates a presumption that parole

17  release will be granted." (McQuillion, supra, 306 F.3d at 902, and creates

18  "an expectation that [petitioner] will be granted parole." (Rosenkrantz,

19  supra, 29 Cal.4th at 654).  Nowhere in Penal Code § 3041 or the Board's

20  regulations does it even state or authorize a finding of "unsuitability"

21  when "institutional programming, vocational training, and self-help do not

22  meet up to the Board's demands.  As such this does not trump petitioner's

23  "presumption that parole release will be granted" and his "expectation

24  that [he] will be granted parole" and is not "some evidence" under the

25  current state of applicable legal provisions for finding of unsuitability.

26      Furthermore, under the statutory and regulatory provision, the Board

27  **must** parole petitioner unless it finds he **currently** presents an unreasonable

28  risk of danger to society if parole. (In re Smith, 114 Cal.App.4th 343,

1    370, 372 (2003), citing Cal. Code Regs. tit., 15 § 2402 (a); Dannenbeg,

2    supra, 34 Cal.4th at 1070 [evidence must show petitioner poses a "continous

3    danger to the public safety]; Shaputis, supra, 37 Cal.Rptr.3d at 334-335

4    [Board must show a "current" threat]).

5        There is no evidence in the record that shows petitioner "currently"

6    poses an unreasonable risk to society 15 years after the offense occurred.

7    The Board has pointed to no evidence showing a "nexus" between the crime

8    and petitioner's potential for violence 15 years later to show petitioner

9    "currently" poses an unreasonable risk to society if release. (See, In

10   re George Scott, supra, 34 Cal.Rptr.3d at 916, 926 [Board and Governor apply

11   a "nexus" rationale to the offense and conduct of the prisoner;

12   Exhibit D).

13       The Board held that petitioner has "not incur any disciplinaries while

14   within the institution," and stated, "We'd also like to commend you for

15   the multiple laudatory chronos in your file as well as for your continued

16   participation in AA/NA," obtaining a "GED," and acknowledged petitioner's

17   risk assessment was only "minimal." (Exhibit D page 49:6-7, 45:17-18,

18   52:13-26, 53:21-22; See also, Exhibit A page 12:3-8, 14:7-27, 15:1-27, 16:23-

19   24; B page 22:4, 22:10-27, 23:1-27, 24:1-8, 33:17-20, 25:12-13; C page 21:2-

20   4, 22:7-11, 22:16-27, 23:1-11, 23:24-25, 24:4-6, 26:1-2).

21

22       As stated above, the Board stated that the psychological report,

23   "Indicates that if [petitioner] were to be release to the community,

24   [petitioner's] risk would be minimal," not an "unreasonable risk of danger

25   to the society" as mandated by 15 CCR § 2402, subd, (a) (Exhibit D page

26   49:5-7; Exhibit E), as such, "findings" that petitioner needs "self-help"

27   is contrary to the records and supports petitioner's assertions that parole

28   hearing was not supported by "some evidence" and "was a shum." (See, In

1   re Ramirez, 94 Cal.App.4th 549, 571 (2001); In re Smith, 114 Cal.App.4th

2   343, 369, (2003); In re Scott, 119 Cal.App.4th 871, 896-897 (2004) [same];

3   Irons, supra, 358 F.Supp.2d at 948 [same]).    The reliance on self-help

4   therapy is not supported by "some evidence" that contains "an indicia of

5   reliability" to deny parole denying petitioner due process of law. (See,

6   Superintendent v Hill, supra, 472 U.S. at 456; McQuillion, supra, 306 F.3d

7   at 904; Biggs, supra, 334 F.3d at 915; Scott, supra, 119 Cal.App.4th at 899).

8

9        Lastly, the "opposition to a finding of parole suitability" is not some

10  evidence to support a denial of parole as mentioned by the Board. (Exhibit

11  D page 51:1-4).    While the Board may consider comments by the district

12  attorney or his representatives, (Penal Code § 3046), **nowhere** in the statutes

13  or regulations does it state that parole should be granted or denied based

14  on the position of the district attorney's office.    The decision to grant

15  parole rests on the guidelines listed in 15 CCR § 2400 et. seq., and Penal

16  Code § 3041. (Rosenkrantz, supra, 29 Cal.4th at 658 [there must be "some

17  evidence in the record before the Board [that] supports the decision to

18  deny parole, **based upon the factors specified by statute and regulation**")

19

20

21                              CONCLUSION

22       Recital of the commitment offense and prior commitment offense behaviour

23  that occurred over 15 years ago, as done in petitioner's case, for fourth

24  time, is not "some evidence" that contains "an indicia of reliability" that

25  petitioner is __"CURRENTLY"__ would pose an unreasonable risk of danger if

26  release at this time." (Scott, supra, 119 Cal.App.4th at 899; Biggs, supra,

27  334,F.3d at 915-917; Smith, supra, 114 Cal.App.4th at 370, 372; Dannenberg,

28  supra, 34 Cal.4th at 1070; Shaputis, supra, 37 Cal.Rptr.3d at 334-335).

## PRAYER FOR RELIEF

1). That an evidentiary hearing be granted and/or;

2). That the Court order a parole date for release be set for petitioner and that petitioner be release in said date (See, McQuillion v Dunca, 342 F.3d 1012, 1015-1016 (9th Cir. 2003) [return for a new parole hearing before the executive branch would amount to an "idle act" when there is no evidence to deny parole, citing In re Smith, 109 Cal.App.4th at 507] and/or;

3): That the Court order the Board to set a parole date in accordance with this Court's findings;

4). Any other relief this Court may deem just and proper to promote the ends of justice.

Date:  4-20-2006

Respectfully submitted by:

Justo Escalante, In Pro Se

4—BB

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☐ No. If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   _____ N/A _____

   b. Result _____ N/A _____ c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____ N/A _____

   e. Issues raised: (1) _____ N/A _____

   (2) _____

   (3) _____

   f. Were you represented by counsel on appeal? ☐ Yes. ☐ No. If yes, state the attorney's name and address, if known:

   _____ N/A _____

9. Did you seek review in the California Supreme Court? ☐ Yes ☐ No. If yes, give the following information:

   a. Result _____ N/A _____ b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____ N/A _____

   d. Issues raised: (1) _____ N/A _____

   (2) _____

   (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    _____ N/A _____

    _____

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    Administrative review no longer exists for challenging parole board hearings

    _____

    _____

    _____

    _____

    _____

    _____

    b. Did you seek the highest level of administrative review available? ☐ Yes. ☐ No. N/A
    *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a.   (1) Name of court: _____

         (2) Nature of proceeding (for example, "habeas corpus petition"): _____

         (3) Issues raised: (a) _____

             (b) _____

         (4) Result (Attach order or explain why unavailable): _____

         (5) Date of decision: _____

    b.   (1) Name of court: _____

         (2) Nature of proceeding: _____

         (3) Issues raised: (a) _____

             (b) _____

         (4) Result (Attach order or explain why unavailable): _____

         (5) Date of decision: _____

    c.   For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
    No Delay

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
    This habeas is properly before this court

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  4-20-2006 _____        _____
                                          (SIGNATURE OF PETITIONER)