# EXHIBIT  J

ORIGINAL

# S150999

IN  THE  SUPREME  COURT

OF  CALIFORNIA

SUPREME COURT
FILED

MAR 16 2007

Frederick K. Ohlrich Clerk

Deputy

CASE No. #  _____

IN  RE

JUSTO ESCALANTE,

ON HABEAS CORPUS

Appellate Ct. No# B194663

Superior Ct. No# BH 003993

PETITION  FOR  REVIEW

From Decision of the Court of Appeals,

Second Appellate District Filed

March 8, 2007

RECEIVED

MAR 16 2007

CLERK SUPREME COURT

Justo Escalante, E-91258
CTF Central, F-Wing 302
P.O. Box 689
Soledad, Ca. 93960-0689

TABLE OF AUTHORITIES

CASE                                                                PAGE

Bair v Folson State Prison (2005) ............................. 13,16
WL2219220 *12 n.3 (E.D.Cal.2005)


Biggs v Terhune (2003) .................... 10,11,12,13,14,16,22,23,29
334 F.3d 910 (9th Cir. 2003)


Casewell v Calderon (9th Cir. 2004) .............................. 14
369 F.3d 832


Estelle v Williams (    ) ........................................ 23
425 U.S. 501


Fay v Noia (1963) ................................................. 2
372 U.S. 391


In re Dannenburg (2005) ..................... 9,10,18,20,26,27,29
34 Cal.4th 1061


In re Deluna (2005) ........................................... 22,26
24 Cal.Rptr.3d 634


In re Ramirez (2001) ........................................... 18,19
94 Cal.App.4th 489


In re Rosenkrantz (2006) ..................... 11,14,27,29
29 Cal.4th 616


In re Scott (2004) ........................... 18,20,21,23
119 Cal.App.4th 871


In re Scott (2005)..................... 1,2,9,14,15,16,18,22,23,28
133 Cal.App.4th 573
34 Cal.Rptr.3d 905

TABLE OF AUTHORITIES CON'T

CASE                                                                    PAGE

In re Shaputis (2005) ................................. 1,10,11,14,16,23,26,28,29
37 Cal.Rptr.2d 324


In re Smith (2004) ................................................... 18,20,21,23
109 Cal.App.4th  871


In re Smith (2003) ............................................ 1,14,20,23,26,27,28,29
114 Cal.App.4th 343


In re Stanley (1976) .................................................... 27
54 Cal.App.3d 1030


In re Van Houten (2004) ................................................. 20
116 Cal.App.4th  339


In re Wen Lee (2006) .................................................... 1,2
DJDAR 13961


Iron v Warden of California State (2005) ........................ 2,12,14,15,16,29
Prison Solano
358 F.Supp.2d 936 (E.D. Cal. 2006)


Martin v Marshall (2006) ................................................ 2
431 F.Supp.2d  1038 (N.D. Cal. 2006)


Masoner v State (2004) ............................................... 13,16
WL1080177 (C.D. Cal. 2004)


Mc Quillion v Duncan (2002) ........................................ 14,27,28
306 F.3d 895  (9th Cir. 2002)


People v Calloway (1979) ................................................ 22
37 Cal.App.3d  905

TABLE OF AUTHORITIES CON'T

CASE                                                                    PAGE

Rosenkrantz v Marshall (2006) ..................................... 2
_____ F.Supp.2d _____ 2006
WL2327085 at *16 (C.D.Cal. 2006)


Superintendent v Hill (1985) ................................. 14,15,16,29,
472 U.S. 445


California Penal Code Sections
1096 ........................................................ 22
3041 ............................................... 2,25,26,27,29
3046 ........................................................ 29
5011 ...................................................... 24,25


California Code of Regulations Title 15 Sections
2236 ........................................................ 25
2400 ........................................................ 29
2402 .................................................. 25,26,27
2402(a) ............................................... 24,26,28
2402(c) ..................................................... 25
2402(c)(1) ............................................... 17,18
2402(c)(3) ................................................. 22
2402(c)(1)(B) .............................................. 17
2402(c)(1)(D) .............................................. 17
2403(d) III (C) ............................................ 21
2402(b) .................................................... 21
2402(d) .................................................... 25
2402(d)(8) ................................................. 25

CALIFORNIA SUPREME COURT

JUSTO ESCALANTE,

        PETITIONER,

v

J. Davis, Chairman, California
Board of Parole Hearings; J Tilton,
Director, California Department of
Corrections & Rehabilitation; B. Curry,
Warden, Correctional Training Facility;
et. al.,
        RESPONDENTS.

Supreme Court No.# _____

Los Angeles Superior Ct. # *BH 003993*

Court of Appeals, 2nd District # *B194663*

## PETITION FOR REVIEW

TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATES

JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

        Petitioner Justo Escalante , petitions this Court for review following the

the decision of the Court of Appeals, Second District. A copy of the Order of the Court

of Appeal is attached hereto as Exhibit A. A copy of the opinion from the Los Angeles

Superior Court is as well attached as Exhibit B.

### QUESTIONS PRESENTED

1) Is the Board of Parole Hearings required to show that a parole applicant, when

conducting a parole suitability hearing, that said parole applicant is "CURRENTLY"

a threat to public safety taking into account the amount of time between the commitment

offense and time served at the time of said hearing ? (See, In re Smith, 114 Cal.App.4th

343, 370, 372 (2003); In re Shaputis, 37 Cal.Rptr.2d 324, 334 (2005); In re Scott,

133 Cal.App.4th 573, 34 Cal.Rptr.3d 905, 919-920 (2005); In re Wen Lee, 2006 DJDAR 13961,

13964-13965).

2) Is it a Due Process violation for the Board of Parole hearings to continuously

rely on the commitment offense and conduct prior to imprisonment to deny parole after

a distant amount of time and parole hearings have passed in which the Board has

continuously relied on said factors to deny parole? (See, Scott, supra, 34 Cal.Rptr.3d

at 919-920;

## NECESSITY FOR REVIEW

A grant of review and resolution of these issues by this Court are necessary

to secure uniformity of decisions and application of Penal Code §3041 as well as both

application of federal and state case law. The need for uniformity in application

of Penal Code §3041 is demonstrated by the decisions in Scott, supra, 34 Cal.Rptr.3d

at 919-920;Lee, supra, 2006 DJDAR at 13964-65 ; Martin v Marshall, 431 F.Supp.2d 1038,

1046-1047 (2006 N.D. Cal); Rosenkrantz v Marshall, ___ F.Supp.2d ___, 2006 WL 2327085

at *16 (C.D. Cal. 2006); Irons v Warden of California State Prison Solano, 358 F.Supp.2d

936, 947 (E.D. Cal. 2005). Said cases have resulted in a differential interpretation

and application of Penal Code §3041 to a parole applicant regarding repetitive use of

the commitment offense and conduct prior to imprisonment which the Board continuously

uses to deny parole without regard to a parole applicants "current" suitability.

(See also, Fay v Noia, 372 U.S. 391, 418-419 (1963) ["comity demands that the state

courts ... are equally with the federal courts charged with the duty of protecting

[petitioner] in the enjoyment of his constitutional rights]).

## INTRODUCTION

On December 15, 2005, petitioner appeared before the Board for his 4th parole

hearing on a non-homicide offense. At this parole hearing petitioner received a two year

denial. Petitioner filed a habeas petition to the superior court which denied the

petition. (See Exhibit B). Then petitioner filed a habeas petition to the Second District

Court of Appeals which denied the petition. (Exhibit A). As such, petitioner now files

this Petition for Review to this Honorable Court.

PREAMBLE

This habeas petition alleges constitutional violations that occurred at petitioner's fourth parole hearing held by the Board Parole Hearings (Board) on December 15, 2005. The Board, for the fourth time, denied petitioner parole who is serving a sentence of ·7 to life for aggravated mayham (a non-homicide offense), a parolable offense, that occurred in April of 1991. Petitioner's minimum eligible parole date for release was set for May 29, 1998. (2005 Parole Hearing Transcripts page 1:4-15, 1:19-20 (hereafter P.T.)).

To fully inform this court on the chronological history of petitioner's prior parole hearings, the Board's reasons for previous parole denials and Board's recommendations to be found suitable for parole which has led up to petitioner's fourth parole hearing and his fourth parole denial despite petitioner's attempts, who enter this prison system completely **unable to speak and understand the English language**, to accomplish demands made by the Board to be found suitable, petitioner submits the following factual events:

**I. Petitioner's First Parole Hearing**
   **Held on May 1, 1997**

Petitioner took before the Board self help accomplishments to include, a teacher's helper in Adult Basic Education, improving education skills, and assisting other inmates, studying towards his GED. (1997 P.T. page 12:3-8), Alcoholic and Narcotics Anonymous participation, (1997 P.T. page 14:7-27,15:1-27), and a disciplinary free program (1997 P.T. page 11:21-22). The

3

1  prison psychologist stated that if petitioner "would be able to

2  stay off drugs and alcohol, he may very well be a person that

3  is not violent prone." ( 1997 P.T. page 16:23-24). Despite the

4  aforementioned, the Board denied petitioner parole for two years

5  stating:

6

7        "The offense was carried out in a cruel and
         callous manner with a disregard for the
8        suffering of others in a dispassionate,
         calculated manner. These conclusions are drawn
9        from the statement of facts wherein the prisoner
         and his crime partners attacked the victim
10       and the prisoner stabbed the victim in the
         eye which resulted in permanent damage. The
11       prisoner had an escalating pattern of criminal
         conduct which included two offenses for
12       transporting or selling illegal drugs....
         The prisoner has failed to develop a marketable
13       skill that could be put to use upon release
         and he is not sufficiently participated in
14       in beneficial self help and therapy programs.
         The prisoner should be commended for having
15       participated in an educational upgrading, ABE
         II and III, and he's also participated in AA
16       and NA. However, these positive aspects of
         his behavior do not outweigh the factors of
17       unsuitability.

18

         ¶ The panel recommends that the prisoner becomes
19       or remain disciplinary free, continue to up-
         grade educationally and vocationally,
20       participate in available self help and therapy
         programming." ( 1997 P.T. page 28:9-26, 29:1-
21       8, 30:1-4).

22

23  II. **Petitioner's Second parole**
        **Hearing Held on May 10, 2001**
24

25      For the second parole hearing, petitioner took before the

26  Board another disciplinary free program ( 2001 P.T. page 22:4),

27  his G.E.D. diploma, work as a chapel porter and continuos A.A.

28  and N.A. program since 1995. ( 2001 P.T. page 22:10-27, 23:1-

4

1  27, 24:1-8, 33:17-20). The prison psychologist stated that, if

2  released, petitioners violence potential "is considered to be no more than the

3  average citizen in the community." (2001 P.T. page 25:12-13).

4  Despite the aforementioned, the Board denied petitioner for

5  two years stating:

6      "The commitment offense was carried out in
    an especially cruel manner. It was carried

7      out in a manner which demonstrated an
    exceptional callous disregard for human

8      suffering. And the motive for the crime was
    inexplicable or very trivial in relation to

9      the offense. These conclusions are drawn from
    the statement of facts wherein the inmate had

10      gotten in an argument with the victim, James
    Brooks, James Brooks, claims that he had known

11      the inmate prior to this. And the inmate pulled
    the knife. Brook retreated, however, he slipped

12      or tripped. He went down. Mr. Escalante's
    friends kicked him, hit him, and the inmate

13      stabbed him in the right eye. (2001 P.T. page
    43:12-25).

14

15      ¶ The inmate does have a previous record.
    He did fail to profit from society's attempts

16      to correct his criminality. Those attempts
    included adult probation. He has unstable

17      social history and prior criminality which
    includes drug use and an illegal entry into

18      the United States. He has several arrests,
    however, three convictions. Two of those are

19      for control substance for which he is serving
    additional commitment on. One of them is a

20      misdemeanor plus a firearm, which he said must
    be another case of mistaken identity, as it

21      was not him. However, he does admit to the
    two controlled substance charges. The prisoner

22      institutionally has been programming. (2001 P.T.
    page 44:6-19).

23      ¶ He should be commended for his participation
    in AA and NA and the 12 steps, also for never

24      having a 115. He's definitely to be commended
    for that. He did completed his GED last year

25      10/ 2000. According to the inmate he is on
    a waiting list for a vocation. And all those

26      are very, very, good signs towards positive
    programming, which I will say that he is doing.

27      (2001 P.T. page 45: 11-18)

28      ¶ The Panel recommends that the prisoner remain

1    disciplinary-free, that if available to upgrade
2    vocationally and also self help and therapy
     programs." ( 2001 P.T. page 46:15-19).

3

4    **III. Petitioner Third Parole Hearing**
          **Held on May 27, 2003**

5

6        For the third, parole hearing petitioner took before the Board another

7    disciplinary free program, placement on the waiting list for vocation, a GED,

8    numerous self help groups, to include STI, HIV/AIDS, and Hepatitis program,

9    a 13-week Impact program and religious service attendance, and NA-AA

10   attendance since 1995. ( 2003 P.T. page 21:12-14, 22:7-11, 22:16-27, 23:1-

11   11, 23:24-25, 24:4-6, 26:1-2). The prison psychologist stated that if

12   release, petitioner's "violence potential is considered to be no more than

13   the average citizen in the community." ( 2003 P.T. page 28:26-27, 29:1-2).

14   Despite the aforemention, the Board denied petitioner parole for two years

15   stating:

16       "The offense was carried out in an especially cruel, vicious
         manner. The offense was carried out in manner which
17       demonstrates an exceptionally cold hearted disregard for
         human suffering wherein, the prisoner had gotten into an
18       argument with the victim, James Brooks. And the prisoner
         pulled a knife. The — Mr. Brooks retreated; however, he
19       slipped and tripped. He went down and Mr. Escalante's
         friends kicked him — and the prisoner stabbed him in the
20       right eye. ( 2003 P.T. page 44:15-26).

21       ¶ He's failed to upgrade vocationally as previously
         recommended by the Board, as well as he's not sufficiently
22       participated in beneficial self help and therapy programming
         at this time. The psychosocial report was adequate. Parole
23       plans was adequate.... ( 2003 P.T. page 46:3-10).

24       ¶ [T]he prisoner should be commended for taking self help
         groups in terms of Sexually Transmitted Diseases. He
25       completed the Impact program, as well as he's participated
         in NA. He's on the waiting list currently for computers.
26       He had positive work reports as a porter, as well as he
         in the past, 2000 I believe was the accurate date, completed
27       his GED. ( 2003 P.T. page 47:6-13).

28       ¶ [R]ecommendations to you, Mr. Escalante, are to remain

                                    6

1
2
3

> disciplinary free, if it's available to you, to upgrade
> vocationally and educationally, as well as if it's available
> to you participate in beneficial self help programming to
> better understand the causative factors on why you're before
> us here today...." ( 2003 P.T. page 49:1-7).

4   IV. Petitioner's fourth Parole Hearing
      At Issue Held On December 15, 2005

5

6       For the fourth parole hearing, petitioner took before the Board another

7   disciplinary free program, parole plans, a home to live in and two job offers,

8   good work reports, AA and NA self help therapy and Impact program self help

9   participation. ( 2005 P.T. page 23:1-27, 24:1-7, 25:1-7, 30:1-19, 35:15-22,

10  36:1-27, 45:1-2). Despite the aforementioned, the Board denied petitioner

11  parole for two years stating:

12      "Sir one of the main factors that we took into consideration
        is the gravity of the offense in that after reviewing the
13      facts of the crime, it is the opinion of this Panel that
        the offense was carried out in an especially cruel and
14      callous manner in that the victim was hit and kicked and
        knocked to the ground. Once he was on the ground, the record
15      reflects that you grabbed him by the hair and stabbed him
        in the eye resulting in the loss, permanent loss, of sight
16      in that particular eye as well as a frontal lobotomy. The
        offense was carried out in a dispassionate and caculated
17      manner.... (2005 P.T. page 42:12-17).

18      ¶ The offense was carried out in a manner which demonstrates
        an exceptionally callous disregard for human suffering....
19      (2005 P.T. page 42:23-25).

20      ¶ [Y]ou were arrested on a number of occasions prior to
        the commitment offense.... One of those offenses resulted
21      in a condition for which you were sentence, a felony
        conviction for which you were sentenced to 180 day in
22      jail.... ( 2005 P.T. page 44:3-13).

23      ¶ The record reflects that you have an unstable social
        history and prior criminality as previously outlined which
24      includes the arrest and or convictions that were previously
        noted to include the use of marijuana and cocaine.
25      (2005 P.T. page 44:20-24).

26      ¶ Again, the most recent psychological report is not
        totally supportive of release, and furthermore, it is some-
27      what contradictory in that it indicates that if you were
        to be release to the community, your risk would be minimal
28      However, the doctor firmly states that any, that you deny

any responsibility and that you need to develop some insight or at least a reasonable explanation before being cosidered for parole. ( 2005 P.T. page 49:2-11)

¶ [y]ou need to participate in more self help and therapy in order to help you come to terms with the underlying cause of the commitment offense in that even though you are not required to discuss or admit to the commitment offense, you still need to be able to demonstrate some sort of insight when you come before this panel.... (2005 P.T. page 52:1-9)

¶ Nevertheless, sir, we would like to take this opportunity to commend you for not having received any 115's throughout the entire time that you have been incarcerated. That's very commendable. We understand that it can be difficult for you to maneuver through these shark infested waters within the institution not incurring any 115's, so we certainly commend you for having the ability and the skill not incur any disciplinary while within the institution. Sir, we'd also like to commend you for your continued participation in AA, NA.... (2005 P.T. page 52:13-26).

¶ We recommend, if you're able to do so, you complete at least one trade.... Also,... immerse yourself in any and all self help that maybe available within the institution. If there is nothing available, then we would recommend that you go to library.... (2005 P.T. page 53:4-6, 54:5-9).

CLAIM I


THE BOARD'S DENIAL OF A PAROLE DATE FOR THE FOURTH
TIME BASED ON PETITIONER'S CONDUCT PRIOR TO IMPRISONMENT
TO JUSTIFY DENIAL OF PAROLE VIOLATES PETITIONER'S
LIBERTY INTEREST IN PAROLE AND EXPECTATION IN RECEIVING
A PAROLE DATE VIOLATING DUE PROCESS OF LAW UNDER THE
14th AMENDMENT TO THE U.S. CONSTITUTION


At petitioner's fourth hearing the Board relied on petitioner's conduct prior to imprisonment, to include the commitment offense, to deny parole. (2005 P.T. pages 42-48). Petitioner's conduct prior to imprisonment, to include the commitment offense, was also used at petitioner's three prior parole hearings to deny parole. (See Exhibit A page 28-29, B page 43-44, and C page 44-45). The denial of parole at petitioner's fourth parole hearing was done regardless of petitioner's exemplary behavior for the past 15 years of incarceration and evidence of rehabilitation as stated in the above preceding pages at petitioner's first, second, third, and fourth parole hearings. Petitioner submits that this fourth denial of parole based on his conduct prior to imprisonment violated due process of law.

Post Dannenberg cases (In re Dannenburg 34 Cal.4th 1061 (2005)) indicate this to be true. As the recent Court of Appeals wrote in In re Scott 133 Cal.App.4th 573, 34 Cal.Rptr.3d 905 (2005) regarding the continuos use of the conduct prior imprisonment wrote:

> "The Governor's assumption that a prisoner may be deemed
> unsuitable for release may be deemed unsuitable for release
> on the basis of the commitment offense 'alone' is correct,
> (Rosenkrantz, supra, 29 Cal.4th at p. 682) **but the proposi-
> tion must be properly understood.** The commitment offense
> is one of only two factors indicative of unsuitability,

a prisoner can not change (the other being his 'previous record of violence'). Reliance on such an immutable factor 'without regard to or consideration of subsequent circumstances' may be unfair (In re smith (2003) 114 Cal.App.4th 343,372), and runs contrary to the rehabilitative goals espoused by the prison system and could result in due process violation.' (Biggs v Terhune, supra, 334, F.3d at p. 917). The commitment offense can negate suitability only if the circumstances of the crime reliably established by evidence in record rationally indicate that the offender will present an unreasonable public risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time (Iron v Warden of California State Prison – Solano (E.D. Cal. 2005) 358 F.Supp.2d 936, 947,fn.2.)." (id. at p. 919-920)

"The Governor states in his decision that the gravity of Scott's offense is alone a sufficient basis 'on which to conclude that his release from prison **at this time** would pose an unreasonable public risk.' That statement could be repeated annually until Scott dies or is rendered helpless by the infirmities of sickness or age." (id. at p. 919-920 fn. 9 (emphasis in original)).

"It is worth noting, as our Supreme Court (People v Martishaw 1981) 29 Cal.3d 733, 768, disapproved on other grounds in People v Boyd (1985) 38 Cal.3d 762), that a large number of legal and scientific authorities believe that, even where the passage of time is not a factor and the assessment is made by an expert, predictions of future dangerousness **are exceedingly** unreliable." (id. at p. 920 fn. 9; (Petition for Review was denied in Scott on November 30, 2005, 2005 DJDAR 13803)).

In re Shaputis, 37 Cal.Rptr.3d 324, 135 Cal.App.4th 217 (2005), relying on Biggs v

Terhune., 334 F.3d 910, 916, (9th Cir. 2003), which is another post

Dannenburg case, wrote:

"[A]lthough reliance on conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements by state law where inmate over time continues to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of prior conduct would raise serious questions involving his liberty interest in parole" (id at p. 335, citing also, Irons v Warden of California State Prison Solano (E.D. Cal. 2005) 358 F.Supp.2d 936, 947 and fn.2).

1   Shaputis held that reliance on a parole applicant's "former lifestyle" prior

2   to imprisonment to deny parole, that such reliance on such an "historical relic"

3   is an "arbitrary and capricious [decision] within the differential standards

4   articulated by Rosenkrantz, supra, 29 Cal.4th 616." (Shaputis,supra, 37 Cal.

5   Rptr.3d at 335).

6       Even the court in In re Rosenkrantz, 29 Cal.4th 616 (2002), indicated that

7   the Board may not indefinitely rely on the nature of the offense to find

8   petitioner unsuitable for parole.  A close examination of what the California

9   Supreme Court stated in Rosenkrantz illuminates this reasoning:

10          "The nature of the prisoners offense, alone can constitute a
            sufficient basis for denying parole, (In re Minnis, supra, 7 Cal.
11          3d 639, 647; In re Ramirez, supra, 94 Cal.App.4th 549, 569, In
            re Seabock (1983) 140 Cal.App.3d 29, 36-37.) Although the parole
12          authority is prohibited from adopting a blanket rule that
            automatically excludes parole for individuals who have been
13          convicted of a particular type of offense, the authority properly
            may weigh heavily the degree of violence used and the amount of
14          viciousness shown by a defendant. (Rosenkrantz, supra, 29 Cal.4th
            at 682-683 [emphasis added]).
15

16  The emphasized portion applies equally well to prohibit blanket rules against

17  petitioner. (id. at 682 [recognizing inmate has a protected right to be

18  "considered on an individual basis"], emphasis in original).

19

20      Rosenkrantz not only recognizes a due process "liberty interest" in parole

21  (id. at 654, 661), it also recognizes that petitioner has a right to individual

22  consideration of parole aimed at determining whether petitioner presents an

23  unreasonable risk to the public if he is release on parole.  The crime's facts

24  may be considered, but not if it makes a blanket rule that petitioner is

25  unsuitable for parole.

26      This reasoning is in line with Biggs v Terhune, 334 F.3d 910 (9th Cir. 2003),

27  in which the Ninth Circuit Court of Appeals upheld that the Board's reliance

28  on the sole factors of the commitment offense to deny parole to a prisoner at

                                        11

1   his minimum eligible parole date, despite an intervening period of exemplary

2   conduct. Nevertheless, the Biggs court stated:

3       "[T]he parole board's sole supportable reliance on the gravity
        of the offense and conduct prior to imprisonment to justify denial
4       of parole can be **initially justified** as fulfilling the requirements
        set forth by the state law. Overtime, however, should Biggs
5       continue to demonstrate exemplary behavior and evidence of
        rehabilitation, denying him a parole date simply because of the
6       nature of Bigg's offense and prior conduct would raise serious
        questions involving his liberty interest in parole." (Biggs, supra,
7       334 F.3d at 916).

8       "A continue reliance in the future on an unchanging factor, the
        circumstances of the offense and conduct prior to imprisonment,
9       runs contrary to the rehabilitative goals espoused by the prison
        system and could result in a due process violation." (id. at 917).
10

11      In line with Biggs regarding continuous use of precommitment factors to

12  deny parole is contrary to due process, the Court in Irons v Warden of California

13  State prison —Solano, 358 F.Supp.936 (E.D. Cal. 2005) wrote:

14      "[C]ontinuous reliance on unchanging circumstances transforms
        an offense for which California law provides eligibility for parole
15      into a de facto life imprisonment without the possibility of
        parole. The court asks rhetorically — what is it about the
16      circumstances of petitioner's crime or motive which are going to
        change? The answer is nothing. The circumstances of the crime
17      will always be what they were, and petitioner's motive for
        committing them **will always be trivial.** Petitioner has no hope
18      for ever obtaining parole except perhaps that a panel in the future
        will arbitrarily hold that the circumstances were not that serious
19      or the motive was more than trivial. Given that no one seriously
        contends lack of seriousness or lack of triviality at the present
20      time, the potential for parole in this case is remote to the point
        of non-existence. Petitioner's liberty interest should not be
21      determined by such an arbitrary, remote possibility.

22      In the instant case, the BPT has apparently relied on these
        unchanging factors at least **four prior times** in finding petitioner
23      unsuitable for parole. Petitioner has continued to demonstrate
        exemplary behavior and evidence of rehabilitation. 334 F.3d at
24      916. Under these circumstances, the continued reliance on these
        factors... violates due process." (id. at 947).
25

26      "¶ To a point it is true, the circumstances of the crime and
        motivation for it may indicate a petitioner's instability, cruelty,
27      impulsiveness, violent tendencies and like. However, after **fifteen
        or so years** in the caldron of prison life, not exactly an ideal
28      therapeutic environment to say the least, and after repeated
        demonstrations that despite the recognized hardships of prison,

1    this petitioner does not possess those attributes, the predictive
2    ability of the circumstances of the crime is near zero."
     (id. at 947 fn.2).

3

4    In Masoner, infra, for example the court held that "the BPT's refusal to

5    grant a parole date and repeated failure to provide post commitment support

6    for the decisions [had] violated Masoner's liberty interest and due process

7    rights." (Masoner v State, 2004 WL 1080177 (C.D. Cal. 2004) ["[A]lthough a

8    commitment offense can provide some evidence to justify the initial denial of

9    parole date, subsequent denials in the face of exemplary behavior and

10   overwhelming evidence of rehabilitation raises serious questions involving an

11   inmate's liberty interest in parole." citing, Biggs, 334 F.3d at 919]).

12   Furthermore, yet another district court recently explained the rational

13   of why continuous use of the commitment offense and conduct prior to imprisonment

14   violates due process as follows:

15       "Whether the facts of the crime of conviction, or other unchanged
16       criteria, affect the parole eligibility decision can only be
         predicated on the 'predictive value' of the unchanged
17       circumstances. Otherwise, if the unchanged circumstances per
         se can be use to deny parole eligibility, sentencing is taken
18       out of the hand of judge and totally reposited in the hands of
         the BPT. That is, parole eligibility could be indefinitely and
19       forever delayed based on the nature of the crime even though the
         sentence given set forth the possibility of parole — a sentence
20       with the fact of the crime fresh in the mind of the judge. While
         it would not be a constitutional violation to forego parole
21       altogether for certain crimes, what the state cannot
         constitutionally do is have a sham system where the judge promises
22       the possibility of parole, but because of the nature of the crime,
         the BPT effectively deletes such from the system.

23       ¶ Nobody elected the BPT commissioners as sentencing judges.
         Rather, in some realistic way, the facts of the unchanged
24       circumstances must indicate a present danger to the community
         if released, and this can only be assessed not in a vacuum, after
25       four or five eligibility hearings, but counter poised against
         the back drop of prison events," (Bair v Folsom State Prison,
26       2005 WL 2219220, *12n.3 (E.D. Cal. 2005) report and recommendation
         adopted by 2005 WL 3081634 (E.D. Cal. 2005)).

27

28   In the circumstances of petitioner's case, the Board's reliance upon the

1  facts of petitioner's crime and his prior conduct violates due process.

2  First,

3  continued reliance upon these unchanging factors makes a sham of California's

4  parole system and amounts to an arbitrary denial of petitioner's"liberty interest

5  in release on parole," "expectation that he will be granted parole," and his

6  "presumption that parole release will be granted." (See Mc Quillion v Ducan

7  306 F.3d 895, 902 (9th Cir. 2002); Biggs, supra, 334 F.3d at 914-915;

8  Rosenkrantz, supra, 29 Cal.4th at 654, 661). Petitioner has been denied parole

9  on four different occasions. Continued reliance upon these unchanging factors

10 amounts to converting petitioner's parolable offense to a term of life without

11 the possibility of parole. (See, e.g., Irons, supra, 358 F.Supp.2d at 947

12 ["continuos reliance on the unchanging circumstances transforms an offense into

13 a de facto life imprisonment without the possibility of parole"]; Scott, supra,

14 34 Cal.Rptr.3d at 919-920, 133 Cal.App.4th at 594-595; Shaputis, supra, 37

15 Cal.Rptr.3d at 335). Second, the circumstances of the crime and petitioners

16 conduct prior to imprisonment do not amount to some evidence supporting the

17 conclusion that petitioner **"currently"** poses an unreasonable risk of danger

18 if released. (See, In re Smith 114 Cal.App.4th 343, 370, 372 [evidence must

19 show "that a prisoner currently would pose an unreasonable risk of danger if

20 release at this time."]; Shaputis, supra, 34 Cal.Rptr.3d at 334-335 [same]).

21 Upholding the recital of the commitment offense and conduct prior to imprisonment

22 as the Board has done to deny petitioner parole for the fourth time, "converts

23 a court reviewing the denial of parole into a potted plant. "(In re Scott (2004)

24 119 Cal.App.4th 871, 898). In the parole context, the requirements of

25 due process can only be met if "some evidence supports the decision" and the

26 evidence underlying the decision is supported by "some indicia of rehability."

27 (Biggs, supra, 334 F.3d at 914; Caswell v Calderon 363 F.3d 832, 839

28 (9th Cir. 2004); Scott, supra, 119 Cal.4th at 899; Superintendent v Hill 472

14

1  U.S. 445, 455-457 (1985)).

2  While it may have been reasonable to rely on petitioners offense and conduct prior

3  to imprisonment as an indicator of dangerousness for some period of time,

4  continued reliance on such unchanging circumstances — after 15 years of

5  incarceration and four (4) parole suitability hearings — violates due process

6  because these factors now lack predictive value with regards to petitioner's

7  present and future dangerousness.  After 15 years of rehabilitation in which

8  petitioner's minimum eligible parole date for release passed on May 29, 1998,

9  (2005 P.T.  page 1:19-20), the ability to predict petitioner's future

10 dangerousness based simply on the circumstances of the crime and petitioners

11 conduct prior to imprisonment is nil.  (See, Irons, supra, 358 F.Supp.2d at

12 947 n.2 ["four prior times in finding [Mr. Irons] unsuitable for parole " and

13 "after 15 years" imprisonment, ability to asses dangerousness "is near zero."];

14 Scott, supra, 133 Cal.App.4th at 595, 34 Cal.Rptr.3d at 919-920 ["the predictive

15 value of the commitment offense may be very questionable after a long period

16 of time."]).

17

18 Petitioner's record is replete with evidence of petitioner's

19 rehabilitation, including positive psychological reports, correctional counselor

20 reports, extensive self improvement through education and A/A and N/A advances

21 as well as therapy and disciplinary free incarceration. (See 1997 P.T. page

22 11:21-22, 12:3-8, 14:7-27, 15:1-27; 2001 P.T. page 22:4, 22:10-27, 23:1-27,

23 24:1-8, 25:12-13; 2003 P.T. page 21:12-14, 22:7-11, 22:16-27, 23:1-11, 23:24-25,

24 24:4-6, 26:1-2, 28:26-27; 2005 P.T. page 23:1-27, 24:1-7, 25:1-7 30:1-19, 35:15-22,

25 36:1-27, 45:1-2). As the Board stated:

26      "We would like to take this opportunity to commend you for
        not having received and 115's throughout the entire time
27      that you have been incarcerated. We certainly commend you
        for having the ability and the skill to not incur any disciplinaries
28      while in the institutions. Sir, we'd also like to commend you for

1       the multiple laudatory chronos in your file as well as for
      your continued participation in NA, AA."

2       (2005 P.T. page 52:13-26).

3   While the Board may initially have been entitle to rely upon the commitment

4 offense and petitioner's conduct prior to imprisonment to find petitioner

5 unsuitable for parole, under these circumstances, petitioner submits that the

6 continued reliance on these pre-conviction factors do not now constitute "some

7 evidence" with "some indicia of reliability" of petitioner's current

8 dangerousness. (See, Hill, supra, 472 U.S. at 455; Bigss, supra, 334 F.3d at

9 917; Irons, supra, 358 F.Supp.2d at 947; Masoner, supra, 2004 WL 1080177 *1-

10 2; Bair, supra, 2005 WL 2219220, *12 n.3.; Scott, supra, 133 Cal.App.4th at

11 594-595, 34 Cal.Rptr.3d at 919-920; Shaputis, supra, 37 Cal.Rptr.3d at 334-

12 335).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLAIM II

THE COMMITMENT OFFENSE (A NON-HOMICIDE OFFENSE)
DOES NOT RISE TO THE LEVEL OF "ESPECIALLY HEINOUS
OR CRUEL MANNER" TO JUSTIFY A PAROLE DENIAL FOR
THE FOURTH TIME; THERE WAS NO EVIDENCE SHOWING
PETITIONER WAS A "CURRENT" THREAT IF RELEASED
VIOLATING DUE PROCESS OF LAW

A). The Offense Does not Rise To "Especially
    Heinous, Atrocious Or Cruel Manner" To Deny Parole

Regarding the crime itself, as stated by the Board that petitioner "stabbed [Mr. Brooks] in the eye," was committed in an "especially cruel and callous manner" — invoked California Code of Regulations, title 15 § 2402(c)(1) (Hereafter CCR), as justification to deny parole. (2005 P.T. page 42-44, 46-47). To support their conclusions the Board held the offense was "carried out in a dispassionate and calculated manner," (See, 15 CCR § 2402(c)(1)(B)), which states:

> "The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder."

Petitioner's offense, while callous, was not even a murder let alone an "execution style murder" as required by this subsection. Also the Board stated that the offense "was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering," (See, 15 CCR § 2402(c)(1)(D)), which states:

> "The offense was carried out in a manner which demonstrates an exceptional callous disregard for human suffering."

The Board stated that it "does accept true the findings of the court. We are not here to retry your case. "(2005 P.T. page 9:8-11). Petitioner was convicted of "aggravated mayhem with use of a deadly weapon." ( 2005 P.T. page 1:15). Even though petitioner was convicted of

17

1  stabbing the victim in the eye, the Board's continuous mention of Mr. Brooks

2  been hit and kicked — there was never **any** evidence that petitioner hit

3  or kicked Mr. Brooks. (2005 P.T. page 42:17-18, 43:21-22, 46:8).  Petitioner

4  **never** hit or kicked the victim. (See 2005 P.T. page 13:16-17)

7      In  determining  whether  petitioner  committed  the  offense  in  an

8  "exceptionally callous" manner the law is clear that the Board is only

9  authorized to  consider  whether  "[t]he  **prisoner**  committed  the offense in

10  an especially heinous, atrocious or cruel manner." (15  CCR  §2402(c)(1);

11      In re Ramirez 94 Cal.App.4th 549, 570 (2001); In re Smith 109

12  Cal.App.4th 489, 504 (2003)).  The Board's sole legally sufficient reference

13  to petitioner's alleged actions directly with the victim was that petitioner

14  stabbed the victim in the eye. (2005 P.T. page 42:20-21, 43:23-24, 46:24).

15  While the offense may have been callous, the offense was not murder.  While

16  to deny parole an offense must be "exceptionally callous," regarding murder,

17  the court in In re Scott 119 Cal.App.4th 871, 891 (2004), stated:

> "[A]ll second degree murders by definition involve some
> callousness - i.e., lack of emotion or sympathy, emotional
> insensitivity, indifference to the feelings and suffering
> of others. [Citation].  As noted, however, parole is the
> rule, rather than the exception.  And a conviction for
> second degree murder does not automatically render one
> unsuitable." (id., citing In re Smith 114 Cal.App.4th
> 343, 366 (2003)).

23  In the recent post Dannenberg case, In re scott, **supra,** 133 Cal.App.4th

24  573, 34 Cal.Rptr.3d 905 (petitioner for review denied), the court held that

25  the "unsuitability determination **must** be predicated on 'some evidence' that

26  the  particular  circumstances  of  the  [prisoner's crime]...  indicated

27  exceptional callousness and cruelty with trivial provocation." (id. at

28  922, citing Dannenberg, supra, 34 Cal.App. at 1098).

1    In Scott, Mr. Scott, armed with a handgun, went looking for his wife and
2    her boyfriend. When Mr. Scott found them, he approached the boyfriend and
3    purposely shot him three times hitting the victim in the head and thigh in
4    front of Scott's 13 year old son, his wife and "others," in which a stray
5    bullet could of easily struck an innocent bystander. (id. at 908).

6    The scott court found that the offense was not committed "in an
7    dispassionate and calculated manner... or in a manner demonstrating an
8    exceptional callous disregard for human suffering." (id. at 922 citing also
9    the connected case of In re Scott I 119 Cal.App.4th 871, 889—892 (2004)).
10   Using illustrations for an explanation, the court wrote:

12        "For example, premeditation was considered in
          Rosenkrantz because, the prisoner had been convicted
13        only of a second degree murder, the evidence showed
          'a full week of careful preparation, rehearsal and
14        execution .' and that the prisoner, who 'fire 10 shots
          at close range from an assault weapon and fire at least
15        three or four shots into the victim's head as he lay
          on the pavement,' carried out the crime with 'planning,
16        sophistication or professionalism.' (Rosenkratz, at
          p.678). Similarly, the evidence of premeditation relied
17        on in In re Lowe (2005) 130 Cal.App.4th 1405, which
          also involved a second degree murder conviction, showed
18        that the prisoner purchase a gun shortly before the
          murder, entered his victims bedroom in the middle of
19        the night while he was asleep, unsuspecting, and in
          a special relationship of confidence and trust with
20        his killer, and shot him five times in the head and
          chest, execution style.' (id. at p. 1414). As the
21        court stated, this evidence showed the murder 'was
          a cold-blooded execution' and that the prisoner's
22        egregious acts [were] far more aggravated than the
          minimum necessary to sustain a second degree murder
23        conviction.' (id. at p. 1415). In In re Deluna, supra,
          126 Cal.App.4th 585, the petitioner, convicted of second
24        degree murder, had a physical confrontation with the
          victim and shot him in the mouth and, as the victim
25        bled and walked around the parking lot, followed him
          and continued firing until he died. The court of Appeal
26        determined that 'the initial wounding and deliberate
          stalking of a defenseless victim can reasonably be
27        characterized as especially cruel and callous. (id.
          at p. 593)." (Scott, supra, 34 Cal.Rptr.3d at 922—
28        923).

1    Accordingly, the following cases are examples of homicides not rising

2   to the level of crimes committed in an especially heinous, atrocious, or

3   cruel manner to deny parole: Smith, supra, 114 Cal.App.4th at 350-351,

4   366-367 [victim shot at close range "in the head" and twice more as she

5   was falling to the floor," "shot Ms. Garner in the head three times" was

6   not an especially grave crime to support a denial of parole]; Scott, supra,

7   119 Cal.App.4th at 891-892 and fn. 11, 893, 895 fn.14 [shooting the victim

8   three times at close range in front of a child was not an exceptional callous

9   crime to support a denial of parole at the second parole hearing];

10  In re Smith 109 Cal.App.4th 489, 492, 506 (2003) [victim shot twice, severely

11  beaten, and drowned, court held crime was not committed in an especially

12  heinous, attrocious, or cruel manner to deny parole]; In re Van houten 116

13  Cal.App.4th 339, 364-365 (2004) [member of the Charles Manson cult, was

14  convicted of two murders where the husband and wife were subjected to hearing

15  each other being killed by stabbing. All in an attempt to incite a race

16  war; was a particular agregious crime to deny parole]; Dannenberg, supra,

17  34 Cal.App.4th at 1095 [evidence permitted to the conclusion that the

18  defendant bludgeoned his wife multiple times with a pipe wrench to the point

19  of incapacitating her and then drowned her or allowed her to drown in the

20  the bathtub, was a particular egregious crime to deny parole].

21  As previously stated herein, petitioners alleged direct involvement in the offense was that

22  he stabbed Mr. Brooks in the eye, which compared to the above cited cases can not be deemed

23  "exceptionally callous disregard for human suffering." (2005 P.T. page 43:4-7). Also, it is

24  interesting to note that the victim, Mr. Brooks, after the alleged offense occurred, that Mr.

25  Brooks himself was convicted of serious offenses warranting prison incarceration. (See, 2003 P.T.

26  page 37:14-27, 38:1-14, 40:8-10). While the offense may be callous, labeling this non homicide

27  offense can not reasonably be deemed "exceptionally callous" to deny parole for the fourth time,

28  especially when petitioner has surpassed the "matrix" maximum time

1  to be served on such offense which calls for "11-12-13" years — petitioner

2  has now served 15 years imprisonment. (See, 15 CCR § 2403(d) III C}.

3

4

5

6  B). There Is No previous Record of
        Violence To Deny Parole

7

8     On this subject, the Board denied parole based on prior "criminal

9  Activity." ( 2005 P.T. page 44:2-20, 48:1-18). While the Board mentions

10  "arrests," petitioner was only ever "convicted" other than the instant

11  commitment offense, of controlled substance violations and a misdemeanor.

12  ('2005 P.T. page 16:7-27, 17:1-9). The authority for denial of parole on

13  such subject is found in 15 CCR § 2402(c)(2) which states:

14          "previous Record of Violence. The prisoner on previous
            occasions inflicted or attempted to inflict serious injury
15          on a victim, particularly if the prisoner demonstrated
            serious assaultive behavior at an early age."
16

17     In the instant case, petitioner has no juvenile record. (2005 P.T.

18  page 16:7-8). Petitioner was never "convicted" of "violence" in nature

19  offenses. (2005 P.T. page 1:20-22); In re Smith 109 Cal.App.4th 489, 505

20  (2003) [Board must show a prisoner was "convicted" of a violent felony to

21  deny parole based on this criteria]). Petitioner was never convicted of

22  a violent felony, other than the instant offense. Furthermore, reliance

23  on any arrest is improper because evidence of such arrest does not meet

24  the test of relevant, reliable information which the Board must base its

25  parole decision. (15 CCR § 2402, subd.(b) ["All relevant reliable

26  information ... shall be considered"]). The Board may **only** consider a record

27  of violence which is "reliably documented." (id.) In a system in which

28  a defendant is considered innocent until proven guilty, an arrest can not

1  legally be sufficient proof of guilt. (See, Penal code § 1096; People v

2  Calloway 37 Cal.App.3d 905 (1974) [Arrests alone are not reliable evidence];

3  Estelle v Williams 425 U.S. 501, 503 [same]). As such, this was not "some

4  evidence" containing "an indicia of reliability." (Scott, supra, 34 Cal.Rptr.

5  3d at 917; Biggs, supra, 334 F3d at 915).

6

7  C). There Was No Evidence Use By The Board
       To Find Petitioner Had An Unstable Social History

8

9      To support a parole denial, the Board stated:

10         "The record reflects that you have an unstable social history
            and prior criminality as previously outlined which includes
11         the arrest and, or convictions that were previously noted
            to include the use of marijuana and cocaine."
12         ( 2005 P.T. page 44:20-24).

13  The authority to support a denial under the "unstable social history criteria"

14  is found in 15 CCR § 2402 (c)(3) which states:

15         "Unstable social history. The prisoner has a history of
            unstable or tumultuous relationships with others."
16

17      In In re Deluna 24 Cal.Rptr.3d 634 (2005), the Board denied parole based

18  on prior substance abuse stating Deluna has, "An unstable social history."

19  The court wrote:

20         "On the general topic of defendant's social history, the
            Board found that the defendant has an unstable social history
21         that included... A very severe alcohol problem, and you
            were carrying a loaded gun as a matter of routine."
22         (id. at 650).

23  The Board went on to conclude that Deluna "began consuming alcohol at the e

24  age of 17." (id.). And that "On the day of the murder defendant had consumed

25  a 40 ounce bottle of beer, a six pack of tall beer and three pitchers of beer."

26  (id.). While the consumption of alcohol and initiation of the fighting

27  occurred while in the bar with friends, (id. at 646), the court concluded:

28         "Though there is some evidence that the defendant had an

1           alcohol problem, there is no evidence that it contributed
to 'a history of unstable or tumultuous relationship.'"
2           (id. at 650).

3       Although a substance abuser may well have a history of unstable social

4  relationships, there is no evidence of that here.  As the record shows, the

5  Board stated the previous use of marijuana and cocaine in and of itself showed

6  unsunsuitability.  Furthermore, the Board's statements that petitioner had

7  an "unstable social history and prior criminality" alone is not enough to

8  show petitioner is a <u>current</u> threat, 15 years after the offense to show

9  petitioner is unsuitable for parole. ( 2005 P.T. page 44:20-24, 40:8-9).

10

11       Under the rule of law what the Board must adhere to is that the evidence

12  they use to deny parole **must** be based on "some evidence" that contain "an

13  indicia of reliability" showing that petitioner is **"currently"** a threat.

14  (See, Smith, supra, 114 Cal.App.4th at 370-372; Shaputis, supra, 37 CalRprt3d

15  at 334-335; Scott, supra, 34 Cal.Rptr 3d at 917; Biggs, supra, 334 F.3d at

16  915).  In this case , none of the above reasons is "some evidence" to show

17  petitioner is a <u>"current"</u> threat, 15 years after the offense, to justify

18  a denial of parole for the fourth time.  Especially when petitioner has been

19  disciplinary free his entire incarceration with no substance abuse nor

20  antisocial behavior in the last 15 years. ( 2005 P.T. page 40:8-9, 52:13-23;

21  Smith, supra, 109 Cal.App.4th at 505 ["A prisoner prior addiction is not an

22  appropriate consideration in determining parole suitability "]; Smith, supra,

23  114 Cal.App.4th at 371 [prior substance abuse is not evidence to show a

24  prisoner is a "current" threat if released on parole]).

25

26  D). **Pettioner's Parole Plans Were Adequate And Are Not**
       **Factors For Unsuitability Findings; The Psychologist**
27         **Report Was Not A Basis For Unsuitability Findings**
28         **Nor Was The District Attorney's Comments**

1    As negative evidence to support a parole denial for the fourth time the

2 Board stated that:

> "Again, the most recent psychological report is not totally
> supportive of release, and furthermore, it is somewhat
> contradictory in that it indicates that if you were release
> to the community, your risk would be minimal. However,
> the doctor firmly states that you deny any responsibility
> and that you need to develop some insight or at least a
> reasonable explanation before being consider for parole.
> In terms of your parole plans, sir, we do note for the record
> that you do have realistic parole plans in that more likely
> than not... you will be deported to Honduras, and we do
> have letters in your file that support your parole plans
> to live with your brother and, or cousin upon your release
> to parole." ( 2005 P.T. page 49:2-19, 45:10-22).

> "However, the record reflects that you have not completed
> any vocations throughout the entire time you have been in
> prison.  And although you have taken advantage of some self
> help programs with in the institution, sir, you have not
> specifically participated in beneficial self-help
> specifically to address the issue of insight. ( 2005 P.T.
> page 45:1-10, 48:1-10, 48:19-26, 49:19-25, 52:1-10)

> "Sir, the Hearing Panel notes that responses to Penal Code
> Section 3042 indicate an opposition to the finding of parole
> suitability by the District Attorney...." ( 2005 P.T. page
> 51:1-4).

17    The Board stated that the psychologist reasoned that "if petitioner

18 would be released to the community, [his] risk would be minimal," **not** an

19 "unreasonable risk of danger to society if released from prison." (15 CCR

20 § 2402, subd.(a)).              Thus, the psychologist supports release.

21 Both Penal Code § 5011(b) and 15 CCR § 2236 states that the "Board shall

22 not require an admission of guilt to any crime" and "a prisoner refusal

23 to discuss the offense shall not be held against the prisoner." But  yet

24 the Board stated "that even though you are not required to discuss or admit

25 to the commitment offense, you still need to be able to demonstrate some

26 sort of insight when you come before this Panel, and you have not done that,"

27 as well as denying parole based on petitioner's  "need to develop some

28 sort of insight or at least a reasonable explanation before being considered

1   for parole." (Exhibit D page 52:5-9, 49:7-11, 45:20-22). Petitioner

2   exercised his <u>right not to discuss the commitment offense.</u> (2005 P.T. page

3   10:16-19). The Boards demand that petitioner must "develop some insight or

4   at least a reasonable explanation before being consider for parole" is in

5   direct violation of Penal Code 5011(b) and 15 CCR § 2236, and is therefore

6   not legally sufficient evidence to deny parole.

7

8       As to "parole plans," petitioner has a home to live in and a job in

9   Honduras. (2005 P.T. page 23:2-27, 24:1-7, 25:1-7). 15 CCR § 2402(d)(8)

10  states:

11          "Understanding and plans for the future. The prisoner
            has made realistic plans for release or has developed
12          marketable skills that can be put to use upon release."

13

14  In the instant case, petitioner has realistic plans for release, i.e., a

15  job and home to live in. Furthermore, 15 CCR § 2402(c) is strictly

16  "circumstances tending to show unsuitability," while 15 CCR § 2402(d) is

17  circumstances tending to show suitability."                Here, the Board

18  used a factor that should be used to find suitability for parole and turned

19  it around to find petitioner unsuitable. The Boards demand that petitioner

20  obtain a vocation despite being on the vocation waiting list since 2000,

21  after petitioner received his GED, is <u>not</u> a factor to be used as a finding

22  of unsuitability. (15 CCR § 2402(d);         See also 2005 P.T. page

23  28:7-27, 29:1-9).   Furthermore, no where in the statutory (Penal Code §

24  3041) nor regulatory provisions (Cal.Code Regs. tit 15 § 2402 et seq.),

25  does it state that the Board may find petitioner "unsuitable" because he has

26  insufficiently participated in institutional programming, including

27  vocational training and self-help programming. (2005 P.T. page 45:2-10,

28

1  48:19–26, 52:1–2). This is an illegal application of the law because no

2  law exists giving such authority to find petitioner unsuitable for parole.

3  (See, Cal.Cod.Regs. tit 15 § 2402 et seq.).              Therefore, this

4  is not "some evidence" to deny parole for the fourth time and is an illegal

5  application of law, viz., no law exists giving such authority to find

6  petitioner "unsuitable" for parole.

7      Secondly, parole suitability does not rest on the question of if a

8  parole applicant's "institutional programming, including vocational and

9  self-help" as stated by the Board are sufficient for the Board's demands.

10  The sole question on parole suitability is if a "prisoner currently would

11  pose an unreasonable risk of danger if released at this time." (In re Smith,

12  114 cal.App.4th 343, 370, 372, (2003), citing Cal.Code Regs. tit 15 § 2402

13  subdivision (a)); Dannenberg, supra, 34 Cal.4th at 1070 [Board must show

14  that the inmate poses a "continuing danger to the public."]; Shaputis, supra,

15  37 Cal.Rprt.3d at 334–335). Nothing in the record states the Board believes or even

16  suggests that petitioner would pose a "current" threat to society regarding

17  his institutional programming, including vocational training and self-help.

18      Even "assuming there may be some connection between [petitioner's] ...

19  limited vocational training, the Board did not established how this ...

20  makes him unsuitable as a threat to public safety." (In re Deluna, 126

21  Cal.App.4th 585,598, 24 Cal.Rptr.3d 643, 652 (2005)).

22      Thirdly, California Penal Code § 3041(b) comtemplates that a parole

23  denial may only be based if the Board

24          "Determines that the gravity of the current convicted
            offense or offenses, or the timing and gravity of current
25          or past convicted offenses, is such that consideration
            of the public safety requires a more lengthy period of
26          incarceration for this individual, and that a parole date,
            therefore, can-not be fixed at this meeting." (See, also,
27          McQuillion, supra, 306 F.3d at 901).

28  Nowhere does Penal Code § 3041 parole statute drafted by the legislature

1    state that "institutional programming , including vocational and self-help"

2    that do not measure up to the Board's demands authorize the Board to use

3    these factors as such for finding of unsuitability requiring a "more lengthy

4    period of incarceration."

5        California Code of Regulations, title 15 § 2402 et seq., itself does

6    not authorize "insufficient institutional programming, including vocational

7    training and self-help" that do not rise up to the Board's demands as a

8    basis of "unsuitability."                              But even if it did authorize

9    the Board to use those factors, it would provide no legal authority for

10   for doing so if they excuse the scope of the Board's power under statute.

11   (See, In re Stanley, 54 Cal.App.3d 1030, 1036 (1976) ["A cardinal principle

12   hold that administrative regulations must conform to the enabling law; that

13   an administrative agency has no discretion to exceed the authority conferred

14   upon it by statute."]).

15

16       California Penal Code § 3041(b) "creates a presumption that parole

17   release will be granted." (McQuillion, supra, 306 F.3d at 902), and creates

18   "an expectation that [petitioner] will be granted parole." (Rosenkrantz,

19   supra, 29 Cal.4th at 654). Nowhere in Penal Code § 3041 or the Board's

20   regulations does it even state or authorize a finding of "unsuitability"

21   when "institutional programming, vocational training, and self-help do not

22   meet up to the Board's demands. As such this does not trump petitioner's

23   "presumption that parole release will be granted" and his "expectation

24   that [he] will be granted parole" and is not "some evidence" under the

25   current state of applicable legal provisions for finding of unsuitability.

26       Furthermore, under the statutory and regulatory provision, the Board

27   must parole petitioner unless it finds he currently presents an unresonable

28   risk of danger to society if parole. (In re Smith, 114 Cal.App.4th 343,

1  370, 372 (2003), citing Cal. Code Regs. tit., 15 § 2402 (a); Dannenbeg,

2  supra, 34 Cal.4th at 1070 [evidence must show petitioner poses a "continous

3  danger to the public safety]; Shaputis, supra, 37 Cal.Rptr.3d at 334-335

4  [Board must show a "current" threat]).

5      There is no evidence in the record that shows petitioner "currently"

6  poses an unreasonable risk to society 15 years after the offense occurred.

7  The Board has pointed to no evidence showing a "nexus" between the crime

8  and petitioner's potential for violence 15 years later to show petitioner

9  "currently" poses an unreasonable risk to society if release. (See, In

10  re George Scott, supra, 34 Cal.Rptr.3d at 916, 926 [Board and Governor apply

11  a "nexus" rationale to the offense and conduct of the prisoner),

12

13      The Board held that petitioner has "not incur any disciplinaries while

14  within the institution," and stated, "We'd also like to commend you for

15  the multiple laudatory chronos in your file as well as for your continued

16  participation in AA/NA," obtaining a "GED," and acknowledged petitioner's

17  risk assessment was only "minimal." (2005 P.T. page 49:6-7, 45:17-18,

18  52:13-26, 53:21-22; See also, 1997 P.T. page 12:3-8, 14:7-27, 15:1-27, 16:23-

19  2001 P.T page 22:4, 22:10-27, 23:1-27, 24:1-8, 33:17-20, 2003 P.T. page 21:2-

20  4, 22:7-11, 22:16-27, 23:1-11, 23:24-25, 24:4-6, 26:1-2).

21

22      As stated above, the Board stated that the psychological report,

23  "Indicates that if [petitioner] were to be release to the community,

24  [petitioner's] risk would be minimal," not an "unreasonable risk of danger

25  to the society" as mandated by 15 CCR § 2402, subd, (a) (2005 P.T. page

26  49:5-7), 		as such, "findings" that petitioner needs "self-help"

27  is contrary to the records and supports petitioner's assertions that parole

28  hearing was not supported by "some evidence" and "was a sham." (See, In

1   re Ramirez, 94 Cal.App.4th 549, 571 (2001); In re Smith, 114 Cal.App.4th

2   343, 369, (2003); In re Scott, 119 Cal.App.4th 871, 896-897 (2004) [same];

3   Irons, supra, 358 F.Supp.2d at 948 [same]). The reliance on self-help

4   therapy is not supported by "some evidence" that contains "an indicia of

5   reliability" to deny parole denying petitioner due process of law. (See,

6   Superintendent v Hill, supra, 472 U.S. at 456; McQuillion, supra, 306 F.3d

7   at 904; Biggs, supra, 334 F.3d at 915; Scott, supra, 119 Cal.App.4th at 899).

8

9       Lastly, the "opposition to a finding of parole suitability" is not some

10  evidence to support a denial of parole as mentioned by the Board. (2005 P.T.

11  at page 51:1-4). While the Board may consider comments by the district

12  attorney or his representatives, (Penal Code § 3046), **nowhere** in the statutes

13  or regulations does it state that parole should be granted or denied based

14  on the position of the district attorney's office. The decision to grant

15  parole rests on the guidelines listed in 15 CCR § 2400 et. seq., and Penal

16  Code § 3041. (Rosenkrantz, supra, 29 Cal.4th at 658 [there must be "some

17  evidence in the record before the Board [that] supports the decision to

18  deny parole, **based upon the factors specified by statute and regulation**")

19

20

21                                CONCLUSION

22      Recital of the commitment offense and prior commitment offense behaviour

23  that occurred over 15 years ago, as done in petitioner's case for fourth

24  time, is not "some evidence" that contains "an indicia of reliability" that

25  petitioner is "CURRENTLY" would pose an unreasonable risk of danger if

26  release at this time." (Scott, supra, 119 Cal.App.4th at 899; Biggs, supra,

27  334,F.3d at 915-917; Smith, supra, 114 Cal.App.4th at 370, 372; Dannenberg,

28  supra, 34 Cal.4th at 1070; Shaputis, supra, 37 Cal.Rptr.3d at 334-335).

1       For the reasons stated herein, petitioner requests that this Court

2  grant review.

3

4  <u>VERIFICATION:</u> I the undersigned say that I am the petitioner in this action. I

5  declare under the penalty of perjury under thge laws of the State of California

6  that the foregoing is true and correct, except to those matters that are stated

7  on my information and belief, and as to those matters, I believe them to be true.

8

9

10

11  Date: 3-14-2007                Submitted by:

12

13

14                            Justo Escalante, In Pro Se

15

16

17

18

19

20

21

22

23

24

25

26

27                          30

28