# EXHIBIT C

28

1      CALIFORNIA BOARD OF PRISON TERMS

2                    D E C I S I O N

3          **PRESIDING COMMISSIONER GIAQUINTO:**  The time is

4      10:01 a.m.  We denied your parole.  The panel reviewed

5      all the information received from the public and

6      relied on the following circumstances in concluding

7      that the prisoner is not suitable for parole and would

8      pose an unreasonable risk of danger to society and a

9      threat to public safety if released from prison.  The

10     offense was carried out in a cruel and callous manner

11     with a disregard for the suffering of another in a

12     dispassionate, calculated manner.  These conclusions

13     are drawn from the Statement of Facts wherein the

14     prisoner and his crime partners attacked the victim

15     and the prisoner stabbed the victim in the eye which

16     resulted in permanent damage.  The prisoner had an

17     escalating pattern of criminal conduct which included

18     two offenses for transporting or selling illegal

19     drugs, and he had been -- he had had warrants before,

20     an arrest for bad checks, probation revocation, and he

21     also entered the United States illegally, and he had

22     been arrested for possession of a firearm; he had

23     experimented with cocaine, marijuana and alcohol.  The

24     prisoner has failed to develop a marketable skill that

25     could be put to use upon release and he's not

26     sufficiently participated in beneficial self-help and

27     **JUSTO ESCALANTE        E-91258        DECISION PAGE 1        5/1/97**

29

1   therapy programming.  The panel makes the following

2   findings, that therapy in a controlled setting is

3   needed but motivation and amenability are

4   questionable.  The prisoner should be commended for

5   having participated in an educational upgrading, ABE

6   II and III, and he's also participated in AA and NA.

7   However, these positive aspects of his behavior do not

8   outweigh the factors of unsuitability.

9       This denial is for two years.  The panel finds

10  it's not reasonable to expect that parole would be

11  granted during the following two years for the

12  following reasons.  Number one is the life offense

13  which was carried out in a cruel and callous manner,

14  specifically, the prisoner stabbed another person in

15  the eye during an altercation and as a result of that

16  the victim sustained serious injuries.  As a result a

17  longer period of observation and evaluation is

18  required before the Board should set a parole date.

19  In addition, the prisoner had also been involved in

20  narcotics trafficking and he had two other commitment

21  offenses for 11352 of the Health and Safety Code,

22  transporting and selling quantities of illegal

23  substances.  In addition, the prisoner has not

24  completed necessary programming which is essential to

25  his adjustment and needs additional time to gain such

26  programming.

27  **JUSTO ESCALANTE**     **E-91258**     **DECISION PAGE 2**     5/1/97

30

1          The panel recommends that the prisoner become

2    or remain disciplinary free, continue to upgrade

3    educationally and vocationally, participate in

4    available self-help and therapy programming.  And that

5    ends this hearing at 10:03 a.m.  Good luck to you.

6                          --oOo--

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    PAROLE DENIED TWO YEARS

26    EFFECTIVE DATE OF THIS DECISION_____JUL 0 7 1997_____

27    JUSTO ESCALANTE        E-91258        DECISION PAGE 3        5/1/97

# EXHIBIT D

43

1      **CALIFORNIA BOARD OF PRISON TERMS**

2               **D E C I S I O N**

3      **PRESIDING COMMISSIONER BORDONARO:**  Okay.  We're

4      back on the record in the case of Mr. Escalante.

5      Everyone who was previously in the room has

6      returned.  The Panel has reviewed all the

7      information received from the public and relied on

8      the following circumstances in unanimously

9      concluding that the inmate is not suitable for

10     parole and would pose an unreasonable risk of danger

11     to society or a threat to public safety if released

12     from prison.  The commitment offense was carried out

13     in an especially cruel manner.  It was carried out

14     in a manner which demonstrates an exceptional

15     callous disregard for human suffering.  And the

16     motive for the crime was inexplicable or very

17     trivial in relation to the offense.  These

18     conclusions are drawn from the Statement of Facts

19     wherein the inmate had gotten in an argument with

20     the victim, James Brooks.  James Brooks claims that

21     he had known the inmate prior to this.  And the

22     inmate pulled a knife.  Brooks retreated, however,

23     he slipped or tripped.  He went down.

24     Mr. Escalante's friends kicked him, hit him, and the

25     inmate stabbed him in the right eye.  The knife

26     caused permanent damage to the eye.  It did also

27     **JUSTO ESCALANTE  E-91258  DECISION PAGE 1  5/10/01**

44

1    penetrate the brain and there was an operation that
2    was required.  It is the inmate's contention that
3    this was a case of mistaken identity, that he is
4    innocent of the crime.  He was convicted by a jury,
5    however that he -- the first time he ever saw the
6    victim was while in court.  The inmate does have a
7    previous record.  He did fail to profit from
8    society's attempts to correct his criminality.
9    Those attempts included adult probation.  He has an
10   unstable social history and prior criminality which
11   includes drug use and an illegal entry into the
12   United States.  He has several arrests, however,
13   three convictions.  Two of those are controlled
14   substance for which he is serving additional
15   commitment offense on.  One of them is a misdemeanor
16   plus a firearm, which he said must be another case
17   of mistaken identity as it was not him.  However, he
18   does admit to the two controlled substance charges.
19   The prisoner institutionally has been programming.
20   However, he has failed to develop a marketable skill
21   that can be put to use upon release.  He's working
22   towards that.  He's not sufficiently participated in
23   beneficial self-help and therapy programming.  He
24   has had (inaudible) speak to in a minute.
25   Disciplinary is pretty good, but he does have three
26   128s, the last dated 6/19/1998.  We also note that
27   **JUSTO ESCALANTE   E-91258   DECISION PAGE 2   5/10/01**

45

1    the District Attorney of Los Angeles County is

2    opposed to a finding of parole suitability.  Also

3    the correctional counselor Walters writes that this

4    inmate would pose a moderate degree of risk.  The

5    Panel makes the following findings:  That the

6    prisoner does need therapy in order to face, discuss

7    and understand the causative factors that led to the

8    life crime, and to explore his culpability in the

9    life crime.  Until further progress is made he

10   continues to be an unpredictable threat to others.

11   He should be commended for his participation in AA

12   and NA and the 12 Steps, also for never having a

13   115.  He's definitely to be commended for that.  He

14   did complete his GED last year, 10/2000.  According

15   to the inmate he is on a waiting list for a

16   vocation.  And all those are very, very good signs

17   towards positive programming, which I will say that

18   he is doing.  However, these positive aspects of his

19   behavior do not yet outweigh the factors of

20   unsuitability.  In a separate decision the hearing

21   Panel finds it's not reasonable to expect that

22   parole would be granted at a hearing during the

23   following two years.  This is a two year denial.

24   I'll give you the reasons, the first one is the

25   commitment offense was carried out in an especially

26   cruel manner, specifically he did stab Mr. Brooks in

27   **JUSTO ESCALANTE   E-91258   DECISION PAGE 3   5/10/01**

46

1    the eye.  He destroyed the right eye and did

2    penetrate the brain.  This was after an argument

3    apparently over the inmate's desire to borrow

4    Mr. Brooks' car.  Mr. Brooks claims that the inmate

5    was a friend of his.  However, the inmate claims

6    that he was totally innocent of this and didn't even

7    know Mr. Brooks.  We also -- The prisoner had not

8    completed necessary programming which is essential

9    to his adjustment and needs time to gain that

10   programming.  He needs to more fully participate in

11   self-help and therapy programming, and he needs to

12   complete a vocation.  Because of these reasons a

13   longer period of observation is and evaluation is

14   required of the prisoner before the Board should

15   find the prisoner suitable for parole.  The Panel

16   recommends that the prisoner remain

17   disciplinary-free, that if available to upgrade

18   vocationally and also (inaudible) self-help and

19   therapy programming.  That will conclude the reading

20   of the decision.  Commissioner Thompson, any

21   comments?

22        **DEPUTY COMMISSIONER THOMPSON:**  None.

23        **PRESIDING COMMISSIONER BORDONARO:**  Commissioner

24   Granlund?

25        **COMMISSIONER GRANLUND:**  I wish you well.  Good

26   luck to you.  And actually I was happy to see how

27   **JUSTO ESCALANTE   E-91258   DECISION PAGE 4   5/10/01**

47

1   well you did on your English today.

2        INMATE ESCALANTE:  All right.

3        COMMISSIONER GRANLUND:  I think you can actually

4   put that on your list as not a deterrent, but

5   actually as an asset.  You're pretty fluent in both

6   languages, in two languages, and that will help you

7   get some employment.  That's a valuable skill to

8   have these days.

9        INMATE ESCALANTE:  Yes.

10        COMMISSIONER GRANLUND:  To be bilingual.

11        PRESIDING COMMISSIONER BORDONARO:  All right.

12   You're doing very well on your programming.  Keep

13   doing what you're doing.  Keep doing your self-help.

14   Get into a vocation.  Get a skill behind you, even

15   if you go to Honduras.  We're also concerned with

16   wherever you go.  So make sure -- I mean take

17   advantage of those opportunities because if you can

18   get into some computer vocation and get training in

19   that, and get sent back to Honduras, you can

20   probably land yourself, especially with your English

21   skills, an excellent job.  So I think you have some

22   opportunities before you and I hope that you do take

23   advantage of them.

24        INMATE ESCALANTE:  Yes.

25        PRESIDING COMMISSIONER BORDONARO:  And then we

26   will see you and hopefully we're caught up and it

27   JUSTO ESCALANTE  E-91258  DECISION PAGE 5  5/10/01

48

1    truly only a two year denial.  We're working on that

2    and hopefully that will be accomplished.  With that

3    I will adjourn the hearing at 12:02.  Good luck.

4        **INMATE ESCALANTE:**  Thank you.

5                        --o0o--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    **PAROLE DENIED TWO YEARS**

26    **EFFECTIVE DATE OF DECISION**_____JUN 0 4 2001_____

27    **JUSTO ESCALANTE  E-91258  DECISION PAGE 6  5/10/01**

# EXHIBIT E

44

1    **CALIFORNIA BOARD OF PRISON TERMS**

2    **D E C I S I O N**

3    **DEPUTY COMMISSIONER HARMON:**  You're on the

4    record.

5    **PRESIDING COMMISSIONER MOORE:**  Thank you.

6    Let the record show that all interested parties

7    have returned to the room.  Jose [sic] Escalante,

8    CDC number E, as in Edward, 91258.  The Panel has

9    reviewed all information received from the public

10   and relied on the following circumstances in

11   concluding that the prisoner is not suitable for

12   parole and would pose an unreasonable risk of

13   danger to society if released to the public at

14   this time.  Timing and the gravity of the offense

15   was paramount.  The offense was carried out in an

16   especially cruel, vicious manner.  The offense was

17   carried out in a manner which demonstrates an

18   exceptionally coldhearted disregard for human

19   suffering wherein the prisoner had gotten into an

20   argument with the victim, James Brooks.  The

21   victim, Mr. Brooks, claims that he's known the

22   prisoner prior to this attack.  And the prisoner

23   pulled a knife.  The -- Mr. Brooks retreated;

24   however, he slipped and tripped.  He went down and

25   Mr. Escalante's friends kicked him --  kicked him

26   and the prisoner stabbed him in the right eye.

27   **JUSTO ESCALANTE  E-91258  DECISION PAGE 1  5/27/03**

1    The knife caused permanent damage to his eye,

2    penetrated the brain, and there was an operation

3    that was required.  It is also the prisoner's

4    contention that this was a case of mistaken

5    identity, that he is innocent of the crime.  He

6    was convicted by a jury, however, and the first

7    time that the prisoner ever laid eyes on the

8    victim was in court.  These conclusions were drawn

9    from the Statement of Facts wherein the prisoner

10   caused the demise of Mr. James -- not the demise,

11   strike that, caused the injury to Mr. James

12   Brooks.  Previous record:  The prisoner has an

13   escalating pattern of criminal conduct.  He has

14   failed to profit from society's previous attempts

15   to correct his criminality.  Such attempts

16   included probation.  The prisoner has an unstable

17   social history and prior criminality which

18   includes drug use, illegal entry into the United

19   States.  There were several arrests, three

20   convictions.  Two of those convictions were for

21   controlled substance which he was -- which he is

22   serving additional time for the committing offense

23   on a misdemeanor for a firearm -- possession of a

24   firearm, excuse me, which the prisoner again says

25   that it's a case of mistaken identity, it's not

26   him.  He admits to the substance abuse charges

27   **JUSTO ESCALANTE  E-91258  DECISION PAGE 2  5/27/03**

1   however.  Institutional behavior:  The prisoner

2   has programmed in a limited manner while

3   incarcerated.  He's failed to develop a marketable

4   skill that could be put to use upon release.  He's

5   failed to upgrade vocationally as previously

6   recommended by the Board, as well as he's not

7   sufficiently participated in beneficial self-help

8   and therapy programming at this time.  The

9   psychosocial report was adequate.  Parole plans

10  was adequate as he has a U.S. INS hold and will

11  probably be deported.  Parole plans -- Strike

12  that.  The 3042 notices responses:  The Hearing

13  Panel notes responses to 3042 notices indicate

14  opposition to a finding of suitability,

15  specifically the District Attorney's office was

16  present today in opposition to a finding of

17  suitability, as well as the other information

18  bearing on his suitability would be that the

19  prisoner's counselor, a CC-I J. Harris,

20  H-A-R-R-I-S, wrote in the current Board report of

21  the prisoner that the prisoner would pose a

22  moderate degree of threat if released to the

23  public at this time.  Remarks:  The Panel makes

24  the following findings:  That the prisoner still

25  needs therapy in order to face, discuss,

26  understand and cope with stress in a

27  **JUSTO ESCALANTE  E-91258  DECISION PAGE 3  5/27/03**

1  nondestructive manner.  Until progress is made,

2  the prisoner continues to be unpredictable and a

3  threat to others.  The prisoner's gains are recent

4  and he must demonstrate the ability to maintain

5  these gains over an extended period of time.

6  Nevertheless, the prisoner should be commended for

7  taking self-help groups in terms of Sexually

8  Transmitted Diseases.  He recently completed the

9  Impact program, as well as he's participated in

10  NA.  He's on the waiting list currently for

11  computers.  He had positive work reports as a

12  porter, as well as he in the past, 2000 I believe

13  was the actual date, completed his GED.

14  Mr. Escalante, this is a two-year denial.  And in

15  a separate decision, the Hearing Panel finds that

16  the prisoner -- it is not reasonable to expect

17  that the prisoner would be granted parole in a

18  hearing during the next -- the following two

19  years.  The specific reasons for our findings are

20  as follows:  That we mentioned earlier that the

21  prisoner committed the offense in an especially

22  cruel and vicious manner.  The victim, Mr. James

23  Brooks -- You had gotten into an argument with the

24  victim.  The victim claims that he had known you

25  prior to this and that you pulled a knife on the

26  victim.  As well, as the victim was trying to

27  **JUSTO ESCALANTE  E-91258  DECISION PAGE 4  5/27/03**

1    retreat, however, slipped and -- or tripped and
2    fell and went down, and Mr. Escalante and his
3    friends kicked him and then Mr. Escalante stabbed
4    him in the right eye with a knife that caused
5    severe damage to the victim's eye, penetrated the
6    brain, and there was surgery -- an operation that
7    required for the victim.  It is the inmate's
8    contention, however, that this is a case of
9    mistaken identity in that he is an innocent man,
10   as well as he was convicted by a jury trial and
11   states that day was the first time that he'd ever
12   laid eyes on the victim, Mr. Brooks.  The offense
13   was carried out in a dispassionate manner.  The
14   offense was carried out in a manner which
15   demonstrates an exceptionally coldhearted
16   disregard for human suffering.  The motive for the
17   crime was inexplicable or very trivial in
18   relationship.  The prisoner has an extensive
19   history of criminality, and we talked about that
20   earlier in terms of arrests and convictions,
21   multiple arrests and convictions for -- two for
22   controlled substance and one for a possession -- a
23   misdemeanor possession of a firearm.  Let's see.
24   The prisoner has a history of unstable or
25   tumultuous relationships with others in terms of
26   coming into the United States illegally.  The
27   **JUSTO ESCALANTE  E-91258  DECISION PAGE 5  5/27/03**

1    recommendations to you, Mr. Escalante, are to

2    remain disciplinary-free, if it's available to you

3    to upgrade vocationally and educationally, as well

4    as if it's available to you to participate in

5    beneficial self-help programming to better

6    understand the causative factors of why you're

7    before us here today for the atrocity on

8    Mr. Brooks.  However, the prisoner does still

9    contend that he is -- it is misidentification and

10   he is not the perpetrator of this crime.  This

11   will conclude the reading of our decision today,

12   Mr. Escalante.  Good luck to you, sir.  Continue

13   on your path.  The time is approximately 1710

14   hours.  Commissioner, any comments to the

15   prisoner?

16       **DEPUTY COMMISSIONER HARMON:**  Nothing more,

17   Sir, that hasn't been said.  I just want to make

18   sure that you understand that in the area of self-

19   help group if you could maybe get yourself more

20   involved in programs, get --

21       **INMATE ESCALANTE:**  There aren't any other --

22       **DEPUTY COMMISSIONER HARMON:**  -- the --

23       **INMATE ESCALANTE:**  We have here just NA and

24   AA meeting.

25       **DEPUTY COMMISSIONER HARMON:**  Okay.

26       **INMATE ESCALANTE:**  And (inaudible) --

27   **JUSTO ESCALANTE  E-91258  DECISION PAGE 6  5/27/03**

1      **DEPUTY COMMISSIONER HARMON:**  What I was

2   going to suggest then maybe a self-study, you

3   know, like using the library and maybe look at

4   books and read books maybe concerning human

5   behavior, maybe how it applies to you so that you

6   could (inaudible) that kind of stuff.  If the

7   programs aren't available, it shows that you're --

8      **INMATE ESCALANTE:**  I'll go to the library

9   and see if they have something.

10     **DEPUTY COMMISSIONER HARMON:**  Okay.  Seeing

11  if you're aggressively, you know, pursuing that

12  kind of knowledge would be very helpful.  But

13  other than that I wish you luck, sir.

14     **INMATE ESCALANTE:**  Okay.

15     **DEPUTY COMMISSIONER HARMON:**  And here's your

16  copy.  Here we go.  Thank you.

17                    --o0o--

18

19

20

21

22

23

24

25  **PAROLE DENIED TWO YEARS**

26  **FINAL DATE OF DECISION**_____**AUG 2 5 2003**_____

27  **JUSTO ESCALANTE   E-91258   DECISION PAGE 7   5/27/03**

# EXHIBIT  F

*C-file copy*

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
MAY 2005 CALENDAR

ESCALANTE, JUSTO                                          E-91258

I.    **COMMITMENT FACTORS:**

A.    **Life Crime:** PC 205 Aggravated Mayhem and PC 12022(B) Use of a Deadly
Weapon (Knife); Los Angeles County Case #PA004647, Sentenced to Life, plus 1
year. MEPD: 5/30/98. Victim: James Brooks, age unknown.

1.    **Summary of Crime:** On September 10, 1990, at approximately 4:20
a.m., Victim James Brooks got into an argument with the prisoner, Justo
Escalante. Escalante wanted to borrow the victim's car, but the victim
refused. Escalante and some of his friends started hitting and kicking the
victim. While the victim was down, Escalante struck the victim in the eye
with a knife penetrating the brain. Escalante was arrested on 9/26/90
while in custody on another matter.

The victim, James Brooks, told the Probation Officer that on the night of
the attack, his girlfriend was arguing with Escalante. Brooks stated that
when he approached the two, Escalante pulled a knife. Brooks retreated
however he slipped in the mud. Escalante's friends kicked and hit victim
Brooks, and Escalante stabbed the victim in the right eye. The victim says
he blacked out and did not remember anything until approximately six
days later. The victim further stated that he used to be a friend of
Escalante's, and did not understand the unprovoked attack. The victim
suffered permanent loss of sight in his right eye and a frontal lobotomy
was performed resulting in permanent brain damage. The victim's
medical bills were in excess of $177,000. The victim stated that he
wanted Escalante to pay for what he did. There are no crime partners
named in the Probation Officer's report. Source documents cited: POR,
pages 2,3 and 8.

2.    **Prisoner's Version:** Inmate Escalante stated that he is innocent of this
crime, noting that he did not plead guilty, but rather that he was convicted
by a jury trial. Escalante claims that he did not commit this crime, nor was
he in the area when this crime occurred. Escalante stated that he knew the
area where the crime had occurred, and had been in this area before. But,
according to Escalante, on that particular night he was in an apartment

SENT TO INMATE ON

MAR 1 7 2005

Exhibit F

LIFE PRISONER EVALUATI~~ .PORT                                    2
PAROLE CONSIDERATION HEARING
MAY 2005 CALENDAR

building with a friend far away from the crime scene. Escalante points out
that it would have been difficult for him to have committed this crime,
because the victim was a large adult male, and Escalante was much
smaller than the victim. Escalante stated that the first time he ever saw the
victim was in the courtroom. He stated that he did not know the victim,
denying the victim's statement that they were once "friends." Escalante
states that he did not speak English at the time of his arrest, and argues
how could he have been "friends" with the English speaking victim.
Escalante pointed out the fact that if he was guilty of this crime, he would
have fled the jurisdiction and not remained in the same area. Escalante
also stated that he never had a knife.

3. **Aggravating/Mitigating Circumstances**:

   a. **Aggravating Factors**:

      1. The victim was particularly vulnerable.
      2. The prisoner had opportunity to cease but instead continued
         with the crime.

   b. **Mitigating Factors**: None.

B. **Multiple Crime(s)**: None.

   1. **Summary of Crime**: None.

   2. **Prisoner's Version**: None.


II. **PRECONVICTION FACTORS**:

A. **Juvenile Record**: Escalante has no juvenile arrest record on file.

B. **Adult Convictions and Arrests**:

   03/16/88:   Arrested by the Los Angeles Police Department (LAPD) for
               Transport/Sell Narcotic Controlled Substance: Convicted of a
               felony and sentenced to 36 months probation, 180 days in jail, fine,
               and a suspended prison sentence.

   04/14/89:   Arrested by the LAPD for Murder (PC 187); released due to Lack
               of Corpus.

   09/16/89:   Arrested by the LAPD for Felon/Addict/Etc. Possession of
               Firearm; convicted of a misdemeanor and sentenced to
               probation/jail.


ESCALANTE, JUSTO          E91258          CTF-SOLEDAD        MAY/2005

LIFE PRISONER EVALUAT⁀ ⁀ .PORT
PAROLE CONSIDERATION HEARING
MAY 2005 CALENDAR

| | |
|---|---|
| 03/13/90: | Arrested by the LAPD for Grand Theft Vehicle; released due to lack of sufficient evidence. |
| 03/21/90: | Arrested by the LAPD for Possession Narcotic Controlled Substance; warrant issued for Possession Bad Check/Money Order. No disposition noted. |
| 09/14/90: | Arrested by the LAPD for Transportation/Sale Narcotic Controlled Substance. On 9/16/90, a warrant was issued by the LAPD. |
| 09/27/90: | Arrested by the LAPD for Attempted Murder PC 187. |
| 12/27/90: | Probation revoked and Escalante was sentenced to 5 years in state prison. |
| 04/04/91: | Convicted in Los Angeles Superior Court for Assault with Deadly Weapon or Great Bodily Injury/Not Firearm and Aggravated Mayhem with the Use of a Weapon. He was sentenced to Life, plus one (1) year. |
| 04/18/91: | Escalante was received into the California Department of Corrections (CDC) for PC 205 Aggravated Mayhem with Use of a Weapon. (Life, plus one year.) and two (2) non-controlling offenses of Transportation/Sale of Controlled Substance (5 years). |

Source documents: POR, page 4, and the CII pages 2-4.


C.    **Personal Factors:** Escalante was one of five (5) children born to Debra and Jose Escalante in Honduras. Escalante's father and two brothers still reside in Honduras. He came to the United States from Honduras in 1984. He has two sisters, Judy and Lillian living in Southern California. His mother, Debra Escalante, passed away in 1988. Escalante has never been married. Escalante claims he attended school in Honduras until the age of 13. He has never served in the Armed Forces. Escalante claims that he began drinking alcohol at the age of 16 and at the time of his arrest he was consuming approximately two six-packs weekly. He claims he began smoking marijuana at the age of 19, and at the time of his arrest he was smoking approximately two joints weekly. He claims he began snorting cocaine at the age of 26 and at the time of his arrest he was spending approximately $100.00 weekly to support his habit. The POR indicates that Escalante supported himself through day work either in construction or pool cleaning. He made about $50 to $60 a day when work was available. There is no gang affiliation noted. There is no history of sexual deviation or mental disorder. Escalante is currently 37 years old. There are no medical problems noted at this time. Source documents cited: The POR, pages 5,6, and 7. The Institutional Staff Recommendation Summary (ISRS), pages 1 and 2 and the Social Factors Sheet.

LIFE PRISONER EVALUAT⋯ ⋯ORT
PAROLE CONSIDERATION HEARING
MAY 2005 CALENDAR

## III.   POSTCONVICTION FACTORS:

A.   **Special Programming/Accommodations:** None.

B.   **Custody History:** Escalante has remained at CTF since his arrival on 7/8/98. He has maintained steady assignments, Medium A custody and has "0" behavioral points.

C.   **Therapy and Self-Help Activities:** He has continued Alcoholic.Anonymous group attendance.

D.   **Disciplinary History:** He has received no CDC 115's and three CDC 128A's, the last one being in 1998.

E.   **Other:** Escalante attended a Subsequent BPT Hearing on 5/27/03 wherein the board denied parole for two years, requested a new psych report and recommended to remain disciplinary free, upgrade vocation, education and participate in self help.

## IV.   FUTURE PLANS:

A.   **Residence:** Escalante realizes he will be deported and as such, will reside with his brother, David Escalante of Coliel Pedregal De San Jose, Ladolquieida, Blaque 14 Casa 15. Camayguela, Honduras. He also has residence option with his cousin, Olga M. Lainez Ballesteros of Cal. San Jose De La Vega, Bloque 32 Casa 1505, Comuyguela, Honduras, CA.

B.   **Employment:** Escalante plans to work as an electrician or plumber. He states he has prior work experience in both fields.

C.   **Assessment:** If Escalante can restrain from any drug association and adequate letters of support arrive, he should succeed upon release.

## V.   USINS STATUS: Active USINS #A71621282 from Honduras.

## VI.   SUMMARY:

A.   Prior to release the prisoner could benefit from: remaining disciplinary free and continuing Alcoholics Anonymous attendance.

LIFE PRISONER EVALUAT⁀ ⁀ PORT                                        5
PAROLE CONSIDERATION ⊓EARING
MAY 2005 CALENDAR

B.    This report is based upon a one hour interview on 2/1/05 and a complete three
      hour review of the Central File.

C.    Escalante was afforded an opportunity to examine his Central File on 2/1/05 per
      CDC 128B dated 2/1/05, reflecting that he declined the review.

D.    No accommodation was required per the Armstrong vs. Davis BPT Parole
      Proceedings Remedial Plan (ARP) for effective communication.

LIFE PRISONER EVALUAT___ _PORT
PAROLE CONSIDERATION HEARING
MAY 2005 CALENDAR

6

_S. Martinez_     3·16·05
S. Martinez           Date
Correctional Counselor I


_J. Guerra FC_   3-16-05
J. Soares           Date
Correctional Counselor II


_I. Guerra FC_   3-16-05
I. Guerra          Date
Facility Captain


_D. S. Levorse CdPR_   3-17-05
D. S. Levorse         Date
Classification and Parole Representative


ESCALANTE, JUSTO      E91258           CTF-SOLEDAD      **MAY/2005**

# EXHIBIT  G

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

COURT COPY

### PROBATION OFFICER'S REPORT

| DEFENDANT'S NAME(S) | | | | REPORT SEQUENCE NO. 1 | |
|---|---|---|---|---|---|
| JOSE AMBROSIO ESCALANTE | | | COURT NV-F | JUDGE SCHWAB | COURT CASE NO. PA004647 |

| ADDRESS (PRESENT/RELEASE) | | | | | |
|---|---|---|---|---|---|
| 9215 SEPULVEDA, NO. 38, SEPULVEDA, CA 91343 | | | HEARING DATE 12-5-90 | DEFENSE ATTY. P.D. | PROSECUTOR D.A. |

| BIRTHDATE 3-26-63 | AGE 27 | SEX MALE | RACE HISPANIC | DPO LEMOS | AREA OFFICE ESFV | PHONE NO. 374-2054 |
|---|---|---|---|---|---|---|

| CITIZENSHIP STATUS UNDOCUMENTED ALIEN | DRIVER'S LICENSE/EXP. DATE C5340135 | |
|---|---|---|

| PROBATION NO. X-211382 | CII NO. A08735712 | BOOKING NO. 2190024 |
|---|---|---|

TYPE REPORT
___ Probation and sentence
 X  Pre-Conviction (131.3 CCP)
___ Post sentence
___ Diversion (Specify) _____

| DAYS IN JAIL THIS CASE | CUSTODY STATUS/RELEASE DATE | |
|---|---|---|
| ☐ ESTIMATED  XX VERIFIED  70 | NCCF | |

## PRESENT OFFENSE: LEGAL HISTORY

CHARGED with the crimes of (INCLUDE PRIORS, ENHANCEMENTS OR SPECIAL CIRCUMSTANCES)

COUNT I: 245(A)(1) PC (ASSAULT GREAT BODILY INJURY WITH DEADLY WEAPON),
PLUS PC 12022.7.
COUNT II: 205 PC (AGGRAVATED MAYHEM)
PLUS PC 12022(B).

CONVICTED of the crimes of (INCLUDE PRIORS, ENHANCEMENTS OR SPECIAL CIRCUMSTANCES)

N/A - PRE-PLEA

| CONVICTED BY N/A | DATE OF CONVICTION/REFERRAL 10-30-90 | COUNT(S) CONTINUED TO P & S FOR DISPOSITION I AND II |
|---|---|---|

| PROPOSED PLEA AGREEMENT N/A | |
|---|---|

| DATE(S) OF OFFENSE 9-10-90 | SOURCES OF INFORMATION D.A. FILE |
|---|---|

TIME(S) 4:20 A.M.

DEFENDANT:  ☐ N/A
(SEE PRIOR RECORD SECTION)   XX ON PROBATION   ☐ SENTENCED TO STATE PRISON/COUNTY JAIL ON CASE ___
☐ ON PAROLE-REMAINING TIME ___   ☐ PENDING PROBATION VIOLATION   ☐ PENDING NEW CASE

HOLD/WARRANTS  XX YES  ☐ NO

## RECOMMENDATION:

☐ PROBATION   ☒ DENIAL
  ☐ COUNTY JAIL
  ☒ STATE PRISON

☐ DIAGNOSTIC STUDY
  ☐ 707.2 WIC
  ☐ 1203.03 PC

☐ CYA   ☐ OTHER _____

76P725B-Prob 19SC (Rev 6/85) 6/87

*Exhibit G*

**PRESENT OFFENSE:**
**(CONTINUED)**

SOURCES OF INFORMATION (this page)

D.A. FILE

| ARREST DATE | TIME | BOOKED AS | OFFENSE | LOCATION OF ARREST | ARRESTING AGENCY |
|---|---|---|---|---|---|
| 9-26-90 | 1100 | ESCALANTE, JOSE AMBROSIO | 187(A) PC (ATTEMPTED MURDER) | 10250 ETIWANDA | LAPD |

| CO-DEFENDANT(S) | CASE NO. | DISPOSITION |
|---|---|---|
| N/A | | |

ELEMENTS AND RELEVANT CIRCUMSTANCES OF THE OFFENSE:

ON SEPTEMBER 10, 1990, AT APPROXIMATELY 4:20 A.M., VICTIM JAMES BROOKS GOT INTO AN ARGUMENT WITH THE DEFENDANT. THE DEFENDANT WANTED TO BORROW HIS CAR BUT THE VICTIM REFUSED. THE DEFENDANT AND SOME OF HIS FRIENDS STARTED HITTING AND KICKING THE VICTIM. WHILE THE VICTIM WAS DOWN, THE DEFENDANT STRUCK THE VICTIM IN THE EYE WITH A KNIFE PENETRATING THE BRAIN.

THE DEFENDANT WAS ARRESTED ON SEPTEMBER 26, 1990, WHILE IN CUSTODY ON ANOTHER MATTER.

-2-   (ESCALANTE)

76P725B—Prob. 19SC (Rev. 5/85)  8/87

**VICTIM:**

SOURCES OF INFORMATION (this page)
VICTIM

| NAME | COUNT(S) |
|---|---|
| JAMES BROOKS | I, II |

INJURY: PROPERTY LOSS (TYPE / COST / ETC.)

PERMANENT LOSS OF SIGHT TO RIGHT EYE.
FRONTAL LOBOTOMY PERFORMED.
MEDICAL BILLS IN EXCESS OF $177,000.

INSURANCE COVERAGE

NONE

| LOSS: [X] YES [ ] NO | ESTIMATED LOSS $177,000 | RESTITUTION ALREADY MADE NONE | APPLIED FOR VICTIM RESTITUTION FUND [ ] UNK [ ] YES [X] NO |
|---|---|---|---|

**VICTIM STATEMENT:**

VICTIM BROOKS TOLD THE PROBATION OFFICER THAT ON THE NIGHT OF THE ATTACK, HIS GIRLFRIEND WAS ARGUING WITH THE DEFENDANT. MR. BROOKS SAYS THAT WHEN HE APPROACHED THE TWO, THE DEFENDANT PULLED A KNIFE AND THE VICTIM TRIED TO ESCAPE. WHEN HE SLIPPED IN THE MUD, THE DEFENDANT'S FRIENDS KICKED AND HIT VICTIM BROOKS AND THE DEFENDANT STABBED HIM IN THE RIGHT EYE. MR. BROOKS SAYS THAT HE BLACKED OUT AND DID NOT REMEMBER ANYTHING UNTIL APPROXIMATELY SIX DAYS LATER.

VICTIM BROOKS FURTHER STATED THAT HE USED TO BE A FRIEND OF THE DEFENDANT AND DID NOT UNDERSTAND THE UNPROVOKED ATTACK. HE WANTS THE DEFENDANT TO PAY FOR WHAT HE DID.

| RESTITUTION | TOTAL NUMBER OF VICTIMS ONE | ESTIMATED LOSS TO ALL VICTIMS $177,000 | VICTIM(S) NOTIFIED OF P&S HEARING [X] YES [ ] NO 1191.3(B) |
|---|---|---|---|
| DOES DEFENDANT HAVE INSURANCE TO COVER RESTITUTION. [ ] YES [X] NO | | INSURANCE COMPANY NAME/ADDRESS/TELEPHONE NO. | |

-3-  (ESCALANTE)

VICTIM LIST CONTINUES NEXT PAGE

GP7258-Prob. 19SC (Rev 6/85) 8/87

Exhibit G

PRIOR RECORD:

SOURCES OF INFORMATION (this page)
CLETS (9/28/90), PROBATION RECORDS.

AKA'S:   JOSE AMBROSIO ESCALANTE, DAVID BETANCUR, JUAN CARLOS GONZALES, JUAN CARLOS ESCALANTE

JUVENILE HISTORY:

NONE.

INFORMATION IS NOT AVAILABLE THROUGH PROBATION DEPARTMENT INQUIRY FIVE YEARS AFTER JUVENILE PROBATION ACTIVITY IS TERMINATED, AND DEFENDANT ADMITS NO RECORD.

ADULT HISTORY:

3/16/88        LAPD - 11352 H&S (TRANSPORT/SALES NARCOTIC CONTROLLED SUBSTANCE). 6/21/88 CASE #A820178, VAN NUYS SUPERIOR COURT, CONVICTED OF SAME, A FELONY. SENTENCED TO 36 MONTHS PROBATION, 180 DAYS COUNTY JAIL. 3/9/90, PROBATION REVOKED BENCH WARRANT ISSUED.

(DEFENDANT SAYS THAT HE SOLD TWENTY DOLLARS WORTH OF COCAINE TO AN UNDERCOVER POLICE OFFICER.)

9/16/89        LAPD - 12021(A) PC (FELON/ADDICT/ETC. POSSESS FIREARM). 9/19/89, CASE #89F10367, SAN FERNANDO MUNI COURT, CONVICTED OF A MISDEMEANOR.

(THE DEFENDANT DENIES THAT HE WAS ARRESTED FOR BEING IN POSSESSION OF A FIREARM.)

9-14-90        LAPD - 11352 H&S (SALE OF A CONTROLLED SUBSTANCE). 10-11-90 CASE NUMBER LA005012, CALLED FOR A PRE-PRE-CONVICTION HEARING, DEPARTMENT NORTHWEST-S. CASE CONTINUED TO 12-7-90 FOR TRIAL.

(ACCORDING TO PROBATION RECORDS, THE DEFENDANT WAS ARRESTED FOR SELLING $30 WORTH OF ROCK COCAINE TO UNDERCOVER OFFICERS.)

9-14-90.

-4- (ESCALANTE)

76P72SB-Prob. 19SC (Rev. 6/85)  8/87

1  **PERSONAL HISTORY:**

SOURCES OF INFORMATION (this page)
DEFENDANT

3  SUBSTANCE ABUSE:

4  _____ No record, indication, or admission of alcohol or controlled substance abuse.

5  _____ Occasional social or experimental use of _____ acknowledged.

6  __X__ See below:  Indication / admission of significant substance abuse problem.

7  Referred to Narcotic Evaluator  ☐ Yes  ☒ No

_____ Narcotic Evaluator's report attached

9  Additional information

10  THE DEFENDANT SAYS THAT HE HAS BEEN SMOKING ROCK COCAINE ON A WEEKLY BASIS FOR THE LAST TWO YEARS.  HE SAYS THAT FROM THE AGE OF 23 TO ABOUT THE AGE OF 25, HE SMOKED MARIJUANA SEVERAL TIMES A WEEK ON A REGULAR BASIS.  CURRENTLY, THE DEFENDANT SAYS HE DRINKS TWO TO THREE BEERS A DAY AND A SIX-PACK OF BEER ON THE WEEKEND.

26  PHYSICAL / MENTAL / EMOTIONAL HEALTH:

27  __X__ No indication or claim of significant physical/mental/emotional health problem.

28  _____ See below:  Indication / claim of significant physical/mental/emotional health problem.

-5-  (ESCALANTE)
7GP725B—Prob. 19SC (Rev 6/85)  8-87

PERSONAL HISTORY:
(CONTINUED)

SOURCES OF INFORMATION (this page)
DEFENDANT

| RESIDENCE | TYPE RESIDENCE | LENGTH OF OCCUPANCY | ~~MONTHGAGE~~/RENT | RESIDES WITH/RELATIONSHIP |
|---|---|---|---|---|
| | APARTMENT | 3 MONTHS | $125 MO. | FRIEND |
| RESIDENTIAL STABILITY LAST FIVE YEARS | CAME TO STATE / FROM | | CAME TO COUNTY / FROM | |
| FAIR | HONDURAS / 1984 | | HONDURAS / 1984 | |

Additional information

| MARRIAGE / PARENTHOOD | MARITAL STATUS | NAME OF SPOUSE / PRESENT COHABITANT |
|---|---|---|
| | SINGLE | |
| LENGTH OF UNION | NO. OF CHILDREN THIS UNION | SUPPORTED BY |
| NO. PRIOR ~~XXXXXXXXXX~~ COHABITATIONS | NO. OF CHILDREN THESE UNIONS | SUPPORTED BY |
| ONE | ONE | CHILD'S MOTHER |
| NO. OF OTHER CHILDREN | SUPPORTED BY | |

Additional information

FORMAL EDUCATION:
THE DEFENDANT HAS A HIGH SCHOOL EDUCATION AND CLAIMS HE COMPLETED ONE YEAR AT A JUNIOR COLLEGE IN THE LOS ANGELES AREA.

-6-  (ESCALANTE)

76P725B—Prob. 19SC (Rev. 6/85)  8/87

**PERSONAL HISTORY:**
**(CONTINUED)**

SOURCES OF INFORMATION (this page)

DEFENDANT

| EMPLOYMENT STATUS | ☐ EMPLOYED<br>☒ UNEMPLOYED | REFERRED TO WORK FURLOUGH<br>☐ YES  ☒ NO | EMPLOYER AWARE OF PRESENT OFFENSE<br>☒ N/A   ☐ YES   ☐ NO |
|---|---|---|---|
| PRESENT/LAST EMPLOYER / ADDRESS / PHONE<br>N/A | OCCUPATION | PERIOD OF EMPLOYMENT | GROSS MONTHLY WAGE |
| ☐ VERIFIED     ☐ UNVERIFIED | EMPLOYMENT STABILITY<br>LAST 5 YEARS<br>UNABLE TO VERIFY | TYPES OF PREVIOUS EMPLOYMENT<br>CONSTRUCTION,<br>POOL CLEANING | |

Additional information

THE DEFENDANT SAYS HE SUPPORTS HIMSELF THROUGH DAY WORK

EITHER IN CONSTRUCTION OR POOL CLEANING.  HE MAKES ABOUT $50 TO $60

A DAY WHEN WORK IS AVAILABLE.

| FINANCIAL STATUS | INCOME STABILITY<br>POOR | NET MONTHLY INCOME<br>N/A | |
|---|---|---|---|
| PRIMARY INCOME SOURCE | SECONDARY INCOME SOURCE(S) | EST. TOTAL ASSETS | EST. TOTAL LIABILITIES |
| MAJOR ASSETS / ESTIMATED VALUE | | | |
| MAJOR LIABILITIES / ESTIMATED AMOUNT (MONTHLY) | | | |

Additional information

GANG ACTIVITY    ☐ YES   ☒ NO          Name of Gang _____

-7-   (ESCALANTE)

76P725B-Prob 19SC (Rev 6/85)  8/87

DEFENDANT'S STATEMENT:

      DEFENDANT CHOSE NOT TO MAKE A STATEMENT TO THE PROBATION OFFICER REGARDING THE PRESENT OFFENSE.

INTERESTED PARTIES:

      DR. BENEDON, WHO WAS ON DUTY IN THE EMERGENCY ROOM AT HOLY CROSS HOSPITAL, THE NIGHT VICTIM BROOKS WAS INITIALLY TREATED, HAD THE FOLLOWING TO SAY:

      DR. BENEDON REPORTS THAT VICTIM BROOKS SUSTAINED A RATHER SEVERE AND COMPLICATED INJURY. HE SAYS THE VICTIM WAS STABBED WITH ENOUGH FORCE TO CAUSE TRAUMA TO THE EYE AND THE BRAIN, RESULTING IN BOTH LOSS OF EYESIGHT AND PERMANENT BRAIN DAMAGE.

      PROBATION OFFICER SENT A FORM LETTER TO THE IMMIGRATION AND NATURALIZATION SERVICE ADVISING THEM OF THE DEFENDANT'S STATUS.

EVALUATION:

      THE DEFENDANT'S BEHAVIOR IN THE PRESENT MATTER CAN ONLY BE DESCRIBED AS EXTREMELY VIOLENT AND SUB-HUMAN. IT SEEMS HE WAS NOT CONTENT WITH SIMPLY STABBING THE VICTIM, RATHER THE DEFENDANT WAS INTENT UPON DOING HIM SERIOUS HARM. UNFORTUNATELY FOR THE VICTIM, THE DEFENDANT SUCCEEDED IN MAIMING HIM FOR LIFE. THERE IS ABSOLUTELY NOTHING ABOUT THIS MATTER THAT JUSTIFIES SUCH A BRUTAL ATTACK.

-8- (ESCALANTE)

76C692G — PROB. 5A

1    GIVEN THE EXTREME GRAVITY OF THE OFFENSE, THE

2  DEFENDANT IS NEITHER ELIGIBLE NOR IS HE VIEWED AS SUITABLE FOR

3  PROBATION OF ANY KIND.  IF THE DEFENDANT IS IN FACT CONVICTED

4  OF THE CRIMES IN THIS MATTER, A COMMITMENT TO STATE PRISON IS

5  CLEARLY WARRANTED IN THE MATTER.

6       SENTENCING CONSIDERATIONS:

7       THE DEFENDANT IS INELIGIBLE FOR PROBATION.

8       CIRCUMSTANCES IN AGGRAVATION:

9       1.   THE VICTIM WAS PARTICULARLY VULNERABLE.

10      2.   THE DEFENDANT INDUCED OTHERS TO PARTICIPATE
             IN THE COMMISSION OF THE CRIME AND OCCUPIED
11           A POSITION OF LEADERSHIP OF OTHER
             PARTICIPANTS IN THE COMMISSION.
12

13      3.   THE DEFENDANT'S PRIOR PERFORMANCE ON
             PROBATION WAS UNSATISFACTORY.
14
        CIRCUMSTANCES IN MITIGATION:
15
        NONE.
16
             GIVEN THE WEIGHT OF THE AGGRAVATING CIRCUMSTANCES,
17
   AS WELL AS THE PERMANENT BODILY INJURY SUSTAINED BY THE VICTIM,
18
   A COMMITMENT TO STATE PRISON FOR THE LENGTHIEST TERM ALLOWABLE
19
   BY LAW, IS CLEARLY WARRANTED IF THE DEFENDANT IS CONVICTED OF
20
   THE CHARGES.
21

22 RECOMMENDATION:

23           IF CONVICTED, IT IS RECOMMENDED THAT PROBATION BE

      -9-   (ESCALANTE)

1  DENIED AND THAT THE DEFENDANT BE SENTENCED TO STATE PRISON WITH

2  PRE-IMPRISONMENT CREDIT OF 70 DAYS; THAT THE COURT ORDER THE

3  DEFENDANT TO PAY A RESTITUTION FINE OF $100 AS PROVIDED IN

4  SUBDIVISION (A) OF SECTION 13967 OF THE GOVERNMENT CODE.

5  RESPECTFULLY SUBMITTED,

6  BARRY J. NIDORF,
   PROBATION OFFICER

7

8  BY _____

9  AUGUSTINE LEMOS, DEPUTY
   EAST SAN FERNANDO VALLEY AREA OFFICE

10  374-2054

11

12  READ AND APPROVED:                   I HAVE READ AND CONSIDERED
                                         THE FOREGOING REPORT OF
13                                        THE PROBATION OFFICER

14  BY _____

    ART KEENER, SDPO

15                                        _____
                                          JUDGE OF THE SUPERIOR COURT
16  (SUBMITTED: 11-27-90)
    (TYPED: 11-29-90)
17  AL:RH        (6)

18          IF PROBATION IS GRANTED, IT IS RECOMMENDED THAT

19  THE COURT DETERMINE DEFENDANT'S ABILITY TO PAY COST OF PROBATION

20  SERVICES PURSUANT TO SECTION 1203.1B PENAL CODE.  COST OF

21  PRESENTENCE INVESTIGATION AND PRESENTENCE REPORT - $412.00.  COST

22  OF SUPERVISION - $28.00 PER MONTH.

23

       -10-  (ESCALANTE)
76C692G - PROB. 5A

# EXHIBIT H

*C-file copy*

# Life-Term Inmate Evaluation for the Board of Prison Terms
## MENTAL HEALTH EVALUATION

### PSYCHOSOCIAL ASSESSMENT

### 1. IDENTIFYING INFORMATION

| | |
|---|---|
| **NAME:** | Escalante, Justo |
| **CDC#** | E-91258 |
| **AGE:** | 42 years |
| **DOB:** | 03/26/63 |
| **MARITAL STATUS:** | single |
| **RACE:** | Hispanic |
| **RELIGION:** | Evangelist |
| **DATE OF REPORT:** | 12/07/05 |

This report is based on review of the inmate's medical file, review of his C-file, prior Board of Prison Terms reports. Prior psychological evaluations, current classification information and probation officer's report were used in preparation for this report. The current interview with the inmate and the report are limited by the amount of information given to this examiner by the inmate at the time of the interview. The following information is accurate to the extent that the records and the inmate's self-report are accurate As a result, the absolute accuracy cannot be assured. The primary purpose of this report is to provide the Board of Prison Terms psychological data, psychiatric diagnostic information and an assessment of dangerousness in regard to his possible release to the community. This evaluator is not responsible for any inaccurate statements or changed opinions expressed by the inmate at a later date. The inmate was interviewed for approximately 1 hour and 10 minutes and the inmate's file was reviewed for approximately 4 to 6 hours.

The inmate was informed that the interview was not confidential and a report with the results of the evaluation would be submitted to the Board of Prison terms to assist in determining his eligibility for parole. The inmate was informed that any disagreement with the substantive conclusion could be most appropriately address at the inmate's Board hearing. The inmate appeared to understand the nature of the evaluation and the possible consequences of the interview to the best of the inmate's ability. For reasons not limited to the possibility that an individual may have a mental disability or condition which may qualify, under the American's with Disabilities Act, the evaluation was conducted by a licensed clinical psychologist.

Exhibit H

## Previous Board of Prison Term Evaluations

This is apparently the 4th psychological evaluation for the Board of Prison Terms on this inmate. The inmate was provided the opportunity to review Carswell, Ph.D., and 1999 evaluation and endorsed it with minor changes as noted below.

## II. DEVELOPMENTAL HISTORY

No notable changes from Dr. Carswell's 1999 report.

## III. EDUCATION

No notable changes from Dr. Carswell's 1999 report. He received his GED in 2000.

## IV. FAMILY HISTORY

No notable changes from Dr. Carswell's 1999 report. His father is in good health at age 66 and writes to him occasionally.

## V. DEVELOPMENT AND SEXUAL ORIENTATION

The inmate reported no sexual adjustment issues and has no history of sexual acting out recorded in his records. He describes himself as heterosexual and denied engaging in dangerous sexual behaviors.

## VI. MARITAL HISTORY

This inmate stated he has never been married nor does he have any children.

## VII. MILITARY HISTORY

Inmate Escalante denied any military service.

## VIII. EMPLOLYMENT HISTORY

No notable changes from Dr. Carswell's 1999 report. He has experience in both electricity and plumbing.

## IX. SUBSTANCE ABUSE HISTORY



Mr. Escalante has a history of alcohol, marijuana and cocaine abuse. He stated that he has been an active member in Alcoholics anonymous and Narcotics Anonymous since 1995. Chronos in his C file evidence the fact that he has been very active in both self-help groups over the past 10 years.

## X. PSYCHIATRIC AND MEDICAL HISTORY

He denied any past or present significant diagnosis or illnesses.

## PLANS IF GRANTED RELEASE

Inmate plans to return to Honduras if paroled. There is an INS hold out on this inmate. He will live with his younger brother, David, and work in either the electrical or plumbing trade. His prognosis for community living is guarded.

 ## CURRENT MENTAL STATUS/TREATMENT NEEDS:

Mr. Escalante's appeared younger than his 42 years of age. He was cooperative, made good eye contact and exhibited no noticeable or atypical behaviors. His speech was clear and his thoughts were well organized. His affect was appropriately variable and his mood was euthymic. There was no homicidal or suicidal ideation noted. He did not experience any type of perceptual disturbances. He was oriented and expresses appropriate plans upon parole.

 **DSM IV Diagnoses**
Axis I  Polysubstance Abuse, by history, in institutional remission
Axis II Deferred
Axis III None
Axis IV Psychosocial Stressors: Incarceration
Axis: V Global Assessment of Functioning 75

## XIII. REVIEW OF LIFE CRIME

As stated in previous reports, this inmate denies any involvement in his current life offense. He stated that he did not know the people who testify against him, and he has no idea how he was convicted of his crime. He maintains his innocence concerning this life crime. Therefore, whether insight into whether or not this would happen again is obviously unknown.

**Assessment of Dangerousness:**

A. Within a controlled setting, his risk is minimal or if released into the community, the risk is also minimal. Significant risk factors and precursors to violence are his past alcohol and substance abuse, and a relapse would increase his risk for violence and undo the gains he has made.

B. He has not received any CDC 115's and has matured since being incarcerated.

**Comments and Recommendations:**

1. If paroled, he should be mandated to attend both NA and AA and have frequent periodic drug testing for alcohol and illegal substances.

2. This inmate still denies any responsibility in his crime, and needs to develop some insight or reasonable explanation before being considered for parole.

Respectfully submitted,

*Laura Petracek, PhD*

Laura Petracek, Ph.D.
Contract Psychologist, CA License PSY 20033
CTF Soledad

12-08-05

Date

*B. Zika, Ph.D.*

B. Zika, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

12/8/05

Date

Escalante, Justo                    E-91258   CTF                                    4

UNITED STATES DISTRICT COURT

_Northern_ DISTRICT OF CALIFORNIA

Justo Escalante

v

Case No. _C 07-2702 JF_

**PROOF OF SERVICE**

J. Davis, et al

_____/

I hereby certify that on _December 19, 2007_, I served a copy of the attached _Traverse with Exhibit 1_ _____

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by

depositing said envelope in the United States Mail at _Soledad, Ca._ _____:
**(List Name and Address of Each Defendant or Attorney Served)**

Attorney General of California
455 Golden Gate Ave, Suite 11000
San Francisco, Ca. 94102-3664

I declare under the penalty of perjury that the foregoing is true and correct.

_____
(Name of Person Completing Service)

Justo Escalante