NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTO ESCALANTE, | No. C 07-02702 JF (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| B. CURRY, Warden, | |
| Respondent. | |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision of the Board of Prison Terms ("the Board") to deny him parole. The Court found that the petition stated three cognizable claims and ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

///

///

///

# BACKGROUND

In 1991, a Los Angeles Superior Court jury convicted Petitioner of aggravated mayhem (Cal. Penal Code § 205). Petitioner was sentenced to a term of seven years to life in state prison plus one year for a dangerous weapon enhancement. Petitioner challenges the Board's decision denying him parole after a fourth parole consideration hearing on December 15, 2005. Petitioner filed habeas petitions in the state superior, appellate, and supreme courts, all of which were denied. Petitioner filed the instant federal habeas petition on May 22, 2007.

# DISCUSSION

**A.   Standard of Review**

This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Where, as here, the highest state court to consider Petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claims is the opinion of the California Superior Court for the County of Los Angeles. (Resp. Ex. H (In re Justo Escalante on Habeas Corpus, Case No. BH003993, October 2, 2006).)

///

///

B.     **Legal Claims and Analysis**

As grounds for federal habeas relief, Petitioner alleges: (1) the Board's denial of a parole date for the fourth time based on the commitment offense and pre-commitment factors despite Petitioner having served his minimum sentence violated his right to due process of law and his liberty interest; (2) the commitment offense does not rise to the level of "especially heinous" so as to justify the fourth denial of parole violating Petitioner's right to due process of law; and (3) the Board presented no evidence containing indicia of reliability showing Petitioner would pose a current risk if released on parole, violating Petitioner's right to due process of law. (Pet. at 6.)

The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in the parole suitability proceedings. See McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) (citing Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979)). See also Irons v. Carey, 505 F.3d 846, 851 (9th Cir.), reh'g and reh'g en banc denied, 506 F.3d 951 (9th Cir. 2007); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006), reh'g and reh'g en banc denied, No. 05-16455 (9th Cir. Feb. 13, 2007); Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003).

A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. Sass, 461 F.3d at 1128-29 (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal may be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required, nor is an independent assessment of the credibility of witnesses nor weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board. See id. Accordingly, "if the Board's determination of parole suitability is to satisfy due process there must be some evidence, with some indicia of

reliability, to support the decision." Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (citing McQuillion, 306 F.3d at 904).

When assessing whether a state parole board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Irons, 505 F.3d at 850. Accordingly, in California, the court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision constituted an unreasonable application of the "some evidence" principle. Id.

California Code of Regulations, title 15, section 2402(a) provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code of Regs., tit. 15, § 2402(a). The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).[1]

Recently, the Ninth Circuit reheard en banc the panel decision in Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008), reh'g en banc granted, 527 F.3d 797 (9th. Cir.

---

[1] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal. Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal. Code of Regs., tit., 15 § 2402(d).

2008), which presented a state prisoner's due process habeas challenge to the denial of parole. The panel opinion concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole and held that the governor's reversal of parole was not supported by some evidence and resulted in a due process violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc decision in Hayward.

Unless or until the en banc court overrules the holdings in Biggs, Sass, and Irons, it remains the law in this circuit that California's parole scheme creates a federally protected liberty interest in parole and therefore a right to due process, which is satisfied if some evidence supports the Board's parole suitability decision. Sass, 461 F.3d at 1128-29. These cases also hold that the Board may rely on immutable events, such as the nature of the conviction offense and pre-conviction criminality, to find that the prisoner is not currently suitable for parole. Id. at 1129. Biggs and Irons also suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence. See Irons, 505 F.3d at 853-54.

The Board's decision denying parole in this case was based upon its review of the nature and circumstances of the commitment offense, Petitioner's prior criminal history, and what it found to be Petitioner's insufficient participation in self-help programs during imprisonment. The Board concluded that Petitioner "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Resp. Ex. E at 42.) The Board observed that the commitment offense was carried out "in an especially cruel and callous manner," which "demonstrate[d] an exceptionally callous disregard for human suffering." (Id. at 42-43.) Petitioner and some of his friends began hitting and kicking the victim after the victim refused to let Petitioner borrow his car. (Id. at 13.) When the victim was down, Petitioner struck the victim in the eye with a knife,

penetrating the brain. (Id.) The victim suffered permanent loss of sight in his right eye, and a frontal lobotomy was performed resulting in permanent brain damage. (Id. at 13-14.) Another factor in the Board's decision was that prior to the commitment offense, Petitioner was "entrenched in criminal activities," including possession and sale of controlled substances, murder, possession of a firearm, grand theft vehicle, and possession of bad checks. (Id. at 47-48.) The Board also noted that Petitioner had "not sufficiently participated in beneficial self-help [programs]...to address the issue of insight" and Petitioner had not "completed any vocations during the entire time that [Petitioner had] been incarcerated." (Id. at 48-49.) Finally, the Board found that Petitioner's most recent psychological report was "not totally supportive of release," citing the psychologist's assessment that Petitioner "still denies any responsibility for his crime" and that "[h]e needs to develop some insight or reasonable explanation before being considered for parole." (Id. at 45.)

The Board acknowledged the presence of several factors tending to show suitability, such as the fact that Petitioner had not received any disciplinary actions during the entire record of his incarceration, received multiple laudatory acknowledgments from prison staff, and continued participation in Alcoholics Anonymous and Narcotics Anonymous. (Id. at 52.) However, the Board concluded that the "these positive aspects of [Petitioner's] behavior do not outweigh the factors of unsuitability." (Id.)

In its order denying habeas relief, the state superior court determined that the record contained some evidence to support the Board's finding that Petitioner was unsuitable for parole. The court made the following observations:

> The Board based its decision on several factors, including his commitment offense. The Court finds that there is no evidence to support the Board's findings that the commitment offense was "dispassionate and calculated," such as an execution-style murder (see Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(D).) Although there is no evidence to support the Board's specific findings regarding the commitment offense, the Court nevertheless finds that there is some evidence that the commitment offense was one in which the victim was abused, defiled, or mutilated during or after the offense. (See Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(C).) "We may uphold the [Board's] decision, despite a flaw in its findings, if the authority has made clear it would have reached the same decision even absent the

|   |   |
|---|---|
| 1 | error." (In re Dannenberg (2005) 34 Cal.4th 1061, 1100.) Based on the fact that the Board's discussion of the commitment offense cited to the [P]etitioner hitting, kicking and knocking the victim to the ground before stabbing him, the Court concludes that the Board's mistake does not invalidate its decision to deny parole based on the commitment offense. |
| 2 | |
| 3 | |
| 4 | The record further reflects that the Board also relied on several additional factors in denying [P]etitioner parole at this time, and there is some evidence to support that decision. The Court finds that there is some evidence to support the Board's findings that [P]etitioner is unsuitable based on insufficient self-help and a lack of vocational programming and based on a psychological evaluation that state that the "inmate still denies any responsibility for the crime" and needed to develop insight before being considered for parole. The Board was acting within its authority when it considered [P]etitioner's various preconviction factors and postconviction gains, yet concluded that he would pose an unreasonable threat to public safety. (See Pen. Code § 1341, subd. (b).) |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |

(Resp. Ex. H at 2-3.)

As noted by the state court, the Board denied Petitioner parole not only because of the nature and circumstances of Petitioner's commitment offense but also because of Petitioner's insufficient participation in self-help programs, lack of vocational training, and denial of responsibility and lack of insight. The Board properly considered the nature of Petitioner's commitment offense in its decision to deny parole. See In re Rosenkrantz, 29 Cal. 4th 616, 682-83 ("the [Board] properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant"). Beyond the commitment offense, the Board found other evidence that Petitioner remained an "unreasonable risk of danger to society if released from prison." Cal. Code of Reg., tit. 15, § 2402(a); see *supra* at 6-7. Accordingly, the Board's findings are supported by "some evidence," and the evidence underlying the Board's decision has some "indicia of reliability." Biggs, 334 F.3d at 915 (citing McQuillion, 306 F.3d at 904).

Petitioner claims that the commitment offense was not committed in an "especially heinous" manner within the meaning of Cal. Code of Reg. tit. 15, § 2402(c)(1). (Pet. at 6.) Although it found that there was no evidence to support the Board's findings that the commitment offense was "dispassionate and calculated, such as an execution-style murder" under § 2402(c)(1)(D), the state court concluded that there was some evidence that the commitment offense was one in which "the victim was abused, defiled, or

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JF\HC.07\Escalante02702_denyHC.wpd

8

1  mutilated during or after the offense" pursuant to § 2402(c)(1)(C).  See *supra* at 7.

2      This Court agrees with the state court that the commitment offense was carried out
3  in "an especially heinous manner" in light of the fact that the victim was stabbed in the
4  eye while defenseless on the ground, and therefore was "abused, defiled, or mutilated
5  during or after the offense" pursuant to Cal. Code of Reg. tit. 15, § 2402(c)(1)(C).  The
6  state court properly used the commitment offense as a factor tending to show unsuitability
7  for parole and, together with the other factors previously discussed, constituted some
8  evidence supporting the Board's decision to deny parole.  See Sass, 469 F.3d at 1129; see
9  also Irons, 505 F.3d at 665.

10     This Court concludes that Petitioner's right to due process and liberty interest were
11 not violated by the Board's decision to deny parole.  The state courts' decisions were not
12 contrary to, or an unreasonable application of, clearly established Supreme Court
13 precedent, nor were they based on an unreasonable determination of the facts in light of
14 the evidence presented.  See 28 U.S.C. § 2254(d)(1), (2).

## CONCLUSION

17     The Court concludes that Petitioner has failed to show any violation of his federal
18 constitutional rights in the underlying state court proceedings and parole hearing.
19 Accordingly, the petition for writ of habeas corpus is DENIED.

20     IT IS SO ORDERED.
21 Dated:  8/17/09

                            JEREMY FOGEL
                            United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


JUSTO ESCALANTE,

        Petitioner,

v.

B. CURRY, Warden,

        Respondent.

Case Number: CV07-02702 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on   8/17/09  , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Justo Escalante E-91258
CTF Central
F-Wing 302
P.O. Box 689
Soledad, CA 93960-0689

Dated:   8/17/09

                                    Richard W. Wieking, Clerk